**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ELVIS J. RUSNAK, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No.  1:26-cv-01262-JRR |
| | ) |
| JOSHUA M. AMBUSH, LLC, *et al.*, | ) |
| | ) |
| Respondents. | ) |
| _____ | ) |

**RESPONDENTS' MOTION TO DISMISS FOR**
**INSUFFICIENT SERVICE OF PROCESS**

COME NOW, Respondents JOSHUA M. AMBUSH, LLC and JOSHUA M. AMBUSH (collectively, "Ambush"), through counsel, and move this Court to dismiss the Petition to Confirm Arbitration Award [ECF 1] for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). In the alternative, Respondents request that the Court quash service and direct Petitioner to effect proper service in compliance with Federal Rule of Civil Procedure 4.

**INTRODUCTION**

Because Respondents have moved to dismiss for insufficient service of process under Rule 12(b)(5), Petitioner bears the burden of proving that service was adequate. *Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 304 (4th Cir. 2016).

This motion presents a question the Supreme Court's recent decision in *Jules v. Andre Balazs Properties, LLC*, 608 U.S. ___ (2026), has sharpened but not resolved: whether service of a completely freestanding petition to confirm an arbitration award under 9 U.S.C. § 9 on a resident adverse party must comply with Federal Rule of Civil Procedure 4, or whether Rule 5 notice-of-motion service suffices. *Jules* held that district courts retain jurisdiction over post-arbitration applications in cases they stayed under § 3—but expressly distinguished "the freestanding

1

applications at issue in *Vaden* and *Badgerow*." *Id.*, slip op., at 7. This petition is a completely freestanding action: there was no prior federal litigation between these parties—no complaint, no motion to compel under § 4, no court action of any kind before Rusnak filed his § 9 petition.[1] Under binding Fourth Circuit precedent, a freestanding FAA petition creates a "separate cause of action" that is "independent of any action that may have been filed." *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 337–38 (4th Cir. 2002). Because an independent action requires service establishing personal jurisdiction for the first time, Rule 4—not Rule 5—is the only vehicle for doing so. Yet Rusnak served Ambush by regular mail, claiming he was serving a "motion" in this case under § 9's notice-of-motion provision—notwithstanding that this Court had never acquired personal jurisdiction over Ambush. *See* Mot. for Entry of Default, ECF No. 6. Actual notice does not excuse this failure. *See Md. State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996).

## I. SECTION 9 PETITIONS ARE INDEPENDENT ACTIONS REQUIRING RULE 4 SERVICE

The threshold question is which service framework governs a completely freestanding petition to confirm an arbitration award under 9 U.S.C. § 9. The statute creates a two-track service scheme. For a resident adverse party, § 9 provides that notice "shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court." 9 U.S.C. § 9. For a nonresident, the statute provides that notice "shall be served by the marshal of any district within which the adverse party may be found in like manner as other process

---

[1] The Court in *Jules* distinguished between FAA motions arising "in a pre-existing lawsuit" and "freestanding" motions arriving "outside of any pre-existing federal case." *Id.*, slip op., at 2. Within the latter category, the Court further distinguished *Badgerow*—involving a "completely" freestanding petition with no prior federal proceeding— from *Vaden*, where a § 4 petition had been filed. *Id.*, slip op., at 7. This case, like *Badgerow*, is completely freestanding.

of the court." *Id.* The answer turns on whether the petition is filed in the context of existing federal litigation or as a freestanding action—a distinction the Supreme Court has now made dispositive.

In *Jules v. Andre Balazs Properties, LLC*, 608 U.S. ___ (2026), the Supreme Court addressed whether a district court that stayed litigation pending arbitration under § 3 of the FAA retains jurisdiction to resolve post-arbitration applications under §§ 9 and 10. The Court held that it does, because the court's "pre-existing jurisdiction over claims that it stayed pending arbitration under § 3" survives the conclusion of arbitration. *Id.*, slip op., at 7. Critically, the Court distinguished its prior decisions in *Vaden v. Discover Bank*, 556 U.S. 49 (2009), and *Badgerow v. Walters*, 596 U.S. 1 (2022), which addressed "freestanding applications" filed without prior federal litigation. *Jules*, 608 U.S., slip op., at 7. *Jules* thus confirms that freestanding FAA petitions— those filed without the anchor of a stayed case—remain subject to the independent jurisdictional analysis that *Badgerow* requires.

