IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELVIS J. RUSNAK,                                          )
                                                         )
                    Petitioner,                          )
                                                         )
v.                                                       )         Case No.  1:26-cv-01262-JRR
                                                         )
JOSHUA M. AMBUSH, LLC, *et al.*,                         )
                                                         )
                    Respondents.                         )
_____)

## RESPONDENTS' MOTION TO SET ASIDE ORDER OF DEFAULT

COME NOW, Respondents JOSHUA M. AMBUSH, LLC and JOSHUA M. AMBUSH (collectively, "Ambush"), through counsel, and move this Court to Set Aside the Order of Default entered by the Clerk on April 29, 2026, in favor of Petitioner ELVIS J. RUSNAK, pursuant to Rule 55(c) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 55(c).[1]

## BACKGROUND

On March 30, 2026, Rusnak filed a "Petition to Confirm Arbitration Award and Notice of Application for Order to Confirm Arbitration Award" (the "Petition"). [ECF 1]. The Arbitration Award, Exhibit A (sealed) to the Petition, was entered on February 20, 2026, in *Joshua M. Ambush, LLC v. Elvis Rusnak*, AAA Case No. 01-25-0000-0363. The Arbitration Award deals with a dispute over legal services provided by Ambush to Rusnak in an action in the United States District Court for the District of Columbia against the Islamic Republic of Iran for its material support of the June 25, 1996, terrorist bombing of the Khobar Towers in Saudi Arabia. On Rusnak's behalf, Ambush filed the original complaint against Iran on July 13, 2017, in

_____

[1] Respondents contest personal jurisdiction on grounds of insufficient service in a simultaneously-filed Motion to Dismiss under Fed. R. Civ. P. 12(b)(5).

1

*Schooley v. Islamic Republic of Iran*, Case No. 17-cv-1376 (BAH) (the "Schooley Case"). The dispute was subject to an arbitration clause in the parties' Attorney Representation Agreement of February 21, 2017 (the "Agreement"). (Petition, Exhibit C [ECF 1-4]).

On June 27, 2019, the Court in the Schooley case granted a default judgment in the amount of $7 million against Iran and in favor of Rusnak. On July 18, 2019, Ambush filed an application with the U.S. Victims of State Sponsored Terrorism Fund ("USVSSTF" or "Fund") and requested payment of Rusnak's default judgment. On July 6, 2020, the Fund confirmed in a Notice of Claim Amount, which states that Rusnak was eligible to receive the requested $7 million in compensatory damages. On August 28, 2020, and December 30, 2022, the Fund made payments to Rusnak in a total amount of $437,028.62. Ambush received a contingency fee equaling 25% of those payments under the terms of the Agreement. Following Rusnak's termination of the Agreement on December 18, 2024, Ambush commenced an arbitration before the American Arbitration Association ("AAA") for breach of the Agreement for Rusnak's refusal to pay the contingency fee earned by Ambush on the balance of payments made by the Fund for Rusnak's default judgment against Iran. Rusnak filed a Counter-Claim in the arbitration alleging that the Agreement was terminated for cause due to Ambush's legal malpractice.

The Arbitrator made the extraordinary finding that Ambush breached the standard of care by failing to file a second application with the Fund to secure a lump sum catch-up payment authorized by Congress for victims of the 1996 Khobar Towers bombing. *See* Fairness for 9/11 Families Act, Pub. L. No. 117-328, 136 Stat. 6106 (2022). On that basis, Rusnak was awarded $685,442.38 in damages and $36,056.13 in pre-judgment interest. (Petition, Exhibit A (sealed) [ECF 1-2]). Ambush filed a Petition to Vacate Arbitration Award on April 14, 2026, in the United States District Court for the District of Columbia, *Ambush LLC v. Rusnak*, Case No. 1:26-

2

cv-01247[2], wherein it is shown that the Fund was advising lump-sum claimants, such as Rusnak, who already had an application for compensation on file that they:

> . . . do not need to file additional or separate applications for lump sum catch-up payments. Each claimant has one claim before the USVSST Fund for all compensation, including lump sum catch-up payments. The USVSST Fund cannot accept duplicative filings.

USVSST Fund FAQ 7.1; *see* Compl. ¶ 4, *Rusnak v. United States*, No. 1:25-cv-00292-LLA (D.D.C. Jan. 31, 2025) (Complaint, attached hereto as Exhibit A).[3]

Ambush's Petition to Vacate in the United States District Court for the District of Columbia shows how the Arbitrator acted in manifest disregard of the law by ignoring the evidence that Ambush was following the government's clear direction in not filing a second application on behalf of Rusnak within a 180-day claims period established in the Fairness Act.

