# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELVIS RUSNAK,
9 Shady Mill Lane,
Milford, New Jersey 08848

    and

CLAYTON ZOOK
2869 Hastings Court,
Oakland Township, Michigan 48306

        Plaintiffs,

    v.

THE UNITED STATES OF AMERICA;

COMPTROLLER GENERAL OF THE
UNITED STATES, in his official capacity
Government Accountability Office
441 G Street, N.W.
Washington, DC 20548;

SPECIAL MASTER,
U.S. VICTIMS OF STATE SPONSORED
TERRORISM FUND, in her official capacity
950 Pennsylvania Avenue, N.W.
Washington, DC 20530; and

THE UNITED STATES DEPARTMENT
OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, DC 20530

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT**

**Civil Action No.** _____

## **COMPLAINT**

1. Plaintiffs Elvis Rusnak and Clayton Zook, by and through their attorneys, bring the following action arising out of the laws of the United States and allege as follows.

**PARTIES**

2.      The Plaintiffs are veterans who were injured in the 1996 Khobar Towers bombing while serving overseas as active-duty members of the United States Air Force.  It is undisputed, and the administrative record will reflect, that Plaintiffs had eligible claims pending before the U.S. Victims of State Sponsored Terrorism Fund ("USVSST Fund" or "Fund") when the Fairness for 9/11 Families Act ("Fairness Act") was enacted on December 29, 2022, and that they are each a "1996 Khobar Towers bombing victim," as that term is defined by statute.

3.      The Comptroller General is charged by the Fairness Act with responsibility for issuing a report setting forth the amounts of lump sum catch-up payments from the Fund for "each 1983 Beirut barracks bombing victim" and "each 1996 Khobar Towers bombing victim." Acting through the Government Accountability Office ("GAO"), the Comptroller General issued this report on November 1, 2024.  *U.S. Victims of State Sponsored Terrorism Fund: 1983 Beirut Barracks and 1996 Khobar Towers Bombing Claimants Due $614 Million*, GAO-25-107564 ("Report").  The Report included the amounts of lump sum catch-up payments computed by the Comptroller General for such victims, including the two Plaintiffs.  *Id*. at 20.  However, the Report also offered an incorrect legal conclusion that the Fairness Act required claimants like Plaintiffs—whose eligible claims were accepted by the Special Master before enactment of the Fairness Act—to submit duplicative applications to receive lump sum catch-up payments.  The Report further opined that the Special Master was required to amend Fund procedures to accept such duplicative applications.

4.      The Special Master is charged by statute with the general administration of the Fund.  The Special Master was required to authorize lump sum catch-up payments to "each 1983 Beirut barracks bombing victim" and "each 1996 Khobar Towers bombing victim" in the

amounts reported to her by the Comptroller General. The Special Master took the position that the GAO Report "establishes which 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims are eligible" for catch-up payments under the Fairness Act. USVSST Frequently Asked Questions ("FAQ") 7.3. Notwithstanding the Special Master's deferral to GAO on eligibility for lump sum catch-up payments, the Special Master refused to implement the related procedures called for by GAO: "Claimants do not need to file additional or separate applications for lump sum catch–up payments. Each claimant has one claim before the USVSST Fund for all compensation, including lump sum catch-up payments. The USVSST Fund cannot accept duplicative filings." FAQ 7.1. GAO's erroneous legal conclusion that duplicative applications were required—combined with the Special Master's conflicting refusal to amend Fund procedures to accept them—caused the Special Master to unlawfully withhold authorization of lump sum catch-up payments for Plaintiffs and others.

5. The Department of Justice provides staff that supports the Special Master and Fund. On October 3, 2024, the Department of Justice issued a formal memorandum responding to the Comptroller General's draft report. U.S. Dep't of Justice, *Response to Government Accountability Office Draft Report* (Oct. 3, 2024) ("DOJ Mem."). DOJ criticized and disagreed with certain legal conclusions in the draft report. Those objectional conclusions were included in the Comptroller General's final Report despite unresolved conflicts among the agencies. Seemingly disagreeing in part with separate positions staked out by GAO and the Special Master, DOJ concluded that the Fairness Act "left Fund application procedures and eligibility determinations in the discretion of the Special Master." DOJ Mem. at 5.

## NATURE OF THE CASE

6. The Fairness Act was enacted on December 29, 2022. It required the Comptroller

General to report the amount of proposed lump sum catch-up payments for "each 1983 Beirut barracks bombing victim" and "each 1996 Khobar Towers bombing victim."  These terms are defined in the Fairness Act to include each claimant "who has an eligible claim under [34 U.S.C. § 20144(c)]" arising out of those bombing incidents, without regard to when the claimant's application was timely filed.  *Id*. at § 20144(j)(15), (16).  Congress further mandated that the Special Master "shall authorize" such payments in the amounts reported by the Comptroller General.

7.      The Comptroller General computed and reported the amounts of such catch-up payments, including for the Plaintiffs. *See* Report at 20 ("To ensure that the Fund can identify these claimants and make payments if the statute is amended, we are providing the claim identification numbers and lump sum catch-up payment amounts that we calculated for the 274 claimants.").

8.      The Special Master has failed to fulfill her statutory obligation to authorize payment to Plaintiffs in the amounts reported by the Comptroller General.

9.      The Special Master's failure to act as required by the Fairness Act springs from the unresolved disputes among the Comptroller General (acting through the Government Accountability Office ("GAO")), the Department of Justice ("DOJ"), and the Special Master over procedural requirements and statutory interpretation.

10.      In short, GAO took the position that duplicative applications are permissible, and that they are required for claimants who submitted timely applications before the Fairness Act was enacted.  The Special Master did not take a position on whether duplicative applications were required but rather deferred to GAO's eligibility determination for lump sum catch-up payments.  However, the Special Master also made clear that the Fund would not accept the

duplicative applications that GAO was requiring for eligibility. And DOJ appears to have disagreed with both agencies. DOJ disagreed with GAO's conclusion that duplicative applications were required. DOJ also disagreed with the Special Master's conclusion that GAO is responsible for determining eligibility for lump sum catch-up payments.

11.     These disagreements have led to a Kafkaesque situation: An intra-government disagreement over bureaucratic procedure and statutory interpretation has led to substantive statutory violations that are harming Congress's intended beneficiaries. This is all the more frustrating and capricious because these disputes are largely academic and irrelevant to the Special Master's clear statutory obligation to authorize lump sum catch-up payments for Plaintiffs. Even worse, when the statute is properly interpreted, there is no basis for any of the disagreements in the first place. Because the agencies have been unwilling or unable to resolve their disputes and act in accordance with law, Court intervention is needed to sort this bureaucratic mess and determine what the law requires.

12.     Plaintiffs seek declaratory and injunctive relief to address the unlawful agency actions and inactions set forth in this Complaint.

13.     Plaintiffs do not challenge any written decision of the Special Master made in accordance with 34 U.S.C. § 20144(b)(3). Plaintiffs do not challenge the one-time determination of their eligibility, which was decided favorably by the Special Master in accordance with published Fund procedures. Plaintiffs do not challenge any decision of the Special Master regarding the methodology for computing payments, or the Special Master's computation of individual payments. Plaintiffs do not challenge the methodology by which the Comptroller General computed the proposed lump sum catch-up payments at issue here, or the specific amounts of those payments as computed by the Comptroller General.

14.     Adjudication of Plaintiffs' claims in this case is entirely independent of—and will have no effect on—the timing and amount of catch-up payments to be made to other victims of the 1983 Beirut barracks bombing or the 1996 Khobar Towers bombing.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1361.

16.     The Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, supplies the cause of action and waives sovereign immunity for Plaintiffs' claims.

17.     Plaintiffs seek relief under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

18.     Venue in this Court is proper because, upon information and belief, one or more defendants reside in the District of Columbia, and a substantial part of the events giving rise to the claim occurred within the District of Columbia.  *See* 28 U.S.C. § 1391(e)(1).

## FACTUAL BACKGROUND

**The U.S. Victims of State Sponsored Terrorism Fund**

19.     In 2015, Congress created the U.S. Victims of State Sponsored Terrorism Fund (the "Fund").  34 U.S.C. § 20144.  The Fund compensates certain victims of acts of international state sponsored terrorism through regular (annual, when funds are available) payment distribution rounds, which are to continue through January 2, 2039.  *Id*. § 20144(e)(6).  In general, applicants to the Fund assign to the United States government the right to collect on money judgments against a state sponsor of terrorism in exchange for future distributions from the Fund.  Funding is provided by: (1) direct appropriations by Congress; and (2) certain recoveries by the U.S. government in civil and criminal proceedings.

6

20.     The Fund is administered by a Special Master, who is appointed by the Attorney General, and it is supported by Department of Justice employees.

21.     The Special Master makes a one-time determination of eligibility for each applicant based upon the statutory requirements set forth in 34 U.S.C. § 20144(c).

    a.     The Special Master's one-time eligibility determination is documented in a letter of eligibility.

    b.     Once determined to be eligible, eligibility letters are not re-issued in subsequent years to claimants already determined to be eligible.

    c.     Notices of eligibility set forth an applicant's assigned claim number and provide the following written determinations of the Special Master: (1) the eligible compensatory damages amount; (2) the amount offset for sources other than the Fund; and (3) the total eligible claim amount.

22.     When funding is available, the Fund is required to make regular distributions to victims with eligible claims.  In general, regular distributions are "pro rata," meaning that each round of regular distributions is "based on the amounts outstanding and unpaid on eligible claims, until such amounts have been paid in full or the Fund is closed."  34 U.S.C. § 20144(d)(3)(A)(i)(II).  The Special Master determines the amount of regular distributions based upon statutory formulas and provides written notice of such determinations.

23.      The Victims Act has been amended three times since its enactment in 2015 through the following legislation: (1) the United States Victims of State Sponsored Terrorism Fund Clarification Act (November 21, 2019); (2) the Sudan Claims Resolution Act (December 27, 2020); and (3) the Fairness Act (December 29, 2022).

24.     In addition to periodic regular distributions, Congress has twice mandated "lump

7

sum catch-up payments" to be authorized for certain categories of claimants.

   a.  In contrast with regular distributions (which are computed by the Special Master), lump sum catch-up payments are computed by the Comptroller General, and he is required to report the amount of lump sum catch-up payments to the Special Master.

   b.  The Special Master must "authorize" such catch-up payments "in amounts" reported by the Comptroller General.  34 U.S.C. §§ 20144(d)(4)(C)(iv)(I), (D)(iv)(II). In contrast with regular distributions, the Special Master's statutory role with regard to lump sum catch-up payments is ministerial: allocating for payment the amounts computed by the Comptroller General, and ensuring those payment amounts are set aside until they are disbursed. *See Braun v. United States*, 31 F.4th 793, 800 (D.C. Circuit 2022) (opining that "authoriz[ing] . . . payment" occurs "when the fund issues a notice allocating a specific payment amount for distribution.").

**The Fairness Act**

  25.  The Fairness Act, H.R. 2617, Div. MM, Sec. 101 (Dec. 29, 2022), amended the Fund's enabling legislation for the third time.

  26.  The Fairness Act extended the deadline for application submission for certain 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims who obtained a judgment before its date of enactment.  The Fairness Act did this by replacing entirely the previous deadline ("90 days after the date of obtaining final judgment") with a deadline of "180 days from the date of enactment of such Act [December 29, 2022]."  H.R. 2617-1649, Div. MM, Sec. 101(b)(2).

  27.  The Fairness Act also mandated lump sum catch-up payments for each 1983 Beirut barracks bombing victim and each 1996 Khobar Towers bombing victim by requiring that

the Special Master "*shall authorize lump sum catch up payments from the reserve fund,*" 34

U.S.C. § 20144(d)(4)(D)(iv)(II), in amounts equal to those set forth in the Comptroller General's

Report (as described in subclauses I and II of clause (d)(4)(D)(iii)). Those subclauses require the

Comptroller General to report on the amount of the proposed lump sum catch-up payment "*for

each 1983 Beirut barracks bombing victim*," and "*for each 1996 Khobar Towers bombing

victim*."

28.    The terms "1983 Beirut barracks bombing victim" and "1996 Khobar Towers

bombing victim" are defined by the Fairness Act to mean a person "*who has an eligible claim

under section (c) that arises out of*" one of those two bombing incidents. Subsection (c) sets

forth the Fund's eligibility requirements.

29.    The Fairness Act thus mandated that the Special Master "shall authorize" lump

sum catch-up payments from a reserve fund in amounts set forth in the Report of the Comptroller

General.  The Comptroller General, in turn, was required to include in his Report his

determination of the amount of "the proposed lump sum catch-up payment for each 1996 Khobar

Towers bombing victim."

30.    Congress appropriated $3 billion to a reserve fund within the larger Fund for lump

sum catch-up payment disbursements to 1983 Beirut barracks bombing victims and to 1996

Khobar Towers bombing victims.  The lump sum catch-up payment reserve fund is to be

terminated not later than 1 year after the Special Master disperses all lump sum catch-up

payments.  All amounts remaining in the reserve fund after disbursement of all lump sum catch-

up payments are to be deposited into the Fund.  Once deposited into the Fund, such funds will be

unavailable for lump-sum catch-up payment disbursements.  The government has represented in

writing that that funds sufficient to address the issues you raise, currently in the reserve fund for

lump sum catch-up payments established by 34 U.S.C. § 20144(d)(4)(D), will remain available while the Department continues to consider various matters related to the lump sum catch-up payments.

31.    Pursuant to his duties under the Fairness Act, the Comptroller General issued the Report on November 1, 2024 that included proposed lump sum catch-up payment amounts for each of the Plaintiffs.

a.    GAO determined that as of December 29, 2022, the pertinent claimants (i.e., non-9/11 claimants) had received payments from the fund totaling $1.448 billion in connection with net eligible claims totaling $9.027 billion.  This amounted to an average of 16.0353% of net eligible claims received from the Fund.  The Comptroller General, acting through GAO, used this figure to compute proposed lump sum catch-up payment amounts for 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims, including Plaintiffs.

b.    GAO determined that approximately $614 million was to be paid to eligible claimants who had submitted applications between December 29, 2022 and June 27, 2023.

c.    GAO expressed the view that the Fairness Act required 274 eligible claimants (who had applied to the Fund before enactment) to resubmit applications in order to be authorized lump sum catch-up payments.  *See* Report at 5 ("In order to receive these payments, Beirut barracks and Khobar Towers bombing victims must have submitted applications to the Fund within the statutory application time frame, which was December 29, 2022, through June 27, 2023.").  DOJ disagreed.  GAO's conclusion was incorrect as a matter of law.

d.    GAO also expressed the view that:  "The Fairness Act, in directing the

Comptroller General to determine amounts of lump sum catch-up payments, also permitted

Beirut barracks bombing and Khobar Towers bombing victims who had previously applied and

been deemed eligible for regular distribution payments from the Fund to submit duplicate or

successive applications to the Fund in order to apply for these catch-up payments."  Report at 6.

The Special Master and DOJ disagreed.

e.    Notwithstanding its erroneous view that duplicative applications were

required to be submitted, GAO computed lump sum catch-up payments for 274 otherwise

eligible claimants whose applications were submitted prior to December 29, 2022, including the

Plaintiffs.  The Comptroller General included those amounts in his Report to the Special Master.

*See* Report at 20 ("To ensure that the Fund can identify these claimants and make payments if

the statute is amended, we are providing the claim identification numbers and lump sum catch-up

payment amounts that we calculated for the 274 claimants to the Special Master with this

report.").  In the public version of its Report, GAO stated that the proposed lump sum catch-up

payments for those 274 claimants, including Plaintiffs, totaled approximately $116 million.

f.    Under GAO's computations a maximum total of approximately $730

million in catch-up payments would be authorized to 1983 Beirut barracks bombing victims and

1996 Khobar Towers bombing victims.

g.    Based upon GAO's computations, between approximately $2.270 billion

and $2.386 billion will be deposited into the Fund upon the completion of disbursement of catch-

up payments to 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing

victims.

**Mr. Elvis Rusnak and Mr. Clayton Zook**

32.    On June 27, 2019, Mr. Rusnak obtained a money judgment against a state sponsor

of terrorism arising out of the June 25, 1996, bombing of the Khobar Towers housing complex in Saudi Arabia.  That judgment qualified Mr. Rusnak to apply to the Fund.

33.      On July 2, 2020, Mr. Zook obtained a money judgment against a state sponsor of terrorism arising out of the June 25, 1996, bombing of the Khobar Towers housing complex in Saudi Arabia.  That judgment qualified Mr. Zook to apply to the Fund.

34.      Plaintiffs submitted timely and complete applications to the Fund prior to December 29, 2022.

35.      The Special Master determined that Plaintiffs' claims met all eligibility requirements of the Victims Act, as amended.

36.      The Special Master separately issued each Plaintiff a notice of eligibility for payments from the Fund.

    a.      Mr. Rusnak's notice of eligibility reflected a claim number of 105516; an eligible compensatory damages amount of $7,000,000; an offset for sources other than the Fund of $0; and a total eligible claim amount of $7,000,0000.

    b.      Mr. Zook's notice of eligibility reflected a claim number of 113242; an eligible compensatory damages amount of $7,000,000; an offset for sources other than the Fund of $0; and a total eligible claim amount of $7,000,0000.

37.      Plaintiffs are each a "1996 Khobar Towers bombing victim," as that term is defined in the Fairness Act.  See 34 U.S.C. § 20144(j)(16).

38.      As of December 29, 2022, when the Fairness Act became law, Mr. Rusnak had received a single regular distribution from the fund totaling approximately 5.84% of his claim, and Mr. Zook had yet to receive a distribution from the Fund.  Both Plaintiffs subsequently received regular fourth round distributions and were notified that they would receive fifth round

distributions in 2025.

39. The Plaintiffs both have claims before the Fund that the Special Master determined to be "eligible" and which arise out of the June 25, 1996 bombing of the Khobar Tower housing complex in Saudi Arabia. Those claims remain pending and eligible as of the date of filing of this Complaint.

40. By law, the Special Master was required to take the ministerial step of allocating payment to the Plaintiffs in the amounts determined by the Comptroller General by "authorizing" such payment. The Special Master failed to authorize payment to Plaintiffs in violation of the Fairness Act. The Special Master's failure to act has caused Plaintiffs to suffer legal wrong. Plaintiffs seek an order compelling this agency action, which has been unreasonably and unlawfully withheld.

41. On January 14, 2025, Plaintiffs (through counsel) wrote to the Special Master, the Department of Justice, and the Comptroller General to urge the agencies to resolve their differences and adopt the correct interpretation of the Fairness Act. *See* Exhibit A (*Letter from Williams & Connolly LLP to the Comptroller General et al.* (Jan. 14, 2025) ("1/14/25 W&C Letter")). As of the date of filing this Complaint, Plaintiffs have received no substantive response to their letter.

42. Plaintiffs have not been authorized lump sum catch-up payments in the amounts computed by the Comptroller General, and on information and belief, Plaintiffs will not be authorized such payments due to the unlawful agency actions and inactions detailed herein.

**GAO Misinterpreted the Fairness Act To Require Duplicative Applications**

43. GAO reached an incorrect conclusion that 274 Beirut barracks and Khobar Towers claimants (including the Plaintiffs) needed to resubmit applications to be authorized lump sum catch-up payments. The GAO's errors are explained—and the proper statutory

13

interpretation is provided—in Exhibit A, which is incorporated by reference.

**The Special Master May Not Adhere to Non-Statutory Procedures that Conflict with Substantive Provisions of the Fairness Act**

44.     Congress directed the Special Master to update Fund procedures and guidance to conform to the Fairness Act within 30 days of its enactment.

45.     Fund procedures existing before the Fairness Act precluded the submission of more than one application.

46.     The Special Master did not change Fund procedures in response to enactment of the Fairness Act to allow for more than one application to be submitted by a claimant.

47.     The Special Master refused to accept second applications submitted by 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims in response to the lump sum catch-up provisions of the Fairness Act.

48.     Plaintiffs plead in the alternative that if the Court were to find that the Fairness Act required submission of additional applications by Plaintiff for catch-up payments, then it was unlawful and an abuse of discretion for the Special Master to have failed to change Fund procedures to permit them to submit successive applications.

49.     By requiring the Special Master to conform Fund procedures and guidance to the statute, Congress made clear that substantive matters such as receipt of catch-up payments was to be determined by the terms of the statute, not the Special Master's adherence to preexisting bureaucratic administrivia.

50.     If a second application were determined to be required for victims of the 1983 Beirut barracks or 1996 Khobar Towers bombings to be authorized catch-up payments, the Court should find that:

14

a.     Good cause exists to extend the deadline to submit such additional applications that previously were foreclosed by the Fund's procedures before the deadline expired.  *See* 34 U.S.C. § 20144(c)(3)(B) ("For good cause shown, the Special Master may grant a claimant a reasonable extension of a deadline under this paragraph."); and

b.     The Special Master must update her procedures and guidance to accept duplicative applications if the Court decides that Congress required as much in the Fairness Act with respect to lump sum-catch up payments for 1996 Khobar Towers bombing victims.  34 U.S.C. § 20144(b)(2)(A) (stating that "[n]ot later than 30 days after the date of enactment of the Fairness for 9/11 Families Act, the Special Master shall update, as necessary as a result of the enactment of such Act, such procedures and other guidance previously issued by the Special Master.").

**The Fairness Act Requires that Lump Sum Catch-Up Payments Be Authorized for Plaintiffs in the Amounts Computed by the Comptroller General**

51.     There is no practical or legal impediment to the Special Master authorizing catch-up payments for Plaintiffs.

52.     DOJ has specifically found that there is no information needed to be supplied in an additional application to facilitate catch-up payments.  DOJ Mem. at 7 & n.10.  All information is contained in the single application submitted by all eligible claimants.

53.     GAO computed the lump-sum catch-up payment amounts for Plaintiffs and included those amounts in his Report to the Special Master and Congressional Committees.

54.     Because those amounts are properly set forth in the Report specified by 34 U.S.C. §20144(d)(1)(D)(iii), the Special Master was required to authorize catch-up payments for the Plaintiffs.

55.     The Fairness Act charged GAO only with auditing the fund, publishing notice of

computational methodology, and issuing a report with catch-up payment amounts. GAO was not otherwise delegated any responsibility for interpreting the statute. The Special Master is not bound by GAO's incorrect interpretation regarding the procedural requirement for a duplicative application.

## Judicial Review Under the Administrative Procedure Act

56.     Under the Administrative Procedure Act, this Court is to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.

57.     This Court is empowered to "compel agency action unlawfully withheld or unreasonably delayed," and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id*. at §§ 706(1), (2)(A), (C).

58.     "Agency action" includes an agency's "failure to act." *See* 5 U.S.C. § 701(b)(2); 5 U.S.C. § 551(13).

59.     With regard to the actions alleged herein and for the purposes of the Administrative Procedure Act, the Special Master, Department of Justice, and GAO are agencies.

16

## COUNT I
**Plaintiffs Were Not Required to Submit Duplicative Applications To Be Authorized Lump Sum Catch-Up Payments In the Amounts Computed by the Comptroller General**
Administrative Procedure Act
Declaratory Judgment Act
Mandamus Act
(Injunctive and Declaratory Relief Against Defendants)

60.     Plaintiffs repeat and reallege the foregoing allegations set forth above as if fully set forth herein.

61.     Authorization for lump sum catch-up payments has unlawfully been withheld for Plaintiffs as a result of the Comptroller General's incorrect conclusion that Plaintiffs (and others similarly situated) would have to submit duplicative applications to receive such payments under the Fairness Act.

62.     The Comptroller General's conclusion is based upon an incorrect interpretation of the Fairness Act.

63.     Plaintiffs request that this Court declare that the Fairness Act requires the Special Master to authorize lump sum catch-up payments for each 1983 Beirut barracks bombing victim and 1996 Khobar Towers bombing victim, as those terms are defined by the Fairness Act in amounts set forth in the Comptroller General's Report of November 1, 2024.

64.     Plaintiffs request that this Court order the Special Master to authorize catch-up payments for Plaintiffs in the amounts computed by the Comptroller General.

## COUNT II
**GAO's Interpretation of the Audit-and-Publish Provision of the Fairness Act Does Not Limit the Scope of the Special Master's Obligation to Authorize Catch-Up Payments**
Administrative Procedure Act
Declaratory Judgment Act
(Declaratory Relief Against Defendants)

65.     Plaintiffs repeat and reallege the foregoing allegations set forth above as if fully set forth herein.

17

66.     In its November 1, 2024 report, GAO proffered an (incorrect) interpretation of the Fairness Act's audit-and-publish provision (34 U.S.C. § 20144(d)(4)(D)(i)).

67.     GAO incorrectly concluded that the audit-and-publish provision indirectly limited the scope of the Special Master's statutory obligation to authorize catch up payments (34 U.S.C. § 20144(d)(4)(D)(iv)).

68.     Plaintiffs request that this Court declare that the audit-and-publish provision of the Fairness Act does not limit the scope of the Special Master's statutory obligation to authorize catch up payments.

**<u>COUNT III</u>**
**The Special Master Is Required to Authorize Catch-Up Payments to Plaintiffs**
Administrative Procedure Act
Declaratory Judgment Act
Mandamus Act
(Declaratory and Injunctive Relief Against Defendants)

69.     Plaintiffs repeat and reallege the foregoing allegations set forth above as if fully set forth herein.

70.     The Special Master has unlawfully withheld actions required by the Fairness Act, and/or engaged in agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and/or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

71.     Specifically the Special Master has failed to comply with the statutory requirement to "***authorize lump sum catch-up payments from the reserve fund . . . in amounts equal to the amounts described in subclauses (I) and (II) of clause (iii)***" as to each Plaintiff.  34 U.S.C. § 20144(d)(4)(D)(iv)(II) (emphasis added).

72.     Plaintiffs request this Court declare that the Special Master must authorize payments for each 1983 Beirut barracks bombing victim and 1996 Khobar Towers bombing

18

victim, as those terms are defined by the Fairness Act in amounts set forth in the Comptroller General's Report of November 1, 2024.

73. Plaintiffs further request that the Court order the Special Master to authorize catch-up payments for Plaintiffs in the amounts computed by the Comptroller General.

**<u>COUNT IV</u>**
**The Special Master Was Required To Change Fund Procedures To Conform to Statutory Requirements**
Administrative Procedure Act
Declaratory Judgment Act
Mandamus Act
(Injunctive and Declaratory Relief Against Defendants)

74. Plaintiffs repeat and reallege the foregoing allegations set forth above as if fully set forth herein.

75. In the alternative (should the Court find that the Fairness Act required the submission of duplicative applications for lump-sum catch up payments or that it cannot review the government's interpretation of that provision), Plaintiffs allege that the Special Master acted unlawfully, arbitrarily, and capriciously by failing to update Fund procedures and guidance to allow for the submission of such applications after enactment of the Fairness Act.

76. Plaintiffs request that the Court remedy this statutory violation by declaring that the Special Master was required as a result of the Fairness Act to modify Fund procedures to allow 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims to submit additional applications for lump sum catch-up payments, and that there is good cause under the statute to extend the statutory deadline for a reasonable period of time following the issuance of such procedures.

77. Plaintiffs further request that the Court order the Special Master to issue such procedures and accept additional applications for catch-up payments.

19

## COUNT V
**Preservation of Reserve Funds for the Duration of this Case**
Administrative Procedure Act
(Injunctive Relief Against Defendants)

78.    Plaintiffs repeat and reallege the foregoing allegations set forth above as if fully set forth herein.

79.    Congress appropriated $3 billion to a reserve fund within the larger Fund to be used for the disbursement of lump sum catch-up payments to 1983 Beirut barracks bombing victims and to 1996 Khobar Towers bombing victims, including the Plaintiffs.

80.    The lump sum catch-up payment reserve fund may be terminated after the Special Master disperses all lump sum catch-up payments, and it must be terminated not later than 1 year thereafter.

81.    Upon termination, all amounts remaining in the reserve fund are to be deposited into the Fund.  Once deposited into the Fund, funds are unavailable for lump-sum catch-up payments.

82.    If the reserve fund is terminated and all of its funds are deposited into the Fund, Plaintiffs would be unable to be disbursed lump-sum payments even if their claims are otherwise meritorious.

83.    This Court may issue orders necessary to "preserve status or rights pending conclusion" of this case.  5 U.S.C. § 705.

84.    Plaintiffs seek such an order to preserve the availability of funds necessary to disburse their catch-up payments should they prevail in this case.

20

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and a judgment against Defendants:

85.     Providing the declaratory and injunctive relief requested in Counts I through V above;

86.     Awarding Plaintiffs reasonable attorney's fees and other costs; and

87.     Awarding such other relief as this Court may deem just and proper.


Dated: January 31, 2025

Respectfully Submitted,
WILLIAMS & CONNOLLY LLP


By   /s/F. Greg Bowman
     F. Greg Bowman (D.C. Bar No. 486097)
     Edward C. Reddington (Bar No. 463507)
     680 Maine Avenue, SW
     Washington, DC 20024
     (202) 434-5000

     *Attorneys for Plaintiffs*