# EXHIBIT D

**AMERICAN ARBITRATION ASSOCIATION**

|  |  |
|---|---|
| JOSHUA M. AMBUSH, LLC, and JOSHUA M. AMBUSH, Claimants/Counterclaim Respondents, v. ELVIS J. RUSNAK, Respondent/Counter-Claimant. | Case No. 01-25-0000-0363 |

## CLAIMANTS' REQUEST FOR INTERPRETATION OF AWARD

On February 20, 2026, the arbitrator in this matter, Judge Irma S. Raker ("Arbitrator"), determined that Claimants Joshua M. Ambush, LLC and Joshua M. Ambush (together, "Ambush") "committed malpractice in failing to file properly and timely," on behalf of Respondent and Counter-Claimant Elvis J. Rusnak ("Rusnak"), a petition "for catch up payments to the Fairness Fund." Award at 9, ¶ 4. The Arbitrator awarded Rusnak "$685,442.38 in damages jointly and severally against Ambush for their conduct related to the catchup Fund payments." *Id.* at 10, ¶ 8.

The Award does not address Rusnak's concession that, if he receives the lump sum catch-up distribution in the future, he will become obligated to return to Ambush the damages awarded by the Arbitrator, or any obligation by Rusnak to pursue collection of such distribution. And, the Award is ambiguous as to whether Ambush is entitled to its contractual share of the United States Victims of State Sponsored Terrorism Fund's (the "Fund") distributions that were allocated before the Award was issued and that are unrelated to the catch-up payment.

Page **1** of 7

Rule 52(a) of the Commercial Rules of the American Arbitration Association effective September 1, 2022, provides, in relevant part, that "[w]ithin 20 calendar days after the transmittal of any award, any party, upon notice to the other parties, may request [that] the arbitrator … interpret the award[.]"  Ambush respectfully requests that the Arbitrator exercise her authority under Rule 52(a) to resolve the aforementioned incompleteness and ambiguity present in the Award.

I. **The Award is incomplete and ambiguous because it does not address Rusnak's concession that he must return the awarded damages in the event of a future recovery.**

The award of damages in this case does not account for the fact that the damages awarded are damages that Rusnak may be able to recover from the Fund, which is a relief that he currently is pursuing in *Rusnak, et al., v. USA, et al.*, No. 1:25-cv-00292 (D.D.C.) ("*Rusnak v. USA*"). Such future recovery would be an impermissible double recovery under Maryland law. The Award makes no provision to avoid the windfall that would result to Rusnak or the injustice that would result to Ambush.

The parties, in fact, agree on this point. During arbitration proceedings on November 19, 2025, counsel for Rusnak acknowledged that, if Rusnak "were successful in [the] lawsuit" currently pending in the United States District Court for the District of Columbia, in which Rusnak seeks, among other relief, a declaratory judgment establishing his eligibility for a lump sum catch-up payment under 34 U.S.C. § 20144(d)(4)(D)(iv)(II), Rusnak would "absolutely" receive a "double recovery." Nov. 19, 2025 Hr'g Tr. at 71:24–25; 72:4–5; *see Rusnak v. USA*. Counsel for Rusnak then conceded that, if Rusnak were successful in *Rusnak v. USA* and receives an award, "he would have an obligation to return it to Mr. Ambush." *Id.* at 72:10–11.

The catch-up monies that are the subject of *Rusnak v. USA* are specifically identified and are being held in reserve. The Fund has confirmed that the calculated lump sum catch-up payment for Rusnak's claim, using the GAO's methodology, would be $685,442.38—the identical amount awarded by the Arbitrator as a "sum certain." Joint Stipulation of Facts ¶ 73 (Fund email dated May 15, 2025). As mentioned in Claimants' Post Hearing Brief, in *Rusnak v. USA*, the United States has stipulated that "amounts sufficient to meet the payment amounts which Plaintiffs seek through this lawsuit will be held in reserve for the duration of the litigation before this Court." Joint Stipulation, *Rusnak, et al. v. USA, et al.*, No. 1:25-cv-00292 (D.D.C.), Doc. 15, ¶ 8 (Apr. 14, 2025). As of the date of that stipulation, the government confirmed that "sufficient funds to meet the payment amounts which Plaintiffs seek . . . remain available." *Id.* ¶ 5. The money has not been disbursed. It is being held, by stipulation, pending resolution of Rusnak's federal claims.

There would also be a double recovery if, for any other reason, the Fund were to disburse to Rusnak the amounts corresponding to the catch-up payment—for example, through new legislation or through full payment of the remainder of the Schooley Case judgment. The U.S. Government Accountability Office ("GAO") has recommended that Congress amend the Justice for United States Victims of State Sponsored Terrorism Act to direct the Special Master to make lump sum catch-up payments to the 274 affected claimants that did not receive such payment, including Rusnak. *See* Exhibit J61, Government Accountability Office, *U.S. Victims of State Sponsored Terrorism Fund: 1983 Beirut Barracks and 1996 Khobar Towers Bombing Claimants Due $614 Million* (Nov. 1, 2024), at 21; Joint Stipulation of Facts ¶ 68. Legislation is pending before Congress that is designed specifically to authorize catch-up payments for claimants in

Rusnak's position. *See* Nov. 12, 2025 Hr'g Tr. At 136:2-5, 137:14-138:5 (making reference to the Fairness for Khobar Act of 2025, H.R. 4863).

The Award does not reflect or address the concession of Rusnak's counsel that Rusnak "would have an obligation to return" to Ambush the Arbitrator's award of $685,442.38 in damages if Rusnak were, in the future, to prevail in his pending litigation, or if he receives the catch-up payment for any other reason. Nov. 19, 2025 Hr'g Tr. at 72:10–11. As a result, Ambush respectfully requests an interpretation of the Award with respect to Rusnak's future obligation in case of a double recovery, whether as a result of the litigation in *Rusnak v. USA*, new legislation, receipt of payment in full of the Schooley Case judgment from the Fund, or otherwise. Ambush accordingly requests that such interpretation reflect Rusnak's concession, which was factually and legally appropriate, and confirm Rusnak's obligation going forward.

The Award also is silent as to Rusnak's obligation to take all reasonable legal steps to pursue recovery of the catch-up payment from the Fund, whether through the pending litigation, future legislation, or any other available avenue. Absent such an obligation, Rusnak could collect the $685,442.38 in damages from Ambush and then abandon or fail to pursue his catch-up payment claim, resulting in harm to Ambush without any corresponding loss to Rusnak. Such an outcome would be inconsistent with the purpose of the damages award, which is to make Rusnak whole for the missed catch-up payment—not to provide a windfall.

Ambush accordingly also requests that the Arbitrator interpret the Award to clarify Rusnak's obligation to take all reasonable legal steps to pursue recovery of the catch-up payment from the Fund, and to address the consequences of any failure to do so.

**II.** **The Award is ambiguous as to whether the denial of "further fees" extends to Ambush's contractual share of Fund distributions that were allocated before the Award and that are unrelated to the catch-up payment.**

Finding ¶ 7 of the Award states that "Claimants are entitled to no further fees from Respondent." Award at 9, ¶ 7. The Arbitrator's malpractice finding related solely to the catch-up payment—the failure to "file properly and timely" a petition for catch-up payments. *Id.* at 9, ¶ 4. The Arbitrator made no finding of malpractice with respect to the underlying representation, including Ambush's work in obtaining the judgment against Iran in the *Schooley* litigation. To the contrary, the Award expressly acknowledges that "Claimants did obtain a judgment against Iran in Respondent's favor." *Id.* at 9, ¶ 7.

The Fund has continued to make periodic *pro rata* distributions on the *Schooley* judgment that are entirely unrelated to the catch-up payment. These distributions flow from the judgment Ambush obtained on June 27, 2019, and the work product underlying it—not from any work performed by successor counsel. The fifth round distribution allocated $159,643.69 to Rusnak's claim on December 30, 2024. *See* Joint Stipulation of Facts ¶ 76; Exhibit J69, Notice of Allocated Payment Amount, Claim No. 105516 (Dec. 30, 2024). Twenty-five percent of that distribution—$39,910.92—was held in escrow pending resolution of this arbitration, consistent with the parties' contingency fee agreement. *See* Joint Stipulation of Facts ¶ 76. The sixth round distribution allocated an additional $366,982.64 to Rusnak's claim on December 30, 2025. *See* Withdrawal of Motion for Confirmation of Compliance with Interim Award.

Both of these distributions were calculated and allocated before the Award was issued on February 20, 2026. They derive solely from Ambush's pre-termination work product in obtaining the underlying judgment—the very work the Arbitrator recognized Ambush performed. The

legal work giving rise to these distributions was complete. No "future legal work" was required to generate them.

The Award is ambiguous as to whether the blanket denial of "further fees" in Finding ¶ 7 was intended to encompass Ambush's contractual share of distributions that were already allocated, already held in escrow under the contingency agreement, and entirely unrelated to the malpractice finding. Ambush respectfully requests that the Arbitrator interpret the scope of the fee denial to clarify whether it extends to periodic Fund distributions on the Schooley judgment that predate the Award and that derive from Ambush's work in obtaining the underlying judgment.

### III.    Conclusion

For the foregoing reasons, Ambush respectfully requests that the Arbitrator interpret the Award under AAA Rule 52(a) to address:

(1) Rusnak's obligation to reimburse Ambush for the $685,442.38 in damages in the event of a double recovery, whether as a result of the litigation in *Rusnak v. USA*, new legislation, receipt of payment in full of the Schooley Case judgment from the Fund, or otherwise;

(2) Rusnak's obligation to take all reasonable legal steps necessary to pursue recovery of the catch-up payment from the Fund, and the consequences of any failure to do so; and

(3) Whether the denial of "further fees" in Finding ¶ 7 extends to Ambush's contractual share of periodic Fund distributions on the *Schooley* judgment that were allocated before the Award was issued, that are unrelated to the catch-up payment, and that derive from Ambush's pre-termination work product.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this March 12, 2026.

**TORO COLÓN MULLET, P.S.C.**
P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760

*/s/ Ángel Sosa*
Mr. Ángel Sosa
DC Bar No. 1,000,094
E-mail: asosa@tcm.law

*/s/ Nayda I. Pérez Román*
Nayda I. Pérez Román
PR Bar No. 19,314
Email: nperez@tcm.law