**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ELVIS J. RUSNAK, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-01262-JRR |
| | ) | |
| JOSHUA M. AMBUSH, LLC and | ) | |
| JOSHUA M. AMBUSH, | ) | |
| Respondents. | ) | |
| _____ | ) | |

**CONTINGENT CROSS-PETITION TO VACATE ARBITRATION AWARD**

Respondents/Cross-Petitioners JOSHUA M. AMBUSH, LLC and JOSHUA M. AMBUSH (collectively, "Ambush"), by counsel, respectfully submit this Contingent Cross-Petition to Vacate Arbitration Award (the "Award") rendered against it and in favor of Petitioner ELVIS J. RUSNAK ("Rusnak") on February 20, 2026.

This Cross-Petition is filed on a contingent basis solely to preserve Ambush's right to seek vacatur of the Award within the ninety-day period prescribed by Section 12 of the Federal Arbitration Act, 9 U.S.C. § 12. Ambush's primary Petition to Vacate is pending before the United States District Court for the District of Columbia in *Ambush v. Rusnak,* No. 1:26-cv-01247-CKK (D.D.C.), filed April 14, 2026.

On April 29, 2026, the Clerk of this Court entered an order of default against Ambush in the above-captioned action. Ambush has filed a Motion to Set Aside Entry of Default pursuant to Federal Rule of Civil Procedure 55(c) and a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process, both of which remain pending before this Court. Ambush contests that it was properly served in this action and maintains all objections and defenses raised in those motions.

1

The filing of this Contingent Cross-Petition does not constitute a waiver of Ambush's objection to insufficient service of process, does not constitute a waiver of any defense raised in the pending motions, and does not constitute consent to the jurisdiction or venue of this Court for purposes of the underlying Petition to Confirm. This Cross-Petition is filed under express reservation of all rights and defenses, including the right to seek vacatur exclusively in the District of Columbia.

## I.    PARTIES

1.    Respondent Joshua M. Ambush, LLC, is a limited liability company, organized under the laws of Maryland, with its principal place of business located at 106 Old Court Road, Suite 303, Baltimore, Maryland. Joshua M. Ambush, a Maryland resident, is the sole member of Joshua Ambush, LLC.

2.    Respondent Joshua M. Ambush is a Maryland resident with a postal address at 106 Old Court Road, Suite 303, Baltimore, Maryland. Ambush is licensed to practice law in Maryland and the District of Columbia.

3.    Petitioner Elvis J. Rusnak is a resident of New Jersey with an address at 9 Shady Mill Lane, Milford, NJ 08848.

## II.    JURISDICTION

4.    This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. § 1332(a). The action is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III.    FACTUAL BACKGROUND

5.    The parties entered into an Attorney Representation Agreement (the "Agreement") in February 2017. Under the Agreement, Ambush provided legal services to Rusnak in bringing a claim in the United States District Court for the District of Columbia

against the Islamic Republic of Iran for its material support of the June 25, 1996, terrorist bombing of the Khobar Towers in Saudi Arabia. On Rusnak's behalf, Ambush filed the original complaint against Iran on July 13, 2017, in *Schooley v. Islamic Republic of Iran*, Case No. 17-cv-1376 (BAH) (the "*Schooley* Case"). The Agreement provided that any disputes would be subject to arbitration.

6.      On June 27, 2019, the Court granted a default judgment in the amount of $7 million against Iran and in favor of Rusnak in the *Schooley* case. On July 18, 2019, Ambush filed an application with the U.S. Victims of State Sponsored Terrorism Fund ("USVSSTF" or "Fund") and requested payment of Rusnak's default judgment. On July 6, 2020, the Fund confirmed in a Notice of Claim Amount, which states that Rusnak was eligible to receive the requested $7 million in compensatory damages. On August 28, 2020, the Fund determined it would make a payment to Rusnak in the amount of $408,697.33 (5.838% of Rusnak's compensatory damages). Ambush received a contingency fee equaling 25% of the payment under the terms of the Agreement. On December 30, 2022, the Fund made an additional payment of $28,331.29 to Rusnak, of which amount $7,082.82 was paid to Ambush under the Agreement.

7.      On November 21, 2024, Ambush was notified that Rusnak informed the Fund that Ambush no longer represented him. Later, on December 18, 2024, Rusnak sent Ambush a termination of the attorney-client relationship for legal representation in the *Schooley* case. Pursuant to the Agreement's arbitration provision, on January 3, 2025, Ambush commenced an arbitration before the American Arbitration Association ("AAA") for breach of the Agreement for failure to pay the following contingency fee: 33 1/3% of the unpaid default judgment, or $2,187,657.13, plus expenses, if recovery is made from sources other than the Funds; or 25% of

the unpaid judgment, or $1,640,742.85, if recovery is made from the Fund. Rusnak filed an answer opposing Ambush's claim and asserting a counterclaim for legal malpractice.

8.      An award was entered by the Arbitrator on February 20, 2026. **(Exhibit A - *sealed*).** The award held that Rusnak terminated the Agreement for cause. In regard to the malpractice claim, the Arbitrator found that Ambush breached the standard of care by failing to re-submit Rusnak's Fund application to qualify him for a lump sum catch-up payment. Rusnak was awarded $685,422.38, a sum certain based on the catch-up payment, and $36,056.13 in pre-judgment interest.

**IV.    THE AWARD MUST BE VACATED BECAUSE THE ARBITRATOR REFUSED TO CONSIDER EVIDENCE, EXCEEDED HER POWERS AND ACTED IN MANIFEST DISREGARD OF THE GOVERNING LAW**

**A.      Ambush Followed USVSST's Directive in Not Filing a Duplicative Application**

9.      On December 29, 2022, Congress enacted the Fairness for 9/11 Families Act (the, "Fairness Act"). *See* Fairness for 9/11 Families Act, Pub. L. No. 117-328, 136 Stat. 6106 (2022). Congress authorized lump sum payments for victims of the 1996 Khobar Towers bombing to be equal to payments previously made from the Fund to victims of other terrorist attacks. Congress established a reserve fund within the USVSST for the allocation of these lump sum catch-up payments. *Id*. § 101(b)(3)(B)(iii), 136 Stat. at 6108-09. The Fairness Act changed the application period for victims to submit applications for payment from the Fund setting a deadline of "180 days from the December 29, 2022, date of enactment" – June 23, 2023. *Id*. § 101(b)(2), 136 Stat. at 6106-07.  The USVSST permits individuals to submit only one application for each claim. *See*, Justice for U.S. Victims of State Sponsored Terrorism Act, 81 Fed. Reg. 45535, 45537 (July 14, 2016) ("only one application may be submitted for each claim"). The Fund's Special Master

did not change the procedures for applying to the USVSST following the enactment of the Fairness Act.

10.    The Arbitrator ruled that Ambush breached his professional duty by not submitting a duplicative application to the Fund prior to June 23, 2023. In doing so the Arbitrator refused to consider pertinent and material evidence and exceeded her powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *See* 9 U.S.C. § 10(a)(3) and (4). The finding was also in manifest disregard of the law since the Arbitrator knew of the governing legal principles but ignored or refused to apply them, and the law is well defined, explicit, and clearly applicable to the case.

11.    It is clear from the evidence submitted to the Arbitrator that Ambush faithfully followed the Fund's procedures and guidance. At the time of the events relevant to Rusnak's claims in arbitration, the Fund's webpage stated:

> Claimants do not need to file additional or separate applications for lump sum catch-up payments. Each claimant has one claim before the USVSST Fund for all compensation, including lump sum catch-up payments. The USVSST Funds cannot accept duplicative filings.

Ambush had a duty to comply with administrative procedures, rules and guidance issued by the Fund. "An attorney should demonstrate respect for the legal system and for those who serve it, including judges, other attorneys and public officials. While it is an attorney's duty, when necessary, to challenge the rectitude of official action, it is also an attorney's duty to uphold legal process." *See,* Md. R. Attorneys, Rule 19-300.1. If Ambush had filed a duplicative application, contrary to the Fund's ruling and the DOJ's guidance, it would have been contrary to Maryland Rule 19-301.3, since a lawyer cannot bring a claim where there is no basis in law or fact for doing so. Md. R. Attorneys, Rule 19-300.3. Ambush's decision complies with Rule 19-303.4, which states that "[a]n attorney shall not [. . . ] knowingly disobey an obligation under the rules

of a tribunal. *See*, Md. R. Attorneys, Rule 19-300.4. Ambush's decision not to resubmit a claim

was also compliant with Maryland Rules of Professional Conduct 19-303.1, which prohibits

attorneys from pursuing frivolous legal actions and requires them to uphold the legal process.

Md. R. Attorneys, Rule 19-300.1. Ambush was diligent in communicating with the Fund for

clarification of the procedures regarding lump-sum catch-up payments. He emailed and met with

representatives of the Fund. But the Fund's instructions were the same, and they indicated as

follows:

> Each claimant has one claim before the USVSST Fund for all compensation, including lump sum catch-up payments. The USVSST Fund's governing statute describes the eligibility criteria for the USVSST Fund, and mandated the Special Master's establishment of application procedures published in the Federal Register. As you are aware, eligible claimants do not need to resubmit applications to receive funds if the USVSST Fund makes additional rounds of payments.

> The Special Master's decisions about compensation from the USVVT Funs are final. 34 U.S.C. § 20144(b)(3). Because any new application you may submit is a duplicate of the claim you previously filed, the USVSST Fund will issue you a duplicate claim notification letter and administratively close the duplicate claim.

12.     The USVSST Act indicates that "[t]he Special Master shall administer the

compensation program described in this section for the United States persons who are victims of

state sponsored terrorism."  See, 34 U.S.C § 20144(b)(1)(A)(iii). Furthermore, the USVSST Act

specifies when a claim will be eligible and confers that authority to the Special Master.  34 U.S.C

§ 20144(c)(1). The Comptroller's role pursuant to the Fairness Act is limited to determining the

amount of funds that will be used for catch-up payments by conducting an audit and presenting

reports to Legislative Committees. *See*, 34 U.S.C § 20144(d)(4)(C)(i). The Special Master and

the Comptroller serve two different roles regarding the catch-up payments. The Special Master

determines who will get the catch-up payment, and the Comptroller determines the amount of the

payments. Thus, by complying with the Special Masters instructions, Ambush acted reasonably

and followed guidance from the authority designated by the USVSST and the Fairness Act to establish the rules governing the process of the catch-up payment.

13.     It was further pointed out to the Arbitrator that Rusnak's own litigation conduct before the U.S. District Court for the District of Columbia in *Rusnak v. United States,* Case No. 1:25-cv-00292-LLA (D.D.C. Jan. 31, 2025)[1] evidences his understanding that there was no breach of professional duty by Ambush. Rusnak affirmatively alleged and argued that the Fund's procedures and guidance were the sole cause of his exclusion from lump-sum catch-up payments. Rusnak did not attribute any portion of the loss of the catch-up payment to Ambush's legal representation, nor did he allege that Ambush failed to meet any applicable standard of care. On the contrary, Rusnak's pleadings place exclusive responsibility on the government's conduct and decision-making. See Compl. ¶ 4, 45-48 (*Rusnak v. United States,* Case No. 1:25-cv-00292-LLA) (**Exhibit B**).

14.     The district court agreed. In its Memorandum Opinion dismissing Rusnak's claims, the court found that the Fund itself instructed already eligible claimants to not submit duplicative applications, that DOJ objected to the successive-application requirement, arguing that it contravened long-standing Fund procedures, and that 274 claimants were excluded for following the Fund's own guidance. *See* Memorandum Opinion at 6–11, *Rusnak v. United States*, No. 1:25-cv-00292-LLA (D.D.C. Mar. 24, 2026) (**Exhibit C**).

15.     The district court ultimately dismissed Rusnak's action finding that the USVSST Act precludes judicial review of claims that concern whether a plaintiff was permitted to receive Fund payments. *Id.* at 39–40. And, as emphasized by the court, "GAO recommended that

---

[1] In *Rusnak v. United States*, Rusnak sued the federal government alleging that the USVSST Fund's published guidance—which instructed existing claimants that they did not need to file additional applications for lump-sum catch-up payments—caused his exclusion from those payments under the Fairness for 9/11 Families Act, Pub. L. No. 117-328, 136 Stat. 6106 (2022).

Congress amend the statute to require the Special Master to authorize catch-up payments to 'those among the 274 claimants [including Rusnak] who did not submit applications . . . because of Fund guidance.'" *Id.* at 11. According to DOJ, as of March 31, 2026, the Fund Balance includes $116,367,440, which was calculated by GAO for 274 claimants determined to be not eligible. (**Exhibit D**). As the court noted, "it is well within Congress's power to address the inequities Plaintiffs allege." (**Ex. C**, at 41). In fact, an amendment allowing payment of lump sum catch-up payments to Rusnak and other similarly situated claimants is pending in Congress. *See* H.R. 4863, 119th Cong. (2025).

16.    The Award rests on an extraordinary premise: that an attorney commits malpractice by following official instructions from the government. The USVSST—the entity administering the claims process—instructed existing claimants like Rusnak that they "do not need to file additional or separate applications for lump sum catch-up payments" and that "the USVSST Fund cannot accept duplicative filings." USVSST Fund FAQ 7.1; *see* Compl. ¶ 4, *Rusnak v. United States*, No. 1:25-cv-00292-LLA (D.D.C. Jan. 31, 2025) (**Ex. B**, ¶ 4). Ambush appropriately followed the official instruction he received. The Arbitrator found that doing so constituted a breach of the standard of care - in effect, holding that an attorney's duty to his client requires him to knowingly and intentionally contradict official federal government guidelines, and that his failure to do so was malpractice. Except for the findings of the district court in *Rusnak v. United States*, (**Ex. C**), the facts and circumstances set forth above were established by credible evidence at the arbitration.

**B.    Arbitrator Refused to Hear Pertinent and Material Evidence**

17.    The Award is subject to vacatur under 9 U.S.C. § 10(a)(3), which provides that a court may vacate an award "where the arbitrators were guilty of misconduct . . . in refusing to

hear evidence pertinent and material to the controversy." On March 24, 2026—four days after the Arbitrator denied Ambush's Request for Clarification without explanation—the United States District Court for the District of Columbia issued its Memorandum Opinion in *Rusnak v. United States*, Case No. 1:25-cv-00292-LLA (**Ex. C**), which directly undermined the factual basis of the Arbitrator's malpractice finding.

18.    On April 1, 2026, Ambush's counsel promptly filed a Request to Reopen the Record and for Reconsideration of the Malpractice Finding in light of the *Rusnak v. United States* opinion. (**Exhibits E**). Rusnak's counsel responded that same evening, arguing that "this submission does not appear to be permitted under any procedure or rule in the AAA Commercial Rules . . .." On April 7, 2026, Sandy Duarte, Manager of ADR Services for the AAA—not the Arbitrator—denied the request, stating that "once a final award has been issued, the arbitrator's role in the case is complete and the hearings cannot be reopened." Apparently, the Arbitrator did not review the *Rusnak v. United States* opinion or its implications for the malpractice finding. The AAA prevented highly relevant evidence from reaching the Arbitrator. That is precisely the type of procedural failing that § 10(a)(3) exists to remedy.

C.    **Arbitrator Exceeded Her Powers and Acted in Manifest Disregard of the Law in Finding Legal Malpractice**

19.    Arbitration is grounded in the consent of the parties, and awards cannot exceed the bounds of the arbitration agreement. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). "[W]hen [an] arbitrator . . . effectively dispense[s] his own brand of industrial justice . . . an arbitration decision may be vacated under § 10(a)(4) of the FAA . . . for the task of an arbitrator is to interpret and enforce a contract, not make public policy." *Stolt-Nielson, S.A.*, 559 U.S. at 671-672 (2010). In this case, as shown above, the Arbitrator ignored clearly established Maryland law on legal malpractice and substituted her own brand of justice and public policy.

20.    In rendering the award, the Arbitrator exceeded her powers and acted in manifest disregard of the law. The Arbitrator's ruling that Ambush committed legal malpractice under Maryland law was unreasonable and unjustified. Pursuant to 9 U.S.C. § 10(a)(4), an award may be vacated when the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Fourth Circuit recognizes "manifest disregard of the law" as a potential ground for vacating an arbitration award under the FAA. The Supreme Court's decision in *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008) is interpreted by the Fourth Circuit to mean that manifest disregard survives as either an independent ground for vacatur or as a "judicial gloss" on the statutory grounds enumerated in the FAA, 9 U.S.C. § 10. *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 483 (4th Cir. 2012); *Warfield v. ICON Advisors, Inc.*, 26 F.4th 666, 669-70 (4th Cir. 2022); *Friedler v. Stifel, Nicholaus & Co.*, 108 F.4th 241, 249 (4th Cir. 2024).

21.    The Arbitrator exceeded her powers because the Award is completely irrational and exhibits a manifest disregard of the law. *Friedler,* at 249, citing *In re Romanzi*, 31 F.4th 367, 375 (6th Cir. 2022) (manifest disregard is part and parcel of the FAA's statutory prohibition against arbitrators exceeding their powers, because arbitrators do not exceed their authority unless they display manifest disregard of the law). The Award does not merely misapply a legal standard—it imposes a duty on Ambush to knowingly and intentionally contradict official federal government guidelines and instructions, and then finds malpractice when Ambush declined to do so. The Fund's published guidance stated that existing claimants "do not need to file additional or separate applications" and that the Fund "cannot accept duplicative filings." The Department of Justice itself objected to the successive application requirement, arguing that it contravened long-standing Fund procedures. Yet the Arbitrator found that Ambush's

adherence to this guidance—shared by the Fund, the DOJ, and 274 other claimants—constituted a breach of the standard of care. An award that requires an attorney to defy the authoritative guidance of the very governmental body administering the program at issue is not entitled to confirmation. A critical and obvious factual error that is dispositive of a claim, such as that committed here, amounts to manifest disregard of the law. *See VIP Mortg. Inc. v. Gates*, 162 F.4th 1010, 1013 (9th Cir. 2025). As was shown to the Arbitrator, the Fund gave Ambush an explicit instruction not to resubmit Rusnak's application for purposes of catch-up payments. The fact Ambush was given that instruction is dispositive as to whether he breached a standard of care owed to Rusnak. The Arbitrator made an obvious error is disregarding such a critical and dispositive fact.

22.    The Fourth Circuit applies to two-part test to establish manifest disregard: "[t]o establish manifest disregard, a party must demonstrate: (1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Warfield*, at 669-70 (quoting, *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015). The legal principle that an attorney who acts according to the explicit instructions of a government agency, before which a client's matter is pending, does not violate a standard of care under Maryland law is not subject to reasonable debate. In this case, the Arbitrator was aware of this governing principle but refused to adopt it.

23.    Further, the Award is based on speculative and unripe damages. The Arbitrator awarded $685,442.38—the full amount of the lump sum catch-up payment—as damages for malpractice. But DOJ is holding $116,367,440 in reserve for the 274 excluded claimants (**Exhibit D**), GAO has calculated individual payment amounts, and Congress has been asked to amend the governing statute. As the D.C. District Court observed, "Congress has in fact been

responsive to concerns about inequities in payments," including by twice authorizing lump sum catch-up payments to classes of excluded claimants. (**Ex. C**, at 40). If Rusnak ultimately receives the catch-up payment through legislative action, his malpractice damages are zero. Indeed, on April 20, 2026, Rusnak filed a motion to alter or amend the judgment under Rule 59(e) and, on May 19, 2026, filed a notice of appeal to the United States Court of Appeals for the District of Columbia Circuit, further demonstrating that the catch-up payment issue remains actively litigated and unresolved. Awarding the full amount of a loss that has not crystallized—and may never crystallize—constitutes an imperfect execution of the Arbitrator's powers within the meaning of 9 U.S.C. § 10(a)(4).

24.    And, Rusnak's own prior litigation positions undermine the Arbitrator's causation finding. In *Rusnak v. United States*, Rusnak alleged that the Fund's procedures and guidance were the cause of his exclusion from lump-sum catch-up payments. (**Ex. B** ¶¶ 4, 45–48). He sued the government—not his lawyer. He did not allege malpractice or attribute any portion of his loss to Ambush's legal representation. Yet before the Arbitrator, Rusnak advanced the opposite theory of causation: that Ambush's failure to file a second application constituted malpractice and proximately caused his damages. If the Fund's own guidance caused Rusnak's exclusion—as Rusnak told the federal court—then Ambush's decision to follow that guidance cannot be malpractice.

WHEREFORE, for the reasons set forth above, Ambush prays this Court vacate the Award.

Dated:  May 21, 2026                               Respectfully submitted,


                                        /s/ John M. Shoreman
                                        John M. Shoreman (Bar No. 12931)
                                        McFADDEN & SHOREMAN
                                        1701 Pennsylvania Ave., NW
                                        Suite 200
                                        Washington, DC  20006
                                        (571) 296-8450
                                        jms@mcfaddenshoreman.com


                                        *Attorney for Respondents/Cross-Petitioners*

13