**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

EVIS J. RUSNAK,

       Petitioner,

v.

JOSHUA M. AMBUSH, LLC,
106 Old Court Road, Suite 303
Baltimore, Maryland 21208


and

JOSHUA M. AMBUSH
3402 Labyrinth Rd.
Baltimore, Maryland 21215

       Respondents.

Civil Action No. 1:26-cv-1262-JRR

**RESPONSE TO MOTION TO SET ASIDE DEFAULT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

III.  LEGAL STANDARD ......................................................................................... 4

IV.   DISCUSSION ..................................................................................................... 5

      A.    In Vacating the Default the Court Should Exercise Its Inherent Authority
           to Award Attorneys' Fees to Mr. Rusnak. ............................................................ 5

      B.    Ambush Alternative Motion to Stay Should Be Denied. ..................................... 10

           1.    The Federal Arbitration Act Favors Prompt Confirmation and
                 Disfavors Stays. .................................................................................... 11

           2.    Ambush Cannot Demonstrate a Likelihood of Success on the D.C.
                 Petition to Vacate. ................................................................................ 12

           3.    Ambush Will Not Suffer Irreparable Harm Absent a Stay. ...................... 14

           4.    The Balance of Hardships Overwhelmingly Favors Mr. Rusnak. ............ 14

           5.    The D.C. Action Is Already Stayed and Will Likely Be Dismissed
                 or Transferred, Mooting the Request to Stay This Action. ...................... 15

           6.    Ambush's Stay Request Is Part of a Bad-Faith Litigation Strategy
                 Designed to Delay Enforcement. ............................................................ 17

V.    CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apex Plumbing Supply, Inc. v. U.S. Supply Co.*,
142 F.3d 188 (4th Cir. 1998) ...............................................................................................11

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ................................................................................................................7

*Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*,
616 F.3d 413 (4th Cir. 2010) ................................................................................................6

*Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*,
529 U.S. 193 (2000)..............................................................................................................16

*Doe #1 v. Montgomery Cnty. Bd. of Educ.*,
No. 21-CV-356, 2023 WL 4686268 (D. Md. July 21, 2023) ................................................10

*Hall Street Assocs., LLC v. Mattel, Inc.*,
552 U.S. 576 (2008)..............................................................................................................12

*Hypower, Inc. v. SunLink Corp.*,
No. 14-CV-00740, 2014 WL 1618379 (N.D. Cal. Apr. 21, 2014) ........................................16

*J & J Sports Prods., Inc. v. Cloud Nine Hookah Lounge, Inc.*,
No. 14-12238, 2014 WL 5800100 (E.D. Mich. Nov. 7, 2014)................................................9

*Joseph v. Ceide*,
No. 24-CV-6572, 2025 WL 3199069 (E.D.N.Y. Nov. 17, 2025) ............................................9

*Joshua M. Ambush, LLC v. Rusnak*,
1:26-cv-01247 (D.D.C.)...................................................................................... *passim*

*Landis v. North American Co.*,
299 U.S. 248 (1936)..............................................................................................................10

*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*,
854 F.2d 1538 (9th Cir. 1988) ................................................................................................4

*Oxford Health Plans LLC v. Sutter*,
569 U.S. 564 (2013)..............................................................................................................13

*Powerserve International, Inc. v. Lavi*,
239 F.3d 508 (2d Cir. 2001)................................................................................................4, 5

ii

*Raymond James & Assocs., Inc. v. Martin*,
    No. 21-CV-3096, 2022 WL 1104576 (D. Md. Apr. 13, 2022)................................................11

*Richardson v. Nassau County*,
    184 F.R.D. 497 (E.D.N.Y. 1999) ......................................................................................5, 9

*RLS Associates, LLC v. United Bank of Kuwait PLC*,
    No. 01-CV-1290, 2002 WL 122927 (S.D.N.Y. Jan. 29, 2002) ..............................................5

*Shearson Hayden Stone, Inc. v. Liang*,
    653 F.2d 310 (7th Cir. 1981) ..............................................................................................12

*Southern Mills, Inc. v. Nunes*,
    586 F. App'x 702 (11th Cir. 2014) ......................................................................................16

*Taylor v. Nelson*,
    788 F.2d 220 (4th Cir. 1986) ..............................................................................................11

*Wachovia Sec., LLC v. Brand*,
    671 F.3d 472 (4th Cir. 2012) ..............................................................................................12

*Warfield v. ICON Advisers, Inc.*,
    26 F.4th 666 (4th Cir. 2022) ..............................................................................................13

**Statutes**

9 U.S.C. § 9...........................................................................................................................2, 10, 11

28 U.S.C. § 1927...........................................................................................................................7

**Other Authorities**

10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
    Procedure § 2700 (1998)......................................................................................................4

## I.   INTRODUCTION

Petitioner Elvis J. Rusnak, by and through undersigned counsel, respectfully submits this Response to Respondents' Motion to Set Aside Order of Default. Mr. Rusnak consents to the entry of an order setting aside the default entered by the Clerk on April 29, 2026, subject to one condition: that this Court require Respondents Joshua M. Ambush, LLC and Joshua M. Ambush (collectively, "Ambush") to reimburse Mr. Rusnak for the reasonable attorneys' fees and costs he incurred in obtaining the entry of default and responding to Ambush's post-default motions and tactics.

Although Mr. Rusnak does not oppose vacatur of the default, the circumstances under which the default was entered—and the circumstances under which it is now being challenged— demonstrate that Ambush's failure to respond was not the product of excusable neglect or innocent miscommunication. Rather, the record shows that Ambush had actual notice of Mr. Rusnak's Petition to Confirm the Arbitration Award, deliberately chose not to respond in this Court, and instead filed a competing Petition to Vacate the same Arbitration Award in the United States District Court for the District of Columbia on April 14, 2026—two weeks after the Maryland action was filed and *two weeks before* the default was entered. This calculated litigation strategy— ignoring one federal proceeding while affirmatively litigating the same dispute in another—is precisely the kind of inequitable conduct that warrants the imposition of attorneys' fees as a condition of vacatur.

In addition, Mr. Rusnak opposes Ambush's alternative request for a stay of confirmation proceedings pending resolution of Ambush's Petition to Vacate Arbitration Award filed in the United States District Court for the District of Columbia, *Joshua M. Ambush LLC v. Rusnak*, Case No. 1:26-cv-01247 (D.D.C.). Ambush asks this Court to indefinitely suspend its obligation under

1

9 U.S.C. § 9 to confirm a valid arbitration award—an award issued by a former Justice of the Maryland Supreme Court after a multi-day evidentiary hearing—so that a second-filed, duplicative proceeding in the District of Columbia can run its course. This request should be denied. The Federal Arbitration Act reflects a strong national policy favoring swift judicial confirmation of arbitration awards. Under § 9, the court "must grant" confirmation "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9. That statutory command does not authorize—much less require—this Court to stay its hand indefinitely while a second-filed court in another district addresses the same question.

A stay is thus inappropriate here for multiple independent reasons. Ambush cannot satisfy the traditional four-factor test governing stays. The FAA's policy of prompt enforcement would be frustrated by an indefinite stay. The D.C. Petition has itself already been stayed—pending that court's ruling on a fully briefed motion to dismissed under the first-to-file rule or transfer under 28 U.S.C. § 1404. In addition, Ambush has no likelihood of success on the merits of the D.C. Petition to Vacate. No irreparable harm flows from the entry of a confirmatory judgment. The balance of hardships overwhelmingly favors Mr. Rusnak—a terrorism victim awaiting enforcement of an award for over three months. And the stay request is part of the same bad-faith litigation strategy by which Ambush deliberately defaulted in this Court while filing a competing action in D.C.

## II.    BACKGROUND

On February 20, 2026, the Honorable Irma S. Raker (ret.), a former Justice of the Maryland Supreme Court serving as arbitrator, issued a Final Award in American Arbitration Association Case No. 01-25-0000-0363. The Award found that Ambush committed legal malpractice under Maryland law by, among other things, failing to file properly and timely for catch-up payments

2

from the U.S. Victims of State Sponsored Terrorism Fund, and that Mr. Rusnak terminated the attorney-client relationship with good cause. Mr. Rusnak was awarded $685,442.38 in damages, $36,056.13 in pre-judgment interest, and $36,475.00 in arbitration fees and costs.

On March 30, 2026, Mr. Rusnak filed his Petition to Confirm the Arbitration Award in this Court. ECF No. 1. On March 31, 2026, Mr. Rusnak's counsel served Ambush with the Petition by multiple methods, including certified mail to Ambush's last known addresses, certified mail to Ambush's business address, and both mail and email to Ambush's arbitration counsel at Toro Colon Mullet, P.S.C. The U.S. Postal Service confirmed delivery. ECF 6-1.

Critically, on the same day that Rusnak's counsel emailed the Petition and summonses to Ambush's arbitration counsel—March 31, 2026—Rusnak's counsel wrote to Toro Colon Mullet inquiring whether the firm would represent Ambush in this litigation. That email stated, in pertinent part: "To the extent you will not represent Ambush in connection with this suit, please advise." Ex. 10, ECF 6-2. On the following day—April 1, 2026—Ambush's counsel at Toro Colon Mullet filed a "Request to Reopen Record and Reconsider Malpractice Finding" in the AAA proceeding on behalf of Ambush. Ex. 11, ECF 6-2.

Despite this actual notice, Ambush did not respond to the Petition to Confirm, did not enter an appearance in this Court, and did not seek an extension of time. Instead, by at least as early as April 14, 2026—two weeks after being served with the Maryland Petition—Ambush retained new counsel, John Shoreman of McFadden & Shoreman, and filed a Petition to Vacate the identical Arbitration Award in the United States District Court for the District of Columbia. ECF No. 1, *Joshua M. Ambush, LLC v. Rusnak*, 1:26-cv-01247 (D.D.C.).

On April 29, 2026, after Ambush failed to respond within the time permitted, the Clerk of this Court entered a default against Ambush. ECF Nos. 8, 9. On May 1, 2026, Mr. Rusnak filed a

3

motion in the D.C. action to dismiss, transfer, or stay that proceeding under the first-to-file rule and 28 U.S.C. § 1404(a). ECF No. 4, *Joshua M. Ambush, LLC v. Rusnak*, 1:26-cv-01247 (D.D.C.). In that filing, Mr. Rusnak referenced the default that had just been entered in the Maryland case. *Id.* at 1, 3. That motion is fully briefed.

Twenty-two days after entry of the default, Ambush filed the pending Motion to Set Aside Order of Default (ECF No. 11), a Motion to Dismiss for Insufficient Service of Process (ECF No. 10), and a Contingent Cross-Petition to Vacate the Arbitration Award (ECF No. 12).

On June 3, 2026, Mr. Rusnak filed his Motion to Confirm the Arbitration Award on the merits, demonstrating in detail that Ambush's vacatur arguments fail under the exceedingly deferential standard of review that the FAA prescribes. ECF No. 16.

## III.   LEGAL STANDARD

A district court, in exercising its discretion to set aside a default under Federal Rule of Civil Procedure 55(c), possesses the inherent authority to impose reasonable conditions on the vacatur in order to avoid undue prejudice to the non-defaulting party. *See, e.g.*, 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2700, at 170–71 (1998) ("The imposition of conditions as part of granting a Rule 55(c) motion can be used to rectify any prejudice suffered by the nondefaulting party as a result of the default and the subsequent reopening of the litigation.").

Multiple circuits have affirmed the propriety of conditioning the vacatur of a default on the payment of attorneys' fees. For instance, in *Powerserve International, Inc. v. Lavi*, 239 F.3d 508, 515 (2d Cir. 2001), the Second Circuit confirmed that "a district court has inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party." And, in *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d

4

1538, 1546–47 (9th Cir. 1988), the Ninth Circuit approved a district court's conditioning of vacatur on the defendant's payment of the plaintiff's attorneys' fees. *See also Richardson v. Nassau County*, 184 F.R.D. 497, 503 (E.D.N.Y. 1999) (courts in the Eastern District of New York have "consistently" permitted "the award of attorney's fees incurred in bringing the default motion as a condition to vacating a default judgment").

An award of attorneys' fees and costs upon vacating an entry of default does not require a finding of willfulness on the part of the defaulting party. *See RLS Associates, LLC v. United Bank of Kuwait PLC*, No. 01-CV-1290, 2002 WL 122927, at *8 (S.D.N.Y. Jan. 29, 2002) ("because UBK's negligence . . . caused RLS the unnecessary burden of applying for default judgment, RLS may recover from UBK the costs incurred as a result of the default, including an allowance for attorney's fees reasonably incurred in this regard"). The court's "inherent power to impose a reasonable condition on the vacatur" allows it to balance any "undue prejudice" to the movant against the preference for resolving disputes on the merits. *Powerserve Int'l*, 239 F.3d at 514–15.

## IV.   DISCUSSION

### A. In Vacating the Default the Court Should Exercise Its Inherent Authority to Award Attorneys' Fees to Mr. Rusnak.

The record establishes that Ambush (a) received actual notice of the Maryland Petition; (b) affirmatively chose not to respond; (c) instead filed a competing action in another federal court challenging the same award for which confirmation was already pending in this Court; and (d) now seeks to set aside the resulting default while simultaneously arguing in D.C. that the default in Maryland creates "prejudice" warranting retention of the D.C. action. This inconsistent and manipulative litigation posture warrants the imposition of attorneys' fees.

Accordingly, Mr. Rusnak requests that the Court condition the vacatur of default on an award of attorneys' fees and costs reasonably incurred by Mr. Rusnak in: (a) seeking entry of

5

default; (b) responding to Ambush's Motion to Set Aside the Default; (c) responding to Ambush's simultaneously filed Motion to Dismiss under Rule 12(b)(5); and (d) briefing the Motion to Transfer filed in the D.C. case.

The Fourth Circuit's "strong preference" for resolving disputes on the merits, *Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010), does not immunize a defaulting party from the consequences of conduct that needlessly imposes litigation costs on the opposing party. To the contrary, conditioning relief on a fee award allows the Court to honor both the preference for merits resolution and the principle that a party should bear the costs of its own litigation misconduct.

Though willfulness is not required for an attorneys' fee award, the circumstances here go well beyond mere negligence or inadvertence. Ambush's conduct reveals a calculated litigation strategy designed to manipulate forum selection at Mr. Rusnak's expense. Mr. Rusnak filed the Petition to Confirm in this Court on March 30, 2026—in the district where Ambush resides, where the arbitration occurred, where the retainer agreement was executed, and where the governing law originates. Rather than respond in the first-filed forum, Ambush allowed the time for response to lapse, resulting in the entry of default on April 29, 2026, while simultaneously filing a Petition to Vacate in the District of Columbia on April 14, 2026.

Ambush's own briefing in the D.C. action reveals the strategic nature of this choice. In opposing Mr. Rusnak's motion to dismiss the D.C. action under the first-to-file rule, Ambush argued that the default in Maryland created "prejudice" that constituted an "exceptional circumstance" justifying retention of the D.C. action. ECF No. 8 at 5-6, *Joshua M. Ambush, LLC v. Rusnak*, 1:26-cv-01247 (D.D.C.). As Mr. Rusnak argued in reply: "A party cannot create 'exceptional circumstances' through its own procedural defaults and then invoke those self-

6

inflicted wounds as a reason for another court to exercise jurisdiction over the same dispute." ECF No. 9 at 9, *Joshua M. Ambush, LLC v. Rusnak*, 1:26-cv-01247 (D.D.C.). The D.C. court filings demonstrate that Ambush's failure to respond in this Court was not inadvertent—it was part of a strategy to manufacture arguments for retaining the D.C. action.

This conduct is the very definition of bad faith. Ambush chose to ignore this proceeding—not because Ambush was unaware of it, and not because Ambush lacked counsel—but because allowing a default served Ambush's tactical objective of keeping the D.C. forum alive. Having engineered the default, Ambush now asks this Court to set it aside without consequence. Equity does not permit such gamesmanship.

Moreover, Ambush's simultaneous filing of a Motion to Dismiss under Rule 12(b)(5) for insufficient service of process—while concurrently moving to set aside the default—further compounds the litigation burden imposed on Mr. Rusnak. Mr. Rusnak has been required to respond to three separate filings—the Motion to Set Aside, the Motion to Dismiss, and the Contingent Cross-Petition—all filed on the same day and all arising from Ambush's own choice to ignore this proceeding. This multiplicity of filings has imposed substantial costs on Mr. Rusnak that would have been avoided had Ambush simply responded to the Petition to Confirm in the first instance.

The Supreme Court has recognized a court's inherent authority to impose sanctions, including attorneys' fees, when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991). Additionally, 28 U.S.C. § 1927 provides that any attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Ambush's conduct—filing in D.C.

7

rather than responding here, allowing a default, then filing three simultaneous motions to unwind it—has unreasonably multiplied these proceedings and imposed unnecessary costs on Mr. Rusnak.

Ambush nevertheless contends that "the default did not result from willful disregard of this proceeding" but rather from "a structural gap in legal representation during an active, good-faith challenge to the Arbitration Award." ECF No. 11 at 9. This characterization is contradicted by the record.

The record establishes that Ambush had actual notice of the Maryland Petition no later than March 31, 2026. On that date, Mr. Rusnak's counsel emailed the Petition and summonses to Angel Sosa-Baez and Nayda Perez Roman at Toro Colon Mullet—Ambush's arbitration counsel. Ex. 10, ECF 6-2. The very next day, April 1, 2026, Toro Colon Mullet filed on Ambush's behalf a "Request to Reopen Record and Reconsider Malpractice Finding" in the AAA proceeding— demonstrating not merely that the firm received the email, but that it was continuing to actively represent Ambush. Ex. 11, ECF 6-2. Indeed, Ambush's Motion to Set Aside makes clear that Ambush was aware of the Maryland proceedings shortly after the time of filing. The D.C. Petition itself identifies Ambush's address at the same 106 Old Court Road, Suite 303 one of the addresses to which Mr. Rusnak's counsel had directed service. ECF No. 1 at 1, *Joshua M. Ambush, LLC v. Rusnak*, 1:26-cv-01247 (D.D.C.).

Ambush's own Motion to Set Aside acknowledges that *at least* by April 14, 2026 (though the brief conspicuously omits the precise date of the retention), Ambush retained John Shoreman of McFadden & Shoreman and filed the Petition to Vacate in the District of Columbia. ECF No. 11 at 10. The D.C. Petition was itself a response to the arbitration award—the same award Mr. Rusnak was seeking to confirm in this Court. Ambush therefore concedes that it had counsel available to respond to post-arbitration litigation by April 14, 2026—fifteen days before the default

8

was entered. Yet Ambush's new counsel chose to file in D.C. rather than enter an appearance in this Court.

Ambush's bad faith conduct is underscored by the fact that Ambush himself is a licensed attorney admitted to practice in Maryland and the District of Columbia. Joshua M. Ambush is not a lay person incapable of understanding or responding to a federal court filing. He is a practicing lawyer who, by his own representation, was actively engaged in challenging the arbitration award during this entire period. He could have filed a *pro se* response, moved for an extension of time, or simply contacted Mr. Rusnak's counsel to indicate his intent to respond. He did none of these things.

At no point did Ambush lack the ability to engage counsel or file papers. The "gap" was not in representation—it was in Ambush's decision about where to respond. Ambush made a deliberate choice to respond in the D.C. forum and ignore this one.

The requested scope of reimbursement is consistent with the case law. In *Joseph v. Ceide*, the court directed reimbursement of fees and expenses incurred "in seeking entry of default, moving for default judgment, and opposing defendants' motion to vacate the default." No. 24-CV-6572, 2025 WL 3199069, at *5 (E.D.N.Y. Nov. 17, 2025). As the court explained: "There is no reason why plaintiffs should pay for defendants' neglect." *Id.* In *Richardson* too, the court conditioned vacatur on payment of attorney's fees and costs incurred in connection with briefing and arguing the default motion. 184 F.R.D. at 503-04. And in *J & J Sports Productions*, the court awarded fees "in light of Defendants['] evasive behavior." *J & J Sports Prods., Inc. v. Cloud Nine Hookah Lounge, Inc.*, No. 14-12238, 2014 WL 5800100 at *4 (E.D. Mich. Nov. 7, 2014).

Such a fee award serves at least two purposes. First, it ensures that Mr. Rusnak is made whole for the costs unnecessarily imposed on him by Ambush's strategic decision to default.

Second, it deters future misconduct of this sort—ensuring that parties cannot manipulate the litigation process by selectively defaulting in one forum to gain tactical advantage in another, secure in the knowledge that the default can later be vacated without consequence.

Mr. Rusnak will submit a declaration attaching billing records and identifying the fees and costs incurred in connection with the default proceedings upon the Court's determination that a fee award is appropriate, or at such other time as the Court directs.

## B. Ambush Alternative Motion to Stay Should Be Denied.

Ambush's Motion invokes the inherent authority recognized in *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936), contending that a stay is warranted to avoid contradictory dispositions of the same Award by two federal courts. Ambush has misstated both the standard and its application.

Where a party seeks a stay of proceedings pending resolution of litigation in another forum, courts apply the traditional four-factor test: (1) whether the movant has demonstrated a likelihood of success on the merits; (2) whether the movant will suffer irreparable harm absent a stay; (3) whether the balance of hardships favors a stay; and (4) whether a stay serves the public interest. *See, e.g.*, *Doe #1 v. Montgomery Cnty. Bd. of Educ.*, No. 21-CV-356, 2023 WL 4686268, at *2 (D. Md. July 21, 2023). These factors derive from the well-established framework for preliminary injunctive relief and apply with equal force to requests for stays pending parallel litigation.

Even under the *Landis* framework that Ambush invokes, the Court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255. As demonstrated below, the balance here is not close—but it favors Mr. Rusnak, not Ambush. This is particular true in the arbitration context, where the FAA imposes an independent constraint on this Court's discretion. Under § 9 of the FAA, confirmation is mandatory absent a showing of one of the narrow statutory grounds for vacatur: "the court must grant such an order unless the award is vacated, modified, or

10

corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9 (emphasis added). A stay that indefinitely defers the Court's statutory duty to confirm contravenes this mandatory language.

**1. The Federal Arbitration Act Favors Prompt Confirmation and Disfavors Stays.**

The FAA reflects a strong national policy favoring swift judicial enforcement of arbitration awards. Confirmation under § 9 is intended to be a "summary" proceeding, and "confirmation can only be denied if an award has been corrected, vacated, or modified." *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986). The court's review is "exceedingly deferential," *Raymond James & Assocs., Inc. v. Martin*, No. 21-CV-3096, 2022 WL 1104576, at *6 (D. Md. Apr. 13, 2022), and "among the narrowest known at law," *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998).

The purpose of this summary framework is to provide parties the benefit of their bargain without undue delay. Parties who agree to arbitrate forgo the procedural protections of court litigation in exchange for speed and finality. An indefinite stay frustrates this bargain by denying the prevailing party the fruits of the arbitral award while the losing party pursues collateral challenges in a forum of its own choosing.

Section 9's mandatory language—"the court must grant"—does not contemplate discretionary stays pending resolution of parallel proceedings filed by the award debtor. Where, as here, the respondent has filed a Contingent Cross-Petition to Vacate in this very Court (ECF No. 12), this Court is fully empowered to resolve the vacatur question itself, without deferring to a second-filed court in the District of Columbia. There is no need to stay this action to avoid inconsistent results—this Court can adjudicate both the confirmation petition and the cross-petition to vacate in a single proceeding.

Ambush's characterization of § 9's "unless" clause as a "condition precedent" requiring resolution of all vacatur challenges before confirmation may proceed, distorts the statutory framework. The "unless" clause refers to this Court's own determination of whether statutory grounds for vacatur exist—not to the pendency of a separate vacatur petition in another court. A party cannot manufacture a reason for indefinite delay by filing a duplicative petition in a second forum and then arguing that the first-filed court must wait.

### 2. Ambush Cannot Demonstrate a Likelihood of Success on the D.C. Petition to Vacate.

Ambush's Petition to Vacate raises three grounds for vacatur: (1) that the AAA's denial of Ambush's request to reopen the record constituted a refusal to hear pertinent evidence under 9 U.S.C. § 10(a)(3); (2) that the Arbitrator exceeded her powers under § 10(a)(4); and (3) that the Arbitrator acted in manifest disregard of the law. None of these arguments has any likelihood of success.

The grounds for vacating an arbitration award under 9 U.S.C. § 10 are narrow and exclusive. *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 584–86 (2008). The party seeking vacatur bears a heavy burden. Courts do not review whether an arbitrator did her job "well, correctly, or reasonably, but simply whether [s]he did it." *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 478 (4th Cir. 2012) (cleaned up).

Ambush's § 10(a)(3) argument fails because the *Rusnak v. United States* opinion did not exist during the arbitration proceedings. Section 10(a)(3) addresses misconduct "in refusing to hear evidence pertinent and material to the controversy" during the hearing itself; it does not require arbitrators to reopen closed proceedings every time new information becomes available. As numerous courts have held, "The Arbitration Act does not allow vacation of an award for new evidence." *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 313 (7th Cir. 1981). The AAA's

12

administrative denial of Ambush's request to reopen the record was a standard application of AAA Rule 52, not "misconduct" by the Arbitrator. Moreover, Ambush itself acknowledges that the opinion merely confirmed "what the arbitration record already showed"—making the evidence cumulative. Ambush Req. to Reopen the Record & for Reconsideration at 4, ECF No. 12-4.

Ambush's § 10(a)(4) argument fares no better. "[T]he sole question for [a reviewing court] is whether the arbitrator (even arguably)" weighed the evidence—not whether she got the result "right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). The Arbitrator identified the applicable standard of care under Maryland law, considered the evidence regarding the Fund's guidance and Ambush's conduct, applied Maryland malpractice law, and concluded that Ambush breached the standard of care. This is the paradigmatic exercise of an arbitrator's authority. That Ambush disagrees with the result does not establish that the Arbitrator "exceeded her powers."

Ambush's manifest-disregard argument likewise fails the Fourth Circuit's "sky-high standard of judicial review." *Warfield v. ICON Advisers, Inc.*, 26 F.4th 666, 674 (4th Cir. 2022). Manifest disregard requires Ambush to demonstrate that "(1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Id.* at 669–70 (cleaned up). Ambush has identified no Maryland case holding that reliance on agency guidance categorically insulates an attorney from malpractice liability. No such categorical rule exists under Maryland law. The Arbitrator considered the Fund's guidance and concluded it did not excuse Ambush's failure to act—that is an exercise of judgment, not a refusal to apply the law.

Ambush's vacatur arguments are not merely unlikely to succeed—they are meritless. This factor weighs decisively against a stay.

13

### 3. Ambush Will Not Suffer Irreparable Harm Absent a Stay.

Ambush contends that confirmation would "convert the Award into a federal judgment, effectively mooting the vacatur proceeding that Congress expressly authorized." ECF No. 11 at 12. This characterization is incorrect as a matter of law.

Confirmation of the Award as a judgment does not "moot" a pending vacatur action. Ambush has filed a Contingent Cross-Petition to Vacate in this very Court. This Court is fully capable of adjudicating whether grounds for vacatur exist. If Ambush's arguments have merit, they will succeed here—in the first-filed forum where the arbitration award is properly before the Court. Ambush does not need the D.C. court to protect its interests; it can protect them in this proceeding.

The harm Ambush describes is entirely legal in nature: it faces a judgment that it would prefer not to face. But the prospect of having to pay a money judgment is not the type of irreparable injury that warrants equitable relief.

### 4. The Balance of Hardships Overwhelmingly Favors Mr. Rusnak.

Ambush asserts that Mr. Rusnak "suffers no cognizable prejudice from a stay" because "no discovery has been conducted" and "no briefing on the merits has occurred." ECF No. 11 at 13. This assertion ignores the most fundamental form of prejudice: the denial of the benefit of a validly obtained arbitral award.

Mr. Rusnak is a retired Chief Master Sergeant of the United States Air Force who was injured in the 1996 Khobar Towers terrorist bombing while serving his country. He prevailed after a multi-day arbitration hearing before a former Justice of the Maryland Supreme Court. The Award grants him $685,442.38 in damages plus interest and costs—compensation for legal malpractice that caused him to lose a catch-up payment that other similarly situated terrorism victims have already received. Every day that confirmation is delayed is a day that Mr. Rusnak is denied access to the compensation he is owed.

The FAA's purpose is to ensure that prevailing parties in arbitration can quickly convert their awards into enforceable judgments. A stay converts the FAA's summary confirmation proceeding into a protracted litigation—precisely the outcome the parties sought to avoid by agreeing to arbitrate.

Ambush's claim that Mr. Rusnak's "only loss is 'a quick victory'—which is not prejudice at all," trivializes the harm of delay. ECF No. 11 at 13. In the context of a motion to set aside a default, "loss of a quick victory" may not constitute prejudice. But in the context of a stay of confirmation, the delay is itself the harm. Mr. Rusnak bargained for the speed and finality of arbitration. Ambush's litigation strategy—filing in D.C. rather than responding here, allowing a default, then seeking a stay—has already delayed confirmation by months. An indefinite stay would compound that delay.

By contrast, Ambush suffers no hardship from the denial of a stay. If the Court denies the stay, Ambush will have the opportunity to litigate the Contingent Cross-Petition to Vacate in this Court. The denial of a stay does not extinguish any right Ambush possesses—it merely requires Ambush to pursue those rights in the first-filed court rather than through forum manipulation.

Moreover, Ambush's hardship is entirely self-inflicted. Had Ambush timely responded to Mr. Rusnak's Petition to Confirm by filing a cross-petition to vacate in this Court (as it has now belatedly attempted to do), the entire dispute could have been swiftly resolved in a single proceeding. Instead, Ambush chose to ignore this Court, file in D.C., and now asks this Court to defer to the later D.C. proceeding that Ambush itself created. A party that creates its own hardship through strategic procedural choices is not entitled to equitable relief from the consequences of those choices.

### 5.  The D.C. Action Is Already Stayed and Will Likely Be Dismissed or Transferred, Mooting the Request to Stay This Action.

15

The entire premise of Ambush's stay request—that a "timely petition to vacate is pending in a court of competent jurisdiction"—is predicated on the continued viability of the D.C. action. ECF No. 11 at 12. But *that* action has been stayed, and Mr. Rusnak has moved to dismiss, transfer, or stay the D.C. action under the first-to-file rule and 28 U.S.C. § 1404(a). ECF No. 4, *Joshua M. Ambush, LLC v. Rusnak*, 1:26-cv-01247 (D.D.C.). That motion demonstrates that the D.C. action is a duplicative second-filed case that should be resolved in this Court.

The Supreme Court in *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193, 198 (2000), expressly stated that "under principles of deference to the court of first filing, the [second-filed] court should . . . consider[] staying its hand." Mr. Rusnak filed in Maryland on March 30, 2026—more than two weeks before Ambush filed in D.C. on April 14, 2026. Under *Cortez Byrd Chips*, it is the D.C. court—not this Court—that should defer to the first-filed proceeding.

Courts have consistently applied the first-to-file rule to competing arbitration petitions. In *Southern Mills, Inc. v. Nunes*, 586 F. App'x 702, 706 (11th Cir. 2014), the court affirmed the dismissal of a second-filed vacatur action where a confirmation petition was already pending in the first-filed forum, reasoning that "[b]y declining to fragment a case about a single arbitration award into two suits, the district court avoided multiplicitous proceedings and potentially conflicting judgments." And in *Hypower, Inc. v. SunLink Corp.*, No. 14-CV-00740, 2014 WL 1618379, at *3 (N.D. Cal. Apr. 21, 2014), the court applied the first-to-file rule where both cases "involve the underlying dispute and relate to the validity of the AAA's Arbitration Award."

This Court should not stay its own proceedings in deference to a duplicative second-filed action that should itself be dismissed. The proper course is for this Court to proceed with confirmation and to adjudicate Ambush's vacatur arguments through the Contingent Cross-

16

Petition already pending here (ECF No. 12). Indeed, if the D.C. court dismisses or transfers Ambush's Petition to Vacate—as Mr. Rusnak has requested—the entire premise of the stay evaporates.

Staying this proceeding while the D.C. motion to dismiss remains pending would create a perverse result: it would reward Ambush for filing a duplicative action by giving that action the power to freeze proceedings in the first-filed forum. That is precisely backward. Under the first-to-file rule, it is the second-filed court that should stay its hand in deference to the first.

### 6. Ambush's Stay Request Is Part of a Bad-Faith Litigation Strategy Designed to Delay Enforcement.

The stay request must be understood in the context of Ambush's broader litigation strategy. As Mr. Rusnak has demonstrated in this and prior briefing, Ambush deliberately chose not to respond to the Petition to Confirm in this Court while simultaneously filing a competing Petition to Vacate in the District of Columbia. Ambush then invoked the resulting Maryland default as an "exceptional circumstance" justifying retention of the D.C. action. ECF No. 8 at 5-6, *Joshua M. Ambush, LLC v. Rusnak*, 1:26-cv-01247 (D.D.C.). Having created a procedural morass through its own strategic choices, Ambush now asks this Court to stay its hand while the D.C. court resolves the very action that Ambush filed as part of its forum-shopping strategy.

This is textbook forum manipulation. As Mr. Rusnak argued in the D.C. proceeding: "A party cannot create 'exceptional circumstances' through its own procedural defaults and then invoke those self-inflicted wounds as a reason for another court to exercise jurisdiction over the same dispute." ECF No. 9 at 9, *Joshua M. Ambush, LLC v. Rusnak*, 1:26-cv-01247 (D.D.C.). The same principle applies here. A party cannot ignore the first-filed forum, file a competing action in a second forum, and then ask the first-filed court to stay its proceedings pending resolution of the second.

17

Courts applying the first-to-file rule have recognized that bad faith and forum shopping are among the few circumstances that warrant departure from the rule's ordinary operation. Here, the forum shopping runs in only one direction: Ambush chose to file in D.C.—a forum where neither party resides, where the arbitration did not occur, and where the governing law does not originate—two weeks after Mr. Rusnak filed in the parties' home forum of Maryland. By contrast, Mr. Rusnak filed in Maryland because that is where Ambush resides, where the arbitration occurred, where the retainer agreement was executed, and where the governing law originates. There is nothing inequitable about requiring the dispute to be resolved here.

If the Court grants the stay, Ambush will have successfully accomplished what its litigation strategy was designed to achieve—preventing the prompt confirmation of a valid arbitration award while it pursues an attack on that award in a forum of its choosing. The Court should not reward this conduct.

## V.    CONCLUSION

For these foregoing reasons, Mr. Rusnak does not oppose the entry of an order setting aside the default entered by the Clerk on April 29, 2026. However, Mr. Rusnak respectfully requests that this Court condition the vacatur on Ambush's payment of Mr. Rusnak's reasonable attorneys' fees and costs incurred in obtaining the entry of default and in responding to Ambush's motions to set aside the default and to dismiss for insufficient service of process.

In addition, Mr. Rusnak respectfully requests that this Court deny Respondents' alternative request for a stay of confirmation proceedings. The FAA mandates prompt confirmation of arbitration awards. Ambush cannot satisfy any of the traditional stay factors. The D.C. Petition to Vacate is a duplicative second-filed action that should be dismissed under the first-to-file rule. And

the stay request is the culmination of a bad-faith litigation strategy designed to delay enforcement of a valid award.

Dated: June 4, 2026

Respectfully submitted,

/s/ Robert A. Braun
Robert A. Braun
D. Md. Bar No. 22059
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
rbraun@cohenmilstein.com

Counsel for Petitioner Elvis J. Rusnak

19