The Fourth Circuit has consistently held that FAA applications are independent civil actions, not motions in pending cases. In *Vulcan Chemical Technologies, Inc. v. Barker*, 297 F.3d 332, 338 (4th Cir. 2002), the court held that "[s]ection 10 of the [FAA] creates a separate cause of action to vacate an arbitration award" that is "independent of any action that may have been filed." The Fourth Circuit extended that principle to § 9 confirmation petitions in *SmartSky Networks, LLC v. DAG Wireless, Ltd.*, 93 F.4th 175, 182 (4th Cir. 2024), holding that applications under Sections 9 and 10 "are not motions in a pending action; rather, they are separate actions independent of the related civil lawsuit." While the Supreme Court in *Jules* limited *SmartSky*'s subject matter jurisdictional holding—ruling that courts need not establish independent subject matter jurisdiction over post-stay applications—*Jules* did not disturb *SmartSky*'s characterization of freestanding petitions as independent actions. To the contrary, *Jules*'s distinction between

3

stayed and freestanding proceedings reinforces this Court's reasoning: if freestanding petitions were merely motions in a pending case, there would be no need to distinguish them. Under binding Fourth Circuit precedent, Rusnak's completely freestanding § 9 petition is an independent civil action requiring service that establishes personal jurisdiction for the first time.

The service implications follow directly. Rule 4 governs service of initial process in civil actions; Rule 5 governs service of "pleading[s] filed after the original complaint" on parties already before the court. Fed. R. Civ. P. 4(c)(1), (e); 5(a)(1). A respondent named for the first time in a freestanding petition is not already before the court. Personal jurisdiction must be established anew—and only Rule 4 service can accomplish that. *See Koehler v. Dodwell*, 523 F.3d 304, 306–07 (4th Cir. 2008) ("Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant," and "any judgment entered against a defendant over whom the court does not have personal jurisdiction is void."); *Technologists, Inc. v. MIR's Ltd.*, 725 F. Supp. 2d 120, 126–27 (D.D.C. 2010) (holding Rule 4, not Rule 5, governs service of FAA petition to vacate because § 6 "merely ensures" that arbitration proceedings are exempt from pleading requirements and does not make Rule 5 the applicable service mechanism).

This reading harmonizes § 9's "notice of motion" language with both the Federal Rules and the Constitution.[2] In a stayed case—where *Jules* applies—the court already has personal jurisdiction over the parties from the underlying litigation. There, § 9's reference to "service of

---

[2] "Service requirements are more than mere technicalities, they also implicate due process." *Savoie v. City of E. Lansing*, No. 21-2684, 2022 WL 3643339, at *2 (6th Cir. Aug. 24, 2022) (citing *Friedman v. Est. of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991)). Courts require "more than just actual knowledge of the action by a defendant." *Id.* Without proper service, a court may not exercise personal jurisdiction over a defendant, and any ruling as to that party is void. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *accord Fed. Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1136 (4th Cir. 1984); *Koehler v. Dodwell*, 152 F.3d 304, 306–07 (4th Cir. 1998). While actual notice may support liberal construction of technical defects, it cannot excuse noncompliance with the plain requirements of Rule 4. *See Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

notice of motion" naturally maps to Rule 5, because service functions as notice within an existing proceeding, not as the vehicle for establishing jurisdiction. But in a freestanding petition—where no prior federal litigation exists between the parties—reading "notice of motion" as Rule 5 would allow a court to enter judgment against a respondent over whom it has never obtained personal jurisdiction through constitutionally adequate service.

Section 9 ties the court's authority over the adverse party directly to service: "the court shall have jurisdiction of such party as though he had appeared generally in the proceeding" only upon proper notice. 9 U.S.C. § 9. The Fourth Circuit has held that "[a]bsent waiver or consent to personal jurisdiction by a party in an arbitration proceeding, any judgment entered confirming, vacating, or modifying an arbitration award against a party over whom the court lacks personal jurisdiction is void." *Koehler v. Dodwell*, 523 F.3d 304, 306–07 (4th Cir. 2008). *See also Barnes v. AAACON Auto Transp., Inc.*, No. 87-1673, 1988 WL 118152, at *2 (4th Cir. Nov. 3, 1988) (per curiam) (unpublished) (vacating D. Md. confirmation order as void where § 9 notice requirements — which the court described as "explicitly framed in jurisdictional terms" — were not satisfied). The Clerk of this Court confirmed that understanding by issuing summonses alongside the Petition to Confirm [ECF No. 2]—a procedural step required under Rule 4(b) when a new civil action is initiated, and one that has no counterpart in Rule 5 service. In the most recent authority on point in this District, Judge Hurson applied Rule 4(e) and 4(h) to a freestanding § 9 confirmation petition and rejected service by email. *Petrie Constr., LLC v. Perfect Grp., LLC*, No. 25-1825-BAH, 2026 WL 709836, at *1 (D. Md. Mar. 13, 2026).

## II. EACH OF RUSNAK'S SERVICE ATTEMPTS
## FAILED TO COMPLY WITH RULE 4

Rusnak's counsel attests to six separate attempts at service between March 31 and April 8, 2026. *See* Corrected Declaration of Robert A. Braun [ECF 6-1] ("Braun Decl."). None satisfies Federal Rule of Civil Procedure 4.

> **A.      No Certified Mailing Satisfied Rule 2-121(a)(3)'s Restricted Delivery Requirement**

Under Rule 4(e)(1), an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." In Maryland, service by mail requires certified mail requesting "Restricted Delivery— show to whom, date, address of delivery." Md. Rule 2-121(a)(3). The purpose of restricted delivery is to ensure that only the named addressee—or an authorized agent—receives the mailing. *See Brown v. Am. Insts. for Research*, 487 F. Supp. 2d 613, 616–17 (D. Md. 2007) (holding repeated certified mail service invalid for failure to request restricted delivery under Rule 2-121(a)(3)).

Rusnak's counsel sent certified mail to three addresses on March 31, 2026 and to a fourth address on April 7, 2026. Braun Decl. ¶¶ 3–4, 12. The Declaration never states that restricted delivery was requested on any mailing, and no exhibit contains a return receipt—the "green card"—signed by Ambush or any identified individual.

> **1.      Certified Mail to 3402 Labyrinth Road (March 31, 2026)**

Rusnak's counsel mailed a package by certified mail to 3402 Labyrinth Road, Baltimore, Maryland 21215—a residential address identified through an investigator's search. Braun Decl. ¶ 9. The U.S. Postal Service confirmed delivery. *See* Braun Decl. Ex. 9. But delivery alone does not satisfy Maryland's service requirements.

This mailing fails under Rule 2-121(a)(3) because restricted delivery was not requested. Without restricted delivery, the package could have been received by anyone present at the

residence. There is no return receipt identifying the person who accepted delivery, and no evidence that Ambush personally received the mailing. *See Brown*, 487 F. Supp. 2d at 617.

Nor can this delivery be salvaged as abode service under Rule 2-121(a)(2), which authorizes service by "leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode of the person to be served with a resident of suitable age and discretion." Md. Rule 2-121(a)(2). Certified mail deposited by a postal carrier is not the equivalent of "leaving" process with an identified individual. And even if it were, the record does not establish the identity, age, residency status, or discretion of whoever accepted this package. The USPS tracking record confirms only that the package arrived at the address—not that it was received by a resident of suitable age and discretion, as the Rule requires.

### 2.     Certified Mail to 106 Old Court Road (March 31, 2026)

Rusnak's counsel mailed a second package by certified mail to 106 Old Court Road, Suite 303, Baltimore, Maryland 21208—Ambush's business address. Braun Decl. ¶¶ 4, 7–8. This package was never delivered. The U.S. Postal Service advised that it "twice attempted delivery at this address and, because an authorized recipient was purportedly not available, left a notice." Braun Decl. ¶ 8; *see* Ex. 8. Service by certified mail under Rule 2-121(a) is complete upon delivery. Where, as here, the package was never delivered, service was never effected—regardless of the restricted delivery defect.

### 3.     Certified Mail to 106 Old Court Road (April 7, 2026)

Rusnak's counsel attempted the same method a second time, sending two additional certified mail packages to 106 Old Court Road. Braun Decl. ¶ 12. The Declaration does not attest to whether these packages were delivered, and again does not claim that restricted delivery was

7

requested. Repeating a defective method of service does not cure the defect. *See Brown*, 487 F. Supp. 2d at 617 (invalidating repeated certified mailings for failure to request restricted delivery).

**B.    Service on Arbitration Counsel in Puerto Rico Did Not Satisfy Rule 4(e)(2)(C)**

Rusnak's counsel also mailed a certified package to Ángel Sosa-Báez at Toro Colón Mullet, P.S.C. in San Juan, Puerto Rico, on the theory that Toro Colón Mullet was "legal counsel for both Joshua M. Ambush and Joshua M. Ambush, LLC." Braun Decl. ¶¶ 4–6. This attempt fails for multiple independent reasons.

First, Rule 4(e)(2)(C) authorizes service by "delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process." Representation of a party in a prior or ongoing arbitration does not make counsel an "agent authorized . . . to receive service of process" in a new and independent judicial proceeding. No evidence in the record establishes that Ambush appointed Toro Colón Mullet as his agent for service of process in federal litigation. Braun's own Declaration hedges this point, arguing in the alternative that "even if Toro Colón Mullet, P.S.C. was not legal counsel" for Ambush, service was still proper. Braun Decl. ¶ 10.

Second, Braun points to an April 1, 2026, AAA filing by Toro Colón Mullet as evidence that the firm "continued to represent Defendants." Braun Decl. ¶ 11; *see* Ex. 11. But that filing— a "Request to Reopen Record and Reconsider Malpractice Finding"—was made in the arbitration proceeding, not in this litigation. Continued representation before the AAA does not establish authority to accept service on behalf of Ambush in a federal lawsuit. Toro Colón Mullet never entered an appearance in this Court. And Braun's own email to the firm reveals his uncertainty about whether it would represent Ambush in this litigation at all: "To the extent you will not represent Ambush in connection with this suit, please advise." Ex. 10.

8

Third, even if Toro Colón Mullet were an authorized agent, this mailing suffers from the same restricted delivery defect as every other certified mailing. No restricted delivery was requested, and no return receipt signed by Sosa-Báez or any identified individual appears in the record.

## C.    Email Does Not Constitute Service Under Rule 4

On March 31, 2026, Rusnak's counsel emailed the Petition and summonses to Sosa and Nayda Perez Roman at Toro Colón Mullet. Braun Decl. ¶ 11; *see* Ex. 10. Email is not among the methods of service authorized by Federal Rule of Civil Procedure 4(e) or Maryland Rule 2-121. *See Petrie Constr., LLC v. Perfect Grp., LLC*, No. 25-1825-BAH, 2026 WL 709836, at *1 (D. Md. Mar. 13, 2026) (rejecting email as a method of service). Braun himself does not characterize this email as service. He describes it as an "additional step[]" taken to ensure "actual notice." Braun Decl. ¶ 11.

## D.    First Class Mail Is Categorically Insufficient for Service

On April 8, 2026, Rusnak's counsel sent two packages by regular first-class mail to 106 Old Court Road. Braun Decl. ¶ 13. First class mail is not a recognized method of service under Rule 4(e) or Maryland Rule 2-121. *See Md. State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996) (setting aside default where service was effected by first class mail). Braun's stated purpose for this mailing confirms it was an attempt at notice, not service: he sent it "to make certain that [Ambush] could not avoid actual receipt of the packages by turning away mail delivery personnel and/or refusing to sign for them." Braun Decl. ¶ 13. If Rusnak's counsel believed Ambush was avoiding delivery, the proper course was to invoke the evasion-of-service procedures under Rule 2-121(b)—not to abandon certified mail in favor of a method that categorically fails to satisfy the Rule.

E.      **Rusnak Never Invoked Maryland's Escalating Service Mechanisms**

Maryland Rule 2-121 provides escalating mechanisms to address service difficulties. Rusnak's counsel availed himself of none of them.

Rule 2-121(b) provides a remedy where a defendant is believed to be evading service. Under subsection (b), a serving party must (1) file an affidavit establishing that the defendant "has acted to evade service" and (2) obtain a court order authorizing an alternative method of service. Md. Rule 2-121(b). Rusnak filed no such affidavit and sought no such order. The evasion-of-service procedure exists precisely to address the situation Rusnak now confronts: a party who has not received the initial mailings, whether by evasion or otherwise.

Rule 2-121(c) provides a final mechanism: when good-faith efforts under subsection (a) have failed and subsection (b) is inapplicable, the serving party may petition the court for an order directing an alternative method of service. Md. Rule 2-121(c). Rusnak did not pursue this pathway either. Instead, he asked the Clerk to enter default based on service that failed at every step.

F.      **The "Substitute Service" Characterization in the Order of Default Is Unsupported**

The Order of Default [ECF 8] states that Ambush was served on March 31, 2026, by "substitute service." Under Maryland law, "substitute service" has a specific legal meaning: it is the Rule 2-121(b) procedure, which requires proof by affidavit that the defendant has acted to evade service and a court order authorizing the alternative method. Md. Rule 2-121(b). Neither exists in this record. No affidavit of evasion was filed. No court order was entered. The characterization of service as "substitute service" in the Order of Default is wholly unsupported by the record. That the Clerk resorted to a term describing a procedure never invoked—with no affidavit of evasion and no court order authorizing alternative service anywhere in the record— underscores that Braun's Corrected Declaration, cataloguing six shifting and failed attempts at

10

service, could not support identification of any cognizable method by which service was perfected. The entry of default premised on a legally impossible method of service is itself legally deficient and cannot stand.

### III.    ACTUAL NOTICE DOES NOT CURE DEFECTIVE SERVICE

To the extent Rusnak contends that Ambush had actual notice of the Petition to Confirm, actual notice does not cure defective service in this District. In *Maryland State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996), this Court held that "service of process must be effective under the Federal Rules of Civil Procedure before a default or a default judgment may be entered against a defendant" and set aside a default where service by first-class mail was defective—even though the defendant had actual notice of the lawsuit. *Id.* at 355. The same principle applies here. However, Ambush may have learned of the Petition, defective service cannot support the entry of default.

The liberal construction afforded technical service deficiencies when a defendant has actual notice, *see Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984), has no application here. That principle excuses minor deviations within a good-faith attempt at Rule 4 service — such as the use of registered rather than certified mail after multiple personal service attempts. *See Maid to Perfection Global, Inc. v. Ensor*, No. RDB-09-cv-0958, 2010 WL 1254194, at *3 (D. Md. Mar. 29, 2010). It does not rescue a party who never attempted Rule 4 service at all. Rusnak's counsel deliberately invoked Rule 5's "service complete upon mailing" standard, *see* Mot. for Entry of Default at 1–2, ECF No. 6, and made no attempt at personal service, abode service, or any other method authorized by Rule 4(e). This is not a case of technical noncompliance — it is a case of service under the wrong rule entirely.

11

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that this Court:

1.      Dismiss the Petition to Confirm Arbitration Award [ECF 1] for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5); or

2.      In the alternative, quash service of the Petition and direct Petitioner to effect proper service in compliance with Federal Rule of Civil Procedure 4 and Maryland Rule 2-121; and

3.      Grant such other and further relief as the Court deems just and proper.


Dated: May 21, 2026                                    Respectfully submitted,




                                                       */s/ John M. Shoreman*
                                                       John M. Shoreman (Bar No. 12931)



McFADDEN & SHOREMAN
1701 Pennsylvania, Ave., NW
Suite 200
Washington, DC 20006
(571) 296-8450
jms@mcfaddenshoreman.com

*Attorney for Respondents*
*Joshua M. Ambush, LLC and Joshua M. Ambush*

12