Indeed, in his action against the United States, Rusnak affirmatively alleged — quoting the Fund's own FAQ — that the Fund's procedures and guidance were the cause of his exclusion from the lump-sum catch-up payments. (Ex. A, ¶¶ 4, 45–48). The court agreed. In its Memorandum Opinion dismissing Rusnak's claims, the court found that the Fund itself instructed already eligible claimants to not submit duplicative applications, that DOJ objected to the successive-application requirement, arguing that it contravened long-standing Fund procedures, and that 274 claimants were excluded for following the Fund's own guidance. *See*

---

[2] Rusnak was personally served with the Petition to Vacate by a licensed process server; the affidavit of service is filed in the record. On May 1, 2026, Rusnak moved to dismiss under the first-filed rule or, in the alternative, to transfer or stay the proceedings. The Court stayed all deadlines pending resolution of the motion to dismiss. Ambush's opposition is due May 25, 2026.

[3] In *Rusnak v. United States*, Rusnak sued the federal government alleging that the USVSST Fund's published guidance—which instructed existing claimants that they did not need to file additional applications for lump-sum catch-up payments—caused his exclusion from those payments under the Fairness for 9/11 Families Act, Pub. L. No. 117-328, 136 Stat. 6106 (2022). The court's findings and disposition are discussed *infra*.

3

Memorandum Opinion at 6–11, *Rusnak v. United States*, No. 1:25-cv-00292-LLA (D.D.C. Mar. 24, 2026) (attached hereto as Exhibit B).

The District Court for the District of Columbia ultimately dismissed Rusnak's action finding that the USVSSTF Act precludes judicial review of claims that concern whether a plaintiff was permitted to receive Fund payments. *Id.* at 39–40. And, as emphasized by the court, "GAO recommended that Congress amend the statute to require the Special Master to authorize catch-up payments to 'those among the 274 claimants [including Rusnak] who did not submit applications . . . because of Fund guidance.'" *Id.* at 11. According to DOJ, as of March 31, 2026, the Fund Balance includes $116,367,440, which was calculated by GAO for 274 claimants determined to be not eligible. (Fund Balance Statement, attached hereto as Exhibit C) As the D.C. District Court noted, "it is well within Congress's power to address the inequities Plaintiffs allege." Ex. B, at 41. An amendment allowing payment of lump sum catch-up payments to Rusnak and other similarly situated claimants is pending in Congress. *See* H.R. 4863, 119th Cong. (2025).

Realizing the D.C. District Court's decision in *Rusnak* seriously undercut the finding of malpractice and the damages awarded by the Arbitrator, Rusnak rushed to confirm the Arbitration Award. On March 12, 2026, following issuance of the Arbitration Award on February 20, Ambush filed a Request for Clarification with the Arbitrator. This was opposed by Rusnak on March 19, and denied by the Arbitrator without explanation on March 20. The D.C. District Court's opinion in *Rusnak v. United States* was entered four days later on March 24. On March 30, the same day AAA transmitted the Arbitrator's denial of the Request for Clarification, Rusnak filed the Petition to Confirm in this Court. On April 1, Ambush alerted the Arbitrator to the *Rusnak* opinion and its ramifications for the Award and sought to re-open the arbitration

4

record. On April 7, AAA administrative staff—not the Arbitrator—denied the request, stating that the record was closed and the hearings could not be reopened. (Request for Clarification, attached hereto as Exhibit D; Denial of Request for Clarification, attached hereto as Exhibit E; Request to Reopen Record, attached hereto as Exhibit F; AAA Denial of Request to Reopen with Response of Petitioner's Counsel, attached hereto as Exhibit G)

As demonstrated below, good cause exists to set aside the entry of default. All six factors identified by the Fourth Circuit favor Ambush. Ambush has simultaneously filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process, which is incorporated herein by reference.

## I.     GOOD CAUSE EXISTS TO SET ASIDE THE ENTRY OF DEFAULT

After the Clerk enters default, the Court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The Fourth Circuit has stated that, when compared to the standard under Rule 60(b), the "good cause" standard in Rule 55(c) "is more forgiving of defaulting parties because it does not implicate any interest in finality." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 420 (4th Cir. 2010); *see also Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) ("Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense."). Indeed, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton*, 616 F.3d at 417. Thus, Rule 55(c) "must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987) (*quoting Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)).

Six factors are relevant to the analysis of whether an entry of default should be set aside: (i) whether the moving party has a meritorious defense; (ii) whether it acts with reasonable promptness; (iii) the personal responsibility of the defaulting party; (iv) the prejudice to the opposing party; (v) whether there is a history of dilatory action; and (vi) the availability of sanctions less drastic. *Payne ex rel. Est. of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006).

All six *Payne* factors favor setting aside the default.

### A.        Presence of a Meritorious Defense

This factor weighs heavily in favor of Ambush. The Arbitration Award rests on an extraordinary premise: that an attorney commits malpractice by following official federal government instructions. The United States Victims of State Sponsored Terrorism Fund—the very entity administering the claims process—instructed existing claimants like Rusnak that they "do not need to file additional or separate applications for lump sum catch-up payments" and that "the USVSST Fund cannot accept duplicative filings." USVSST Fund FAQ 7.1; *see* Compl. ¶ 4, *Rusnak v. United States*, No. 1:25-cv-00292-LLA (D.D.C. Jan. 31, 2025) (Ex. A, ¶ 4). Ambush followed that instruction. The Arbitrator found that doing so constituted a breach of the standard of care—in effect, holding that an attorney's duty to his client requires him to knowingly and intentionally contradict official federal government guidelines, and that his failure to do so is malpractice. That proposition is not merely manifest disregard of the law. It holds that an attorney's duty to his client is greater than his duty to be loyal to the law itself.

First, the Arbitration Award is subject to vacatur under 9 U.S.C. § 10(a)(3), which provides that a court may vacate an award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." On March 24, 2026—

6

four days after the Arbitrator denied Ambush's Request for Clarification without explanation—the United States District Court for the District of Columbia issued a 47-page Memorandum Opinion in *Rusnak v. United States*, Case No. 1:25-cv-00292-LLA (Ex. B), that directly undermined the factual basis of the Arbitrator's malpractice finding.

On April 1, 2026, Ambush's counsel promptly filed a Request to Reopen the Record and for Reconsideration of the Malpractice Finding in light of the *Rusnak v. United States* opinion. (Exs. F, G). Rusnak's counsel responded that same evening, arguing that "this submission does not appear to be permitted under any procedure or rule in the AAA Commercial Rules . . .." On April 7, 2026, Sandy Duarte, Manager of ADR Services for the AAA—not the Arbitrator—denied the request, stating that "once a final award has been issued, the arbitrator's role in the case is complete and the hearings cannot be reopened." The Arbitrator herself never reviewed the *Rusnak v. United States* opinion or its implications for the malpractice finding. The institutional process prevented directly relevant evidence from reaching the decision-maker. That is precisely the type of procedural failing that § 10(a)(3) exists to remedy.

Second, the Arbitrator acted in manifest disregard of the law. The Award does not merely misapply a legal standard—it imposes a duty on Ambush to knowingly and intentionally contradict official federal government guidelines and instructions, and then finds malpractice when Ambush declined to do so. The Fund's published guidance stated that existing claimants "do not need to file additional or separate applications" and that the Fund "cannot accept duplicative filings." The Department of Justice itself objected to the successive-application requirement, arguing that it contravened long-standing Fund procedures. Yet the Arbitrator found that Ambush's adherence to this guidance—shared by the Fund, the DOJ, and 274 other claimants—constituted a breach of the standard of care. An award that requires an attorney to

7

defy the authoritative guidance of the very governmental body administering the program at issue is not entitled to confirmation.

Third, the Award is based on speculative and unripe damages. The Arbitrator awarded $685,442.38—the full amount of the lump sum catch-up payment—as damages for malpractice. But DOJ is holding $116,367,440 in reserve for the 274 excluded claimants (Ex. C), GAO has calculated individual payment amounts, and Congress has been asked to amend the governing statute. As the D.C. District Court observed, "Congress has in fact been responsive to concerns about inequities in payments," including by twice authorizing lump sum catch-up payments to classes of excluded claimants. Ex. B, at 40. If Rusnak ultimately receives the catch-up payment through legislative action, his malpractice damages are zero. Indeed, on April 20, 2026, Rusnak filed a motion to alter or amend the judgment under Rule 59(e) and, on May 19, 2026, filed a notice of appeal to the United States Court of Appeals for the District of Columbia Circuit, further demonstrating that the catch-up payment issue remains actively litigated and unresolved. Awarding the full amount of a loss that has not crystallized—and may never crystallize— constitutes an imperfect execution of the Arbitrator's powers within the meaning of 9 U.S.C. § 10(a)(4).

Fourth, Rusnak's own prior litigation positions undermine the Arbitrator's causation finding. In *Rusnak v. United States*, Rusnak alleged that the Fund's procedures and guidance were the cause of his exclusion from lump-sum catch-up payments. (Ex. A ¶¶ 4, 45–48). He sued the government—not his lawyer. He did not allege malpractice or attribute any portion of his loss to Ambush's legal representation. Yet before the Arbitrator, Rusnak advanced the opposite theory of causation: that Ambush's failure to file a second application constituted malpractice and proximately caused his damages. If the Fund's own guidance caused Rusnak's exclusion—

8

as Rusnak told the federal court—then Ambush's decision to follow that guidance cannot be malpractice.

Each of these grounds independently satisfies the meritorious defense requirement under Rule 55(c). Taken together, they demonstrate that the Arbitration Award is subject to serious challenge on multiple fronts—and that the challenge is not merely colorable, but compelling. The Fourth Circuit's "strong preference" for resolving disputes on their merits, *Colleton*, 616 F.3d at 417, weighs decisively in favor of permitting Ambush to defend against confirmation.

### B.    Acting with Reasonable Promptness

This motion to set aside is filed well within the thirty-day deadline set by the Court. (Notice of Default [ECF 9]). The Court has held that a defendant acted reasonably promptly when filing a Motion to Vacate 33 days after entry of default. *Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 718 (D. Md. 2001). This factor therefore weighs in Ambush's favor.

### C.    Personal Responsibility for the Default

The default did not result from willful disregard of this proceeding. It resulted from a structural gap in legal representation during an active, good-faith challenge to the Arbitration Award. Furthermore, as detailed in Respondents' simultaneously filed Motion to Dismiss under Rule 12(b)(5), none of Rusnak's attempts to serve process complied with the Federal Rules of Civil Procedure—further negating any personal responsibility for the default.

Throughout the arbitration, Ambush was represented by Angel Sosa-Baez and Nayda Perez Roman of Toro, Colon, Mullet, P.S.C. ("TCM"), a law firm based in San Juan, Puerto Rico. TCM's engagement was limited to the AAA arbitration proceedings. Neither Mr. Sosa-

Baez nor Ms. Perez Roman is admitted to practice before this Court or any federal court in the District of Maryland. TCM was not retained to represent Ambush in post-arbitration federal court proceedings.

When Rusnak filed the Petition to Confirm in this Court on March 30, 2026, Ambush was in the process of transitioning counsel for post-arbitration matters. Ambush retained John Shoreman of McFadden & Shoreman to challenge the Award, and Mr. Shoreman filed a Petition to Vacate in the United States District Court for the District of Columbia on April 14, 2026. However, no counsel had yet entered an appearance in this Court on Ambush's behalf. The default was entered on April 29, 2026—during this transition period.

At no point did Ambush cease efforts to challenge the Award. The timeline demonstrates continuous, good-faith engagement:

On March 12, 2026, Ambush filed a Request for Clarification with the Arbitrator.

On March 20, the Arbitrator denied the request without explanation.

On March 24, the D.C. District Court issued its opinion in *Rusnak v. United States*.

On April 1, Ambush's counsel filed a Request to Reopen the Record. This was denied on April 7.

On April 14, Ambush filed the Petition to Vacate in the D.C. District Court.

This Motion to Set Aside is filed within thirty days of the entry of default.

There was no gap in Ambush's efforts to challenge the Award—only a gap in which counsel was authorized to act in which forum. This factor weighs in Ambush's favor.

**D.    Prejudice to Rusnak**

Setting aside the default is not prejudicial to Rusnak. He faces "no disadvantage . . . beyond that suffered by any party which loses a quick victory." *Augusta Fiberglass Coatings,*

*Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988). No discovery has been conducted. No briefing on the merits has occurred. A Petition to Vacate raising substantial grounds is pending in the D.C. District Court. This factor weighs in favor of Ambush.

### E.   History of Dilatory Action

There is no history of dilatory conduct. Ambush has pursued every available avenue to challenge the Award without interruption: Request for Clarification (March 12), Request to Reopen the Record (April 1), Petition to Vacate (April 14), and this Motion within thirty days of default. There is no period of inaction and no pattern of delay. This factor weighs in favor of Ambush.

### F.   Availability of Less Drastic Sanctions

Default judgment confirming a $685,442.38 arbitration award—without any merits adjudication—is the most drastic sanction available. The less drastic alternative is plain: set aside the default and permit Ambush to defend, or stay confirmation pending resolution of the Petition to Vacate in the D.D.C. *See infra* Part II. This factor weighs in favor of Ambush.

The *Payne* factors favor Ambush. The "time-worn commitment to the resolution of disputes on their merits," *Colleton*, 616 F.3d at 420, also favors resolving this case on its merits.

### II.   ADDITIONALLY, OR IN THE ALTERNATIVE, THE COURT SHOULD STAY CONFIRMATION PENDING RESOLUTION OF THE PETITION TO VACATE

Whether or not the Court sets aside the entry of default, Ambush respectfully requests that the Court stay confirmation pending resolution of the Petition to Vacate filed in the United

States District Court for the District of Columbia, *Ambush LLC v. Rusnak*, Case No. 1:26-cv-01247-CKK.

Section 9 provides that the court "must grant" an order confirming an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9. The word "unless" is a condition precedent: the court must first determine whether statutory grounds for vacatur exist before it may confirm. Where a timely petition to vacate is pending in a court of competent jurisdiction—as here, filed on April 14, 2026, well within the three-month limitations period of 9 U.S.C. § 12—confirming the Award before that petition is resolved would nullify a proceeding that Congress expressly authorized.

Because this confirmation proceeding and the D.D.C. vacatur petition are completely freestanding applications filed in separate federal courts, each requiring its own independent jurisdictional basis, *see Badgerow v. Walters*, 596 U.S. 1, 5, 8 (2022), the orderly administration of justice requires coordination—not a race to judgment. A stay is the mechanism by which this Court can effect that coordination.

A stay is independently warranted under the inherent authority recognized in *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). The power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* Exercising that power requires the court to "weigh competing interests and maintain an even balance." *Id.* at 255. The balance here is not close.

Ambush faces irreparable harm if this Court confirms the Award while the D.D.C. vacatur petition remains pending. Confirmation would convert the Award into a federal judgment, effectively mooting the vacatur proceeding that Congress expressly authorized under 9

12

U.S.C. § 10. That is not speculative prejudice—it is the certain extinguishment of a statutory right. Rusnak, by contrast, suffers no cognizable prejudice from a stay. No discovery has been conducted. No briefing on the merits has occurred. The Award remains intact during the stay, and Rusnak's rights under it are undiminished. His only loss is "a quick victory"—which is not prejudice at all. *See Augusta Fiberglass*, 843 F.2d at 812.

The requested stay also satisfies *Landis*'s requirement of moderation. A stay of "indefinite duration" is disfavored, *id*. at 255, and a stay order is "immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits." *Id*. at 257. The stay Ambush requests is inherently bounded: it expires when the D.D.C. resolves the Petition to Vacate. If the D.D.C. vacates the Award, this proceeding becomes moot. If it denies vacatur, confirmation may proceed without any prejudice to Rusnak. Either way, the stay promotes judicial economy by avoiding the risk of contradictory dispositions of the same Award by two federal courts.

**CONCLUSION**

For the foregoing reasons, Respondents respectfully request that this Court:

1. Set aside the entry of default entered by the Clerk on April 29, 2026, pursuant to Federal Rule of Civil Procedure 55(c);

2. Grant Respondents' simultaneously filed Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process, which is incorporated herein by reference;

3. Additionally, or in the alternative, stay all proceedings pending resolution of the Petition to Vacate Arbitration Award in *Ambush LLC v. Rusnak*, Case No. 1:26-cv-01247-CKK (D.D.C.); and

4.  Grant such other and further relief as the Court deems just and proper.


Dated: May 21, 2026                                    Respectfully submitted,



                                                       */s/ John M. Shoreman*
                                                       John M. Shoreman (Bar No. 12931)



McFADDEN & SHOREMAN
1701 Pennsylvania, NW
Suite 200
Washington, DC 20006
(571) 296-8450
*jms@mcfaddenshoreman.com*


*Attorney for Respondents*
*Joshua M. Ambush, LLC and Joshua M. Ambush*

14