# EXHIBIT R25

# U.S. VICTIMS OF STATE SPONSORED TERRORISM FUND

## FREQUENTLY ASKED QUESTIONS

(Updated September 10, 2025)

These FAQs are meant to help you understand the U.S. Victims of State Sponsored Terrorism Fund; however, they do not constitute legal advice, nor alter in any way the authorities of the Special Master and the U.S. Department of Justice, including the authority to implement the Act. The FAQs are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal.

### Section 1 – General Information

### 1.1 What is the U.S. Victims of State Sponsored Terrorism Fund?

Congress created the United States Victims of State Sponsored Terrorism Fund (USVSST Fund) by statute, to provide compensation to a specific group of international terrorism victims harmed by state-sponsored terrorism. Since establishing the USVSST Fund in 2015, Congress has amended its governing statute several times, most recently on December 29, 2022.

In general, the USVSST Fund is designed to award compensation to those victims of international state-sponsored terrorism who (1) have secured final judgments in a United States district court against a state sponsor of terrorism, or (2) were held hostage at the United States Embassy in Tehran, Iran from 1979 to 1981 (and eligible spouses and children). *See* FAQ 2.1.

The Special Master of the USVSST Fund is Mary Patrice Brown.

### 1.2 Where do I get an Application Form?

New claimants are encouraged to file their Application Form online. *See* File an Application Form Online, available on the "Submit a Claim" tab of the USVSST Fund's website.

Alternatively, you may obtain the current Application Form (updated January 2023):

- **Through the website:** You can download a fillable PDF version of the Application Form.
- **By telephone:** You can request an Application Form by calling toll-free: (855) 720-6966. If you are calling from outside the United States, please call collect: +1 (614) 553-1013.
- **By mail:** You can also send a written request for an Application Form to the U.S. Victims of State Sponsored Terrorism Fund, c/o Epiq, P.O. Box 5519, Portland, OR 97228.

### 1.3 How do I submit my form when I am finished?

New claimants are encouraged to file their Application Form online. *See* File an Application Form Online, available on the "Submit a Claim" tab of the USVSST Fund's website.

Alternatively, you may complete a PDF or paper Application Form and submit your application:

- **By email:** info@usvsst.com.
- **By facsimile:** For domestic faxes, toll-free to (855) 409-7130. For international faxes, to +1 (614) 553-1426.
- **By mail to:** U.S. Victims of State Sponsored Terrorism Fund, c/o Epiq, P.O. Box 5519, Portland, OR 97228.
- **By overnight delivery service to:** U.S. Victims of State Sponsored Terrorism Fund, c/o Epiq, 10300 SW Allen Blvd, Beaverton, OR 97005.

### 1.4 *Updated* What types of documents do I need to submit with my Application Form?

Yes. To be considered for eligibility for payments, claimants must timely submit a complete USVSST Fund application package. A document checklist appears at the end of the USVSST Fund's Application Form.

A complete application package must include **a copy of the claimant's qualifying final judgment**. *See* FAQ 2.2. If an application package is missing a qualifying final judgment, or other required documents, the Special Master may deny the claim. Before making eligibility determinations, the USVSST Fund generally offers claimants an opportunity to resolve deficiencies in the materials submitted.

### 1.5 Does it cost anything to file a claim?

No.

### 1.6 How will I know that the USVSST Fund has received my claim?

The USVSST Fund will notify you, or your attorney if you are represented, by mail or electronically.

### 1.7 Can more than one person file a claim for the same judgment?

Each claimant has only one claim before the USVSST Fund. Each applicant must submit their own claim, and may submit only one claim.

A final judgment from a United States district court may award compensation to multiple individuals who suffered harm as a result of an act of international terrorism by a state sponsor of terrorism. Each individual judgment-holder (or their Personal Representative, if the judgment-holder is deceased) must file their own separate application. The USVSST Fund cannot accept any application to be filed on behalf of more than one judgment-holder.

For example, an individual may hold a final judgment awarding him compensatory damages, and the same judgment may have also awarded compensatory damages to that individual's spouse. In that situation, the individual and the individual's spouse would each be required to file their own separate application.

For information regarding claimants who hold more than one judgment awarding them compensatory damages *see* FAQ 1.12.

### 1.8 Can I appeal the final decision of the Special Master to a court?

No. All of the Special Master's decisions about compensation from the USVSST Fund are final and not subject to administrative or judicial review. However, no later than 30 days after receipt of a written decision by the Special Master, a claimant whose application was denied in whole or in part may request a hearing before the Special Master or their designee. No later than 90 days after a hearing, the Special Master must issue a written decision affirming or amending the original decision; the written decision is final and non-reviewable. *See also* FAQs 5.1-5.7.

### 1.9 What is the last day to file a claim?

In general, the statute requires claimants to file a claim no later than 90 days after the date of obtaining a final judgment.

A default judgment entered against a foreign state is not considered a final judgment until service of process has been completed in accordance with 28 U.S.C. § 1608(e). *See* FAQ 2.3. Claimants who hold a default judgment may demonstrate service by showing either transmittal to the U.S. Department of State or other verified proof of service, such as a diplomatic note. The 90-day filing deadline for a USVSST Fund application begins from the date of the service document. For example, if a claimant provides both a clerk's certificate of service and a diplomatic note, the USVSST Fund will typically use the later of the two dates to calculate the applicable application filing deadline.

Claimants who have failed to file within the applicable 90-day filing deadline may submit a statement of good cause to the Special Master, who retains discretion to grant a reasonable extension of the 90-day filing deadline upon good cause shown. 34 U.S.C. § 20144(c)(3)(B).

In general, the Special Master may set deadlines for applications to be considered for forthcoming distributions. The deadline to submit applications to be considered for eligibility for

a distribution is separate from the 90-day statutory filing deadline. The deadline to be considered for eligibility for a distribution is not subject to the good cause extension in 34 U.S.C. § 20144(c)(3)(B). The application deadlines to be considered for a distribution grow out of the statutory requirements for claims processing.

**1.10 Will I be able to apply to the USVSST Fund confidentially?**

Yes. The Special Master will keep the names and applications of all victims and applicants confidential in accordance with the governing laws and regulations. Please review the Privacy Act Notice in the Application Form and the System of Records Notices for further information.

If a claimant is represented by an attorney before the USVSST Fund, the USVSST Fund typically communicates only with the claimant's attorney. *See also* FAQ 6.4.

Claimants may authorize the USVSST Fund to communicate with another individual regarding their claim by completing an Authorization for Communication, available on the USVSST Fund's website under the Forms page.

**1.11 How do I find out who has submitted a claim on behalf of a decedent victim?**

The Special Master will keep the names and applications of all victims and applicants confidential in accordance with the governing laws and regulations. *See* FAQ 1.10. This includes deceased individuals on whose behalf a claim has been filed by a Personal Representative. However, any Personal Representative must, prior to filing a claim, provide written notice of the claim to the immediate family of the decedent, the executor or administrator and beneficiaries of the decedent's will, the beneficiaries of the decedent's life insurance policies, and any other persons who may reasonably be expected to assert an interest in an award or to have a cause of action to recover damages relating to the wrongful death of the decedent. Immediate family of the decedent includes the spouse, former spouse(s), children, stepchildren, other dependents, siblings, and parents. To assist applicants, relevant forms, such as the "Notice of Filing Claim," are available on the USVSST Fund's website under the Forms page. *See also* FAQ 3.9.

**1.12 How do I apply if I received two separate judgments for compensatory awards (*e.g.*, as the spouse of one victim and as a parent of another victim)?**

Each claimant has only one claim before the USVSST Fund.

In certain situations, an individual may receive more than one separate judgment awarding them compensatory awards. For example, a claimant may receive one damages award based on injuries sustained by their spouse (the direct victim) and receive a separate damages award based on injuries sustained by their child (a different direct victim). In this situation, the claimant should file only one USVSST Fund Application Form, identifying both judgments and awards.

When a claimant obtains compensatory damages awards based on the death or injury of more than one direct victim, the USVSST Fund will consider the claimant's family relationships to the direct victims individually for purposes of family group caps when calculating payments. *See* FAQ 4.1. Thus, claimants' award calculations require the amount of each claimants' compensatory damage attributable to each direct victim.

## Section 2 – Eligibility

### 2.1 Who is an eligible claimant?

- An individual with a final judgment (i) issued by a United States district court under state or federal law against a foreign state that was designated as a state sponsor of terrorism at the time the acts described in clause (ii) occurred or was so designated as a result of such acts; and (ii) arising from acts of international terrorism, for which the foreign state was determined not to be immune from the jurisdiction of the courts of the United States under section 1605A, or section 1605(a)(7) (as such section was in effect on January 27, 2008), of title 28, United States Code (Foreign Sovereign Immunities Act, "FSIA").
- An individual employed as diplomatic or military personnel or civilian support staff at the United States Embassy in Tehran, Iran, who was taken and held hostage from the Embassy during the period beginning November 4, 1979, and ending through January 20, 1981; or
- the spouse and child of that individual at that time, who is also identified as a member of the proposed class in case number 1:00-CV-03110 (EGS) of the United States District Court for the District of Columbia. *See* FAQs 2.12-2.15.
- The "Personal Representative" of a deceased individual in one of the categories described above. *See* FAQ 3.1.

**Note**: Each applicant must submit sufficient evidence verifying their identity, including date of birth and Social Security Number (if any).

**Note**: 9/11-related victims and their family members must hold a qualifying judgment to be eligible. Their eligibility does not depend on whether they did or did not file claims with the September 11th Victim Compensation Fund (VCF). *See* FAQs 4.6-4.7.

### 2.2 What is a final judgment?

The Justice for United States Victims of State Sponsored Terrorism Act (the Act) defines a final judgment as an enforceable final judgment, decree, or order on liability and damages entered by a United States district court that is not subject to further appellate review. The final judgment awards the claimant compensatory damages on a claim or claims brought in a United States district court, under either federal or state law, arising from acts of international terrorism for which the court found that the foreign state was not immune from the jurisdiction of the courts of the United States under the Foreign Sovereign Immunities Act. All appeals must be completed before a judgment is final pursuant to the Act.

Prospective claimants must secure their own judgments to qualify for the USVSST Fund. The USVSST Fund cannot provide you any legal advice and recommends that you consult a licensed legal professional with any questions about seeking a judgment. The Special Master, the Department of Justice, and the United States government are not parties in the cases that lead to these final judgments.

**2.3 Does a default judgment qualify as a final judgment?**

Yes. In the case of a default judgment entered against a foreign state, the claimant must submit documentation showing either transmittal to the U.S. Department of State or other verified proof of service under 28 U.S.C. §§ 1608(a) and (e). If a default judgment is entered against an instrumentality of a state sponsor of terrorism, the claimant must submit verified proof of service under 28 U.S.C. §§ 1608(b) and (e). *See also* FAQs 1.9 (regarding calculating the 90-day application deadline) and 2.11 (regarding final judgments against an instrumentality of a state sponsor of terrorism).

In the event service cannot be completed under 28 U.S.C. § 1608(e), the Special Master may, in special circumstances and with good cause shown, review service as a matter of discretion.

**Note**: All applicants have a continuing obligation to update claim information, including significant developments involving the status of a qualifying final judgment.

**2.4 How do I get a final judgment?**

The Special Master cannot provide you any legal advice and recommends that you consult a licensed legal professional with any questions about seeking a judgment against foreign states that are designated as state sponsors of terrorism. The Special Master, the Department of Justice, and the United States government are not parties in the cases that lead to these final judgments.

**2.5 Will a claim be eligible for an award if it is not based on a final judgment?**

No, except for claims by qualifying Iran hostages, or their eligible spouses or children. All other claims must be based on a final judgment. *See* FAQ 2.1 regarding eligible claimants.

**2.6 Do I have to be a U.S. citizen to be eligible?**

No. Non-U.S. citizens who otherwise qualify may be eligible. *See* FAQ 2.1 regarding eligible claimants. *See also* 34 U.S.C. § 20144(j)(8).

**2.7 Is my entire judgment award considered in the award calculation by the USVSST Fund?**

No, only compensatory damages are eligible. The Act defines compensatory damages as excluding pre-judgment and post-judgment interest or punitive damages. Thus, if the United States district court awarded a claimant, for example, punitive damages as part of their final judgment, the punitive damages will not be considered in the USVSST Fund's award calculation. *See* FAQ 4.1.

For information regarding the lump sum catch-up payments set forth in the Fairness Act, *see* FAQs 7.1-7.4.

**2.8 What about judgments obtained under statutes other than the Foreign Sovereign Immunities Act (FSIA)?**

The Act limits eligible final judgments to those issued by a United States district court on a claim or claims under either federal or state law, arising from acts of international terrorism for which

the court found that the foreign state was not immune from the jurisdiction of the courts of the United States under the FSIA. *See also* FAQ 2.11 (judgments against an instrumentality of a state sponsor of terrorism). Judgments issued against non-state actors, or against terrorists, for terrorist acts under the Anti-Terrorism Act (ATA) or other statutes, do not qualify. *See also* FAQ 2.10.

## 2.9 What countries qualify as state sponsors of terrorism?

The Act defines a state sponsor of terrorism as a country that the U.S. Secretary of State has determined has a government that has repeatedly provided support for acts of international terrorism. The U.S. Department of State lists current state sponsors of terrorism on its website: https://www.state.gov/state-sponsors-of-terrorism/.

**Periods of Designation as State Sponsors of Terrorism**

| ***Foreign State*** | ***Designation Date*** | ***Removal from List*** |
|---|---|---|
| Cuba (1) | March 1, 1982 | May 29, 2015 |
| Cuba (2) | January 12, 2021 | Still listed |
| Iran | January 19, 1984 | Still listed |
| Iraq (1) | December 29, 1979 | 1982 |
| Iraq (2) | September 13, 1990 | October 7, 2004 |
| Libya | December 29, 1979 | June 30, 2006 |
| North Korea (1) | January 20, 1988 | October 11, 2008 |
| North Korea (2) | November 20, 2017 | Still listed |
| South Yemen | December 29, 1979 | 1990 |
| Sudan | August 12, 1993 | December 14, 2020 |
| Syria | December 29, 1979 | Still listed |

## 2.10 What if my judgment is against a terrorist group like al-Qaeda or Hamas?

If your judgment is solely against a terrorist group – like al-Qaeda or Hamas – and not against a state sponsor of terrorism, you are not eligible for compensation from the USVSST Fund.

### 2.11 What if my judgment is against an instrumentality of a state sponsor of terrorism, like the Ministry of Intelligence and Security (MOIS) of the Islamic State of Iran?

If the judgment is against an instrumentality of a state sponsor of terrorism, your judgment may be eligible. For example, if the judgment is against Iran's MOIS and you were awarded compensatory damages under the Foreign Sovereign Immunities Act, then that judgment could qualify as an eligible final judgment, if it meets all other requirements.

### 2.12 How do I show I was held as a hostage at the United States Embassy in Tehran, Iran, during the period beginning in 1979 and ending in 1981?

The deadline for applications from hostages has now passed. Documentation to verify being held hostage included, for example, employment records, correspondence from the U.S. Department of State, an affirmation signed under penalty of perjury, or records of receipt of related benefits from the U.S. government under civil service or other laws.

### 2.13 What about those individuals who were not held hostage for the entire time from November 4, 1979, through January 20, 1981?

The deadline for applications from hostages has now passed. Under an amendment to the Act, individuals who were not held hostage for the entire time could be found eligible, and must have filed claims by February 19, 2020. *See* FAQs 2.15 and 4.3.

### 2.14 What if an individual was working at the United States Embassy in Tehran, Iran, but was taken hostage outside of Embassy grounds?

The Act requires that the United States person must have been "taken and held hostage from the United States embassy in Tehran, Iran…" Thus, those claimants who were not taken from the United States embassy are ineligible for compensation from the USVSST Fund.

### 2.15 Who qualifies as a spouse or child of a hostage held in Iran?

The deadline for applications from spouses and children of hostages has now passed; it was October 12, 2016. To be eligible, the claimant must have shown, among other things, that he or she is a member of the proposed class in case number 1:00-CV-03110 (EGS) of the United States District Court for the District of Columbia. If claiming eligibility as a spouse or child of an Iran hostage, that (Roeder I) class definition states that the individual must be the spouse or child of the hostage "at the time" the hostage was held at the U.S. Embassy in Tehran, Iran. The Special Master looked to the law of the domicile of the hostage at that time to determine if the spouse or child qualified for compensation.

### 2.16 What were the options for filing a claim with the USVSST Fund if I was a judgment creditor in *Peterson* or a Settling Judgment Creditor in *In Re 650 Fifth Avenue & Related Properties*?

If you are a U.S. person who was a judgment creditor in *Peterson* or a Settling Judgment Creditor in *In Re 650 Fifth Avenue & Related Properties*, you had three options with respect to filing a claim with the USVSST Fund.

- Not participating in the USVSST Fund – no action required, and no compensation from the USVSST Fund.
- Participating in the USVSST Fund – you must have provided written notice in accordance with the Act by September 12, 2016. *See* FAQ 2.17. You must also have filed an application by October 12, 2016.
- Filing an application for conditional payment – you must have filed an application by October 12, 2016, or February 19, 2020 if the Act extended your application deadline, indicating that the application is conditional. *See* FAQ 2.18.

The deadlines for electing to participate and filing applications for conditional payment have passed.

The Fairness Act exempted certain claimants from these statutory provisions. Specifically, the provisions do not apply to 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims who held judgments before December 29, 2022 and for whom the Fairness Act reopened the application period until June 27, 2023. *See* FAQ 7.3 for additional information about 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims. Claimants exempted from the statutory provisions regarding judgment creditors should review FAQ 7.3 for information about applying to the USVSST Fund. The options in the statutory provisions above remain in force as to claimants who applied to the USVSST Fund before the enactment of the Fairness Act.

**2.17 How could a judgment creditor in *Peterson* or a Settling Judgment Creditor in *In Re 650 Fifth Avenue & Related Properties* elect to participate in the USVSST Fund?**

The Fairness Act exempted certain claimants from other statutory provisions regarding these judgment creditors (*see* FAQ 2.16). Specifically, the provisions do not apply to 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims who held judgments before December 29, 2022 and for whom the Fairness Act reopened the application period until June 27, 2023. *See* FAQ 2.16. *See also* FAQ 7.3 for additional information about 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims. Claimants exempted from the statutory provisions regarding judgment creditors should review FAQ 7.3 for information about applying to the USVSST Fund. These statutory provisions remain in force as to claimants who applied to the USVSST Fund before the enactment of the Fairness Act.

The deadline for individuals not exempted under the Fairness Act to elect to participate in the USVSST Fund has passed. If you were a judgment creditor in *Peterson* or a Settling Judgment Creditor in *In Re 650 Fifth Avenue & Related Properties* who chose to participate in the USVSST Fund, you must have elected to do so by (1) providing written notice by September 12, 2016 to the Attorney General, the Special Master, and the chief judge of the United States District Court for the Southern District of New York; and (2) acknowledging in writing that, by so electing, you irrevocably assigned to the USVSST Fund all rights, title, and interest in your claims to the assets at issue in the identified proceedings.

In addition to the written notices described above, those electing to participate in the USVSST Fund must have submitted an application by October 12, 2016. *See* FAQ 1.9.

**2.18 How could a judgment creditor in Peterson or a Settling Judgment Creditor in *In Re 650 Fifth Avenue & Related Properties* submit an application for conditional payment?**

The Fairness Act exempted certain claimants from other statutory provisions regarding these judgment creditors (*see* FAQ 2.16). Specifically, the provisions do not apply to 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims who held judgments before December 29, 2022 and for whom the Fairness Act reopened the application period until June 27, 2023. *See* FAQ 2.16. *See also* FAQ 7.3 for additional information about 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims. Claimants exempted from the statutory provisions regarding judgment creditors should review FAQ 7.3 for information about applying to the USVSST Fund. These statutory provisions remain in force as to claimants who applied to the USVSST Fund before the enactment of the Fairness Act.

The deadline for individuals not exempted under the Fairness Act to file an application for conditional payment with the USVSST Fund has passed. If you were a judgment creditor in *Peterson* or a Settling Judgment Creditor *in In Re 650 Fifth Avenue & Related Properties* who chose to submit an application for conditional payment with the USVSST Fund, you must have submitted your application and supporting documentation by the October 12, 2016 deadline, or February 19, 2020 if the Act extended your application deadline. You must have indicated on the Application Form that you were seeking a conditional payment, and also have made the appropriate certifications in Part IV of the Application Form.

## Section 3 – Personal Representative

### 3.1 Who is the Personal Representative of a deceased individual?

The Personal Representative is the individual authorized to submit a claim on behalf of an eligible deceased claimant. The Personal Representative is normally the individual appointed by a court of competent jurisdiction – such as a state surrogate or probate court – as one of the following:

- the personal representative of the deceased claimant's will or estate,
- the executor of the deceased claimant's will, or
- the administrator of the deceased claimant's estate.

If no Personal Representative or executor or administrator has been appointed by any court of competent jurisdiction, and as long as there is no pending litigation or other dispute about the identity of the Personal Representative, the person named by the deceased claimant in their will as the executor or administrator of the deceased claimant's estate is the Personal Representative. If no will exists, the Personal Representative is the first person in the line of succession established by the laws of the deceased claimant's domicile governing intestacy. In very limited circumstances, the Special Master may, at their discretion, determine the Personal Representative for purposes of compensation by the USVSST Fund.

In most cases, the identity of the Personal Representative will not be in dispute. Any claim submitted by an individual who has not demonstrated their authority as Personal Representative is incomplete and will not be reviewed for an eligibility determination.

**Note**: The determination of the Personal Representative is not the same question as the determination of who ultimately receives the award distribution. If the claim is eligible for compensation from the USVSST Fund, the Personal Representative will receive the award payment and shall distribute the award in a manner consistent with the decedent's will, the law of the decedent's domicile, or a ruling by a court of competent jurisdiction; or in accordance with the terms of an agreement among all beneficiaries who would be entitled to a share of the award.

**Note**: As noted in FAQ 2.1, each applicant, including a Personal Representative, must submit sufficient evidence verifying their identity, including date of birth and Social Security Number (if any).

### 3.2 How do I get appointed as the Personal Representative by a state court?

The Special Master cannot provide you any legal advice and recommends that you consult a licensed legal professional with any questions about seeking an appointment as a Personal Representative. Because state law governs the appointment of Personal Representatives, the Special Master generally notes that this may require action in the probate or surrogate court in the state where the deceased claimant lived to become the Personal Representative. The process varies by state.

### 3.3 Who should apply the rules and resolve the dispute over who should be the Personal Representative?

Disputes among relatives, former spouses, and other interested parties can be exceptionally fact-intensive and time-consuming. Indeed, state courts often spend considerable time and resources resolving disputed matters. Consequently, the Special Master does not arbitrate, litigate, or otherwise resolve disputes as to the identity of the Personal Representative.

Instead, to ensure that USVSST Fund awards are not needlessly tied up due to disputes regarding the identity of the Personal Representative, the disputing parties may agree in writing to the identity of a Personal Representative to act on their behalf, who may seek and accept payment from the USVSST Fund while those disputing parties work to settle their dispute. In appropriate cases, the Special Master may determine an award, but withhold payment until the dispute regarding the Personal Representative is finally resolved, or the Special Master may pay an award to a court of competent jurisdiction that is adjudicating a dispute about the Personal Representative.

### 3.4 How do I show that I am the proper Personal Representative for filing a claim with the USVSST Fund?

In most cases, if you have been appointed as the personal representative, executor, or administrator by a court, you should provide copies of relevant legal documents, such as court orders, letters testamentary, letters of administration, or similar documentation.

If you have been unable to secure appointment by a court as the personal representative of the decedent's estate or as the executor or administrator of the decedent's will or estate, but were named as the executor in the victim's will, you will need to provide a copy of the will.

If there is no will, you may demonstrate that you are the first person in the line of succession under the laws of the deceased victim's domicile governing intestacy. If any other individuals share priority with you in the line of succession established by the laws of the deceased victim's domicile governing intestacy, those individuals must consent to you serving as Personal Representative. The Special Master retains discretion to designate a Personal Representative for purposes of filing a claim with the USVSST Fund who is not next in the line of succession under the laws of the deceased victim's domicile governing intestacy.

All Personal Representatives must inform the USVSST Fund if their status as Personal Representative is the subject of pending litigation or other dispute. *See* FAQ 3.3 for additional information regarding disputes over who should be the Personal Representative.

**Note**: All applicants have a continuing obligation to update claim information, including information affecting a personal representative's authority to represent the estate. If the identity of the Personal Representative changes, the new Personal Representative must submit new material demonstrating their authority to act for the estate.

**3.5 If two people have been appointed as co-Personal Representatives of a deceased claimant's will or estate, do both people have to sign the application?**

Yes. The term "co-Personal Representatives" includes both co-executors of a will, and co-administrators of an estate when there is no will. If co-Personal Representatives are appointed, both co-Personal Representatives must execute the certifications and sign the Application Form as well as Certification of Personal Representative once the claim is found eligible for payment. Both co-Personal Representatives, if represented by an attorney, must submit a retainer signed in their capacities as Personal Representatives. *See* FAQ 6.3.

**3.6 What documentation does the Special Master require if the Personal Representative was appointed under foreign law?**

The applicant must submit sufficient documentation demonstrating that the person appointed as the Personal Representative was the correct individual under foreign law for the Special Master to accept the appointment. An applicant should submit additional supporting documentation detailing the reasonable steps undertaken to confirm the proper appointment of the Personal Representative under the laws of the foreign state, and confirming that any eligible claim amount will be distributed in accordance with the laws of the foreign state. *See also* FAQ 3.7 regarding submission of foreign-language documents, if relevant.

In the rare instance where a foreign appointment and a domestic appointment conflict, and the parties are unable to agree upon the appropriate Personal Representative for purposes of filing a claim with the USVSST Fund, the parties may refer the dispute to a court of competent jurisdiction for resolution. *See also* FAQ 3.3.

**3.7 Are there any requirements for submitting foreign-language documents?**

All documents submitted in languages other than English must be accompanied by a complete translation into English. In addition, you must include a certification from the translator in English that the translation is complete and accurate and that the translator is competent. The certification must include the date and the translator's name, signature, and address.

**3.8 What if there is no mechanism for obtaining a judicial appointment of a legal representative or administrator either in the U.S. or under foreign law?**

In limited circumstances, the Special Master may consider the claims of those who cannot secure an appointment. However, these cases will be rare, and applicants must provide detailed documentation and a description of the extenuating circumstances.

**3.9 Who gets the payment for decedents' claims?**

Awards for eligible decedents will generally be made to the qualified Personal Representative, who must distribute the award in a manner consistent with the decedent's will, the law of the decedent's domicile, or a ruling by a court of competent jurisdiction; or in accordance with the terms of an agreement among all beneficiaries who would be entitled to a share of the award. *See* FAQ 3.10 for additional information.

**3.10 I am the Personal Representative of an eligible estate claim. Do I need to provide any additional forms or information before receiving a payment?**

Personal Representatives of an eligible estate claim must complete a Certification of Personal Representative in order to receive an award payment.

As a reminder, all claimants have a continuing obligation to update claim information, including information affecting a Personal Representative's authority to represent the estate or collect award payments on behalf of the estate.

**Note:** In January 2022, the USVSST Fund revised certain estate-related requirements, *see* notice regarding updates to USVSST Fund estate claim processing.

All claimants have a continuing obligation to update claim information, including any changes to a previously approved Proposed Distribution Plan (PDP). If a change to the previously approved PDP is necessary, the Personal Representative should submit the Certification of Personal Representative in lieu of a revised PDP. The Personal Representative does not need to provide a new PDP.

**Section 4 – Compensation**

**4.1 How much of my final judgment will I be awarded?**

In general, eligible claims will be paid on a *pro rata* basis out of available funds, based on the amounts outstanding and unpaid on eligible claims, until all those amounts have been paid in full or the USVSST Fund sunsets in 2039.

For the first two rounds of distributions, the Act required all awards to be calculated together. For the third round and any subsequent distributions, the Act requires the USVSST Fund to divide all available funds in half, and to allocate 50% of the available funds to non-9/11-related victims and the remaining 50% to 9/11-related victims.

The Act also sets forth statutory limitations, or caps, on awards in certain circumstances. These include limits based on individuals' damages awards, and on combined award amounts for defined family groups. In the event any applicant is awarded in a judgment gross compensatory damages that exceed $20 million, the Special Master will treat that claim as if the compensatory award was for $20 million. This individual cap applies to all claimants, both non-9/11-related and 9/11-related.

In addition to the individual cap, the Act sets forth family-based caps on awards. There are different family caps for non-9/11-related and 9/11-related claimants, applicable to the third round and any subsequent distributions. For non-9/11-related claimants, victims and their immediate family members are subject to a collective $35 million cap. The same $35 million cap applies to family groups comprised of 9/11 victims, 9/11 spouses, and 9/11 dependents. However, a $20 million cap applies to family groups comprised of 9/11 family members who are not 9/11 victims, 9/11 spouses, or 9/11 dependents.

To calculate claimants' award amounts, claimants are placed into family groups based upon their relationship to the direct victim. The direct victim is the person whose injury or death was the basis of the Foreign Sovereign Immunities Act judgment (FSIA victim).

For example, if a claimant received two separate judgments based on the personal injury or death of two separate FSIA victims, the $20 million individual cap applies to the combined total of the claimant's judgments before applying the relevant family caps. *See also* FAQ 1.12. The family caps used in payment calculations depend on the claimant's family relationships to the separate FSIA victims. This means that a claimant's compensatory damages amount in the first judgment (after the individual cap is applied) will be subject to the family cap applied to the family members of that FSIA victim. Likewise, a claimant's compensatory damages amount in the second judgment (after the individual cap is applied) will be subject to the family cap applied to the family members of that the other FSIA victim.

**Individual and Family Caps Under the Act**

| | Non-9/11-Related Victim | 9/11-Related Victim |
|---|---|---|
| **Individual Cap** | $20,000,000 individual cap (both non-9/11-related and 9/11-related claimants) | |
| **Family Cap** | $35,000,000 immediate family member cap | $35,000,000 cap for 9/11 victim, 9/11 spouse, and 9/11 dependent<br><br>*E.g.*, 9/11 decedent, 9/11 decedent's spouse, and a 9/11 decedent's child are in one family grouping with a cap of $35,000,000 |
| | | $20,000,000 cap for 9/11 family members who are not a 9/11 spouse or 9/11 dependent<br><br>*E.g.,* a 9/11 decedent's parent and sibling who were not dependents are in a family group with a cap of $20,000,000 |

*See* FAQs 4.8 and 4.10 regarding how sources other than the USVSST Fund will be factored into calculating awards. *See also* FAQ 4.2 for definitions of non-9/11-related victim, 9/11-related victim, 9/11 victim, spouse of a 9/11 victim, 9/11 dependent, and 9/11 family member.

For information regarding the lump sum catch-up payments set forth in the Fairness Act, *see* FAQs 7.1-7.4.

### 4.2 How does the USVSST Fund define "immediate family member," "non-9/11 related victim," and "9/11 related victim"?

- **Immediate family member**: The Foreign Sovereign Immunities Act (FSIA) guides the definition of who is an immediate family member for purposes of the USVSST Fund. The Special Master has determined that immediate family members are a spouse, domestic partner, child, stepchild, parent, stepparent, brother, sister, half-brother, and half-sister of the direct victim whose injury or death was the basis of the FSIA judgment. If an immediate family member is deceased, the applicant should still identify the immediate family member, note that he or she is deceased, and provide any relevant estate information.
- The Act defines "non-9/11 related victim," and "9/11 related victim" (*see* below). These definitions do not govern eligibility (*see* FAQ 2.1) but do affect payment calculations (*see* FAQ 4.1) and attorneys' fees (*see* FAQ 6.2).

- **Non-9/11 related victim:** A United States person who has an eligible claim that is unrelated to the acts of international terrorism carried out on September 11, 2001.
- **9/11-related victim**: A United States person who has an eligible claim that is related to the acts of international terrorism carried out on September 11, 2001. Eligibility for the USVSST Fund is governed by the USVSST Fund statute, not whether a claimant did or did not file a claim in the September 11th Victim Compensation Fund (VCF1 or VCF2). *See* FAQ 2.1. *See also* FAQs 4.7 and 4.8 for information regarding VCF claims.
    - **9/11 victim:** A United States person whose injury or death stems from the acts of international terrorism carried on September 11, 2001.
    - **9/11 spouse**: In general, a United States person who was, or could have been, reported as spouse on the 9/11 victim's federal tax return. This includes a same-sex spouse who was lawfully married to the victim under then-applicable state law.
    - **9/11 dependent**:
        - In general, a United States person who the 9/11 victim reported, or could have reported, as a dependent on the 9/11 victim's federal tax return, such as a minor child; or
        - Child of the 9/11 victim who had not, before November 21, 2019, received payment from the USVSST Fund.
    - **9/11 family member**: Immediate family member of a 9/11 victim who is not a 9/11 spouse or 9/11 dependent.

For additional definitions, *see* FAQ 7.3.

### 4.3 If my award is based on being held hostage in Iran from 1979 to 1981, how will my award be calculated?

For those claimants, the eligible claim amount is set by the Act as the sum total of $10,000 per day for each day the claimant was held hostage from the U.S. Embassy in Tehran, Iran, during the period beginning November 4, 1979, and ending January 20, 1981.

As with final judgment amounts, these eligible claim award amounts are subject to *pro rata* calculation in accordance with the terms of the Act.

### 4.4 Do I need to resubmit my application to be considered for future payment rounds?

Each claimant has one claim before the USVSST Fund for all compensation, including lump sum catch-up payments. The USVSST Fund cannot accept duplicative filings. Eligible claimants do not need to resubmit an application to receive funds if the USVSST Fund makes additional rounds of payments.

The Special Master will authorize additional payment rounds if sufficient funds are available. For information regarding the lump sum catch-up payments set forth in the Fairness Act, *see* FAQs 7.1 - 7.4.

All eligible claimants and any applicants whose claims are pending have an ongoing obligation

to submit updated information as it arises, such as new compensation from sources other than the USVSST Fund, significant developments involving the final judgment, or changes to the Applicant's or Personal Representative's authority or identity. *See* Notice to Update Claim Information (PDF).

**4.5 Will applicants who receive award payments be required to designate a United States domestic custodian for the deposit and distribution of the payment?**

Yes. The USVSST Fund will issue payments only to accounts held in United States domestic banks or financial institutions, and not to any foreign bank or financial institution. Prior to the distribution of any award payments, claimants must submit documentation identifying a U.S. based account. *See also* FAQ 8.11.

**4.6 What if I was awarded compensatory damages in an eligible final judgment and also received an award under section 405 of the Air Transportation Safety and System Stabilization Act (September 11th Victim Compensation Fund)?**

VCF claims no longer affect payments from the USVSST Fund. The Act no longer contains an earlier statutory provision that precluded USVSST Fund payments to eligible claimants who had received an award or award determination from the September 11th Victim Compensation Fund (VCF1 or VCF2) under section 405 of the Air Transportation Safety and System Stabilization Act. Accordingly, under the current governing legislation, if 9/11 victims or their immediate family members have qualifying claims, they may receive compensation from the USVSST Fund, regardless of whether they did or did not apply to VCF1 or VCF2.

**4.7 What if I made a VCF1 or VCF2 claim? What if I withdrew my VCF2 claim with prejudice?**

VCF claims no longer affect payments from the USVSST Fund. *See* FAQ 4.6. Please refer to VCF for any questions about VCF at www.vcf.gov.

**4.8 What is a source of compensation other than the USVSST Fund?**

The Act defines a "source other than" the USVSST Fund as any collateral source, including any life insurance, pension funds, death benefit program, payment by Federal, state, or local government, and court awarded compensation related to the act of international terrorism that gave rise to a claimant's final judgment, except that the term does not include payments received in connection with an international claims agreement to which the United States is a state party or any other settlement of terrorism-related claims against Sudan.

The applicant must identify on the Application Form, to the best of the applicant's knowledge, all sources other than the USVSST Fund that the claimant (or, in the case of a Personal Representative, the deceased claimant and any beneficiary of the deceased claimant) has received or is entitled or scheduled to receive as a result of the act of international terrorism that gave rise to the claimant's final judgment, including information identifying the amount, nature, and source of that compensation. The applicant must keep the USVSST Fund informed of any compensation that the claimant, or the claimant's beneficiaries, received or are entitled or scheduled to receive from sources other than the USVSST Fund throughout the life of the USVSST Fund.

The Special Master retains discretion in assessing any identified source other than the USVSST

Fund and determining how it will factor into an award calculation. As one example, if the claimant is deceased, life insurance payments paid on personally secured policies must be identified as a source other than the USVSST Fund but will not affect eligible claimants' awards.

Money received from the September 11th Victim Compensation Fund (VCF1 or VCF2) whether as an award, award determination, or estate distribution will not be considered an offset for USVSST Fund award calculations. However, as required by the Act, USVSST Fund claimants must identify compensation received from VCF1 or VCF2.

The Consolidated Appropriations Act, 2021, amended the term "source other than this Fund" to exclude payments received in connection with an international claims agreement to which the United States is a state party or any other settlement of terrorism-related claims against Sudan. As a result, claimants need not report recoveries from those sources.

**4.9 What does it mean to be "entitled or scheduled to receive" a payment from a source other than the USVSST Fund?**

The Act defines "entitled or scheduled to receive" as any potential recovery where that person or their representative is a party to any civil or administrative action pending in any court or agency of competent jurisdiction in which the party seeks to enforce the judgment giving rise to the application to the USVSST Fund.

**4.10 How will sources other than the USVSST Fund be factored into calculating my award?**

The Act requires that the claimant provide the Special Master with information regarding sources other than the USVSST Fund, and to update that information. *See* FAQs 4.8 and 4.9. The Special Master then reviews and determines an award calculation based on amounts outstanding and unpaid on a final judgment, as well as other statutory limitations. *See* the payment calculation explanations posted on the Distributions and Payments page of the USVSST Fund's website for more information on treatment of sources other than the USVSST Fund in the most recent distribution.

If an eligible claimant has received, or is entitled to or scheduled to receive, a payment that is equal to, or in excess of, 30% of the total compensatory damages owed to the claimant from any source other than the USVSST Fund, he or she will not receive any payment from the USVSST Fund until such time as all other eligible claimants have received from the USVSST Fund an amount equal to 30% of the compensatory damages awarded to those claimants under their final judgments.

But if the claimant has received some but less than 30% of the compensatory damages owed to that claimant under the final judgment from a source other than the USVSST Fund, the claimant's award calculation will be based on the difference between the percentage of compensatory damages the claimant has received from sources other than the USVSST Fund and the percentage of compensatory damages to be awarded other eligible claimants from the USVSST Fund. No special application is required for these claimants; the Special Master will use the information provided on the Application Form for these calculations. All applicants, including claimants who have received compensation from the USVSST Fund, have a continuing obligation to submit updated information regarding compensation from sources other than the USVSST Fund. *See* Notice to Update Claim Information (PDF).

### 4.11 Is the provision considering whether 30% of compensatory damages have been paid a statutory cap on my award?

No. This statutory provision requires the USVSST Fund to account for payments from sources other than the USVSST Fund and to adjust award amounts. A separate provision of the Clarification Act establishes the statutory limitations or caps on awards in certain circumstances. *See* FAQs 4.1 and 4.3.

### 4.12 Can I get an advance on my award?

No. The Special Master will not authorize any emergency or other advance award payments.

### 4.13 How long until I get my full award?

The USVSST Fund authorizes payments in accordance with the statute's deadlines. Because there is no way to precisely predict the number of eligible claims or the total amounts to be deposited in the USVSST Fund over time, there is no way to predict what percentage of eligible claims will be paid until the USVSST Fund sunsets in 2039.

Payments to claimants who submitted applications for conditional payment as a judgment creditor in *Peterson* or a Settling Judgment Creditor in *In Re 650 Fifth Avenue & Related Properties* (or both) are subject to additional terms under the Act. The USVSST Fund determines award payment amounts for Settling Judgment Creditors in *In Re 650 Fifth Avenue* who filed applications for conditional payment but withholds payment pending a final judgment in those proceedings. Claimants who filed applications for conditional payment as judgment creditors in *Peterson* did not receive payments because funds were distributed in those proceedings.

For information regarding the lump sum catch-up payments set forth in the Fairness Act, *see* FAQs 7.1-7.4.

### 4.14 Will the Special Master's final decision tell me the full amount I will be entitled to?

The Special Master's final decision will inform the claimant only of the claim's eligibility and the eligible claim amount to be used in calculating any award. Claimants will be notified separately of specific award amounts when the USVSST Fund is preparing to make a distribution. Because the USVSST Fund may find additional claimants eligible and receive additional appropriations or deposits into the USVSST Fund, as well as make further distributions, the full amount of payments cannot be determined until the USVSST Fund sunsets in 2039.

For information regarding the lump sum catch-up payments set forth in the Fairness Act, *see* FAQs 7.1-7.4.

### 4.15 Will my award be subject to federal income taxes?

The Special Master recommends that you direct any tax-related questions to a tax professional. The USVSST Fund does not issue any IRS forms such as the IRS Form 1099.

**4.16 Will the Special Master publicize my award?**

The Special Master will keep the awards confidential in accordance with the governing laws and regulations. *See* FAQ 1.10. Statutorily required Congressional reporting does not include identification of individual claimants. The Act requires the Special Master, within 30 days after authorizing the payment for compensation of eligible claims, to submit to the chairman and ranking minority member of the Committee on the Judiciary of the House of Representatives and the chairman and ranking minority member of the Committee on the Judiciary of the Senate a report on the payment of eligible claims, including the number of applications approved and the amount of each award, the number of applications denied and the reasons for the denial, the number of applications for compensation that are pending for which compensatory damages have not been paid in full, and the total amount of compensatory damages from eligible claims that have been paid and that remain unpaid. Copies of these Congressional reports are available on the USVSST Fund's website in the News and Reports page.

**4.17 How will the USVSST Fund issue payments? Do I have to direct the payment to my personal bank account?**

The USVSST Fund will make payments on eligible claims into United States domestic accounts (not to foreign accounts, *see* FAQ 4.5) designated by the claimants. Claimants may designate a personal bank account, brokerage account, the claimant's attorney's client trust account (*e.g.*, IOLTA account), or qualified settlement fund (QSF) to receive their USVSST Fund award payments.

As of June 14, 2024, the USVSST Fund no longer requires claimants to provide documentation indicating they are aware that their USVSST Fund award payments will be directed to a QSF. As always, the Special Master will not enter into, approve, or ratify any payment distribution agreements or any terms of such agreements, such as structured settlements.

**4.18 I am an eligible claimant. What do I need to do to receive my payment from the USVSST Fund?**

You or your attorney must complete the ACH Payment Form to receive by direct deposit the award payment amount. The claimant or the individual who is authorized to receive payment on the claimant's behalf must complete, sign, and date the ACH Payment Form. The ACH Payment Form is available on the USVSST Fund's website on the Forms page. In addition, if a Personal Representative filed an estate claim, that Personal Representative must submit the "Certification of Personal Representative" prior to receiving an award payment. *See* FAQs 3.9 and 3.10. That form is available on the USVSST Fund's website on the Forms page.

**4.19 How much of my payment will go to my attorney?**

The Special Master does not determine attorneys' fees or costs; that is to be determined between attorneys and clients. Statutory limitations on attorneys' fees and costs apply to all claim awards. The Clarification Act established different limitations for 9/11-related claims and non-9/11-related claims. *See* FAQ 6.2.

### 4.20 Will the USVSST Fund pay my attorneys' fees?

No. The USVSST Fund will not pay attorneys' fees. The USVSST Fund will send payment to the account designated for payment by the claimant. While claimants may designate their attorneys' client trust accounts (*e.g.*, IOLTA accounts) to receive payments on their behalf, the Special Master does not determine attorneys' fees or costs.

### 4.21 What if there is a dispute about attorneys' fees and costs for my claim?

The Special Master recommends all parties seek advice from a legal professional regarding any attorneys' fees and costs disputes. The Special Master will not adjudicate any fee and cost disputes, nor accept any liens (such as charging liens submitted by a former attorney).

### 4.22 What if there is a dispute about which attorney represents me?

The Special Master will not adjudicate disputes about representation. Claimants must provide accurate information regarding representation to the USVSST Fund. A claimant may change or remove the attorney(s) listed on an Application Form by completing the Change of Attorney Form, available on the USVSST Fund's website on the Forms page. If more than one application is filed on behalf of a single claimant, the Special Master may not be able to make a payment on the claim until the dispute is resolved among the parties.

### 4.23 When will I know how much my payment will be?

The USVSST Fund authorizes payments pursuant to statutory deadlines. The Special Master authorized fifth-round payments for eligible claims by January 1, 2025. As previously announced, the Special Master will authorize sixth-round payments for eligible claims by January 1, 2026. If sufficient funds are available, the Special Master will authorize subsequent rounds of payments by January 1, in 2027 or in subsequent years, until the USVSST Fund sunsets in 2039. Before making payments, the Special Master informs all eligible claimants of the specific payment amount calculated for their claims.

For information regarding the lump sum catch-up payments set forth in the Fairness Act, *see* FAQs 7.1-7.4.

### 4.24 When will the USVSST Fund issue my award payment?

The USVSST Fund generally makes payments on a rolling basis, beginning as soon as possible after the Special Master authorizes them. The Special Master authorized fifth-round payments for eligible claims by January 1, 2025. As previously announced, the Special Master will authorize sixth-round payments for eligible claims by January 1, 2026. If sufficient funds are available, the Special Master will authorize subsequent rounds of payments by January 1, in 2027 or in subsequent years, until the USVSST Fund sunsets in 2039. For information regarding the lump sum catch-up payments set forth in the Fairness Act, *see* FAQs 7.1-7.4.

### 4.25 Is there any reason why I may not receive all or part of my award payment?

Yes. If you have delinquent debts, there may be a delay in your payment. *See* FAQ 8.13. Also, if you are criminally culpable for an act of international terrorism, you are statutorily precluded from receiving compensation from the USVSST Fund.

### 4.26 When will the USVSST Fund authorize future rounds of payments?

The Special Master authorized fifth-round payments for eligible claims by January 1, 2025. As previously announced, the Special Master will authorize sixth-round payments for eligible claims by January 1, 2026. If sufficient funds are available, the Special Master will authorize subsequent rounds of payments by January 1, in 2027 or in subsequent years, until the USVSST Fund sunsets in 2039. In determining whether to authorize a distribution, the Special Master considers the statutory framework, the estimated funds available, the estimated potential payment amounts, the time since the last authorized distribution, and victim expectations. The USVSST Fund's governing Act requires the appointment or reappointment of a Special Master when there is more than $100 million in the USVSST Fund, which does not necessarily mean there are sufficient funds for a distribution. For example, USVSST Fund balances include monies that are not available for immediate distribution, such as monies the statute requires the Special Master to allocate and preserve for conditional claims (*see* FAQs 2.16, 2.18). The USVSST Fund continues to work diligently to identify matters that qualify for deposit.

For information regarding the lump sum catch-up payments set forth in the Fairness Act, *see* FAQs 7.1-7.4.

### 4.27 What other factors may affect my USVSST Fund award payment amount?

In addition to statutory limitations, examples of other factors that may affect your USVSST Fund award payment amount include a change to your final judgment amount or to the total compensatory damages awarded to your family members. These changes may require individualized adjustments to how your payments are calculated. *See* payment calculation explanations for both 9/11-related and non-9/11-related claimants, available on the Distributions and Payments page.

For information regarding the lump sum catch-up payments set forth in the Fairness Act, *see* FAQs 7.1-7.4.

### 4.28 Where can I find information about cases that qualify for deposit into the USVSST Fund?

The USVSST Fund continuously accumulates deposits from qualifying cases. The Qualifying Cases page of the USVSST Fund website and Section 9 of the FAQs include information about cases that qualify for deposit into the USVSST Fund.

**Section 5 – Hearing/Appeals**

**5.1 My claim was denied in whole or in part. Will I be able to have a hearing?**

If your claim was denied in whole or in part, you may request a hearing. You are not required to request a hearing. If you do timely request a hearing, the Special Master or their designee will conduct one. *See* FAQs 5.2, 5.5, and 5.6.

Claimants whose claims were denied in whole or in part may notify the Special Master of any suspected error or mistake in the eligibility decision and request a review without waiving their right to a hearing. However, requesting a review of the decision does not toll the 30-day time period within which to request a hearing. *See* FAQ 5.2.

**5.2 Is there is a deadline to request a hearing?**

Yes. A claimant whose claim is denied in whole or in part has 30 days after receipt of a written decision by the Special Master to request a hearing.

**5.3 My eligibility letter contains a mistake. Can I request a review?**

Yes. Eligible claimants should promptly notify the Special Master of any suspected error or mistake and request a review.

**5.4 Can I appeal my award payment amount?**

No. An award payment calculation does not constitute a denial, nor does an eligibility determination or award calculation for any other claimant.

**5.5 Who will conduct the hearings?**

The Special Master or designees of the Special Master will conduct the hearing.

**5.6 How long will hearings last?**

The statute does not set a specific time limit or format for the hearing. Based on the circumstances of the claim, the Special Master or their designee shall determine the time, location, duration, and procedures for the hearing.

**5.7 How long will it take to get a decision after the hearing?**

The statute provides that not later than 90 days after a hearing the Special Master will issue a final written decision affirming or amending the original decision, and the Special Master will make every effort to issue decisions expeditiously. The written decision is final and non-reviewable.

## Section 6 – Representation by an Attorney

### 6.1 Do I need to hire an attorney to represent me before the USVSST Fund?

No. You are not required to hire an attorney to represent you before the USVSST Fund. However, you have the right to be represented by an attorney.

### 6.2 How much of my claim award will my attorney be entitled to?

The Special Master does not determine attorneys' fees or costs; that is to be determined between attorneys and clients. Notwithstanding any retainer or other agreement for legal services you have entered, the Act states that no attorney representing a non-9/11-related victim of state sponsored terrorism shall charge, receive, or collect, and the Special Master will not approve, any payment of fees and costs that in the aggregate exceeds 25% of any award payment.

The Act further states that *after* November 21, 2019, no attorney representing a 9/11-related victim of state sponsored terrorism shall charge, receive, or collect, and the Special Master will not approve, any payment of fees and costs that in the aggregate exceeds 15% of any award payment. *See also* FAQs 4.19-4.21 regarding payments and attorneys' fees. Acknowledgement and Certification of Compliance Forms for claimants and attorneys are available on the USVSST Fund's website on the Forms page.

### 6.3 Do I need to submit an updated retainer agreement with my Application Form?

The USVSST Fund requires that attorneys submit documentation of their authority to represent the applicant. Attorneys may submit a copy of an existing executed retainer agreement; the USVSST Fund does not need a newly executed agreement, only the one on file. If an applicant dies and their individual claim is converted to an estate claim, the Personal Representative must provide documentation of the attorney's authority to represent the Personal Representative in their capacity as Personal Representative. *See also* FAQ 4.22 regarding disputes about which attorney represents a claimant.

### 6.4 If I hire an attorney to represent me before the USVSST Fund, with whom will the USVSST Fund communicate?

As a general matter, if a claimant is represented by an attorney before the USVSST Fund, the USVSST Fund can communicate only with the claimant's attorney. Except for notices of a change of attorney, if a represented claimant or their authorized alternative contact communicates separately with the USVSST Fund, the USVSST Fund will direct its response and the incoming communication to the claimant's attorney. The USVSST Fund will send claim records only to claimants or their attorneys. *See also* FAQs 1.10 and 4.22.

**Section 7 – Lump Sum Catch-Up Payments**

**7.1 What are lump sum catch-up payments?**

Lump sum catch-up payments are one-time payments the Act directs the USVSST Fund Special Master to make to certain claimants using separate funding, apart from the USVSST Fund's other statutory distributions. The Comptroller General, Government Accountability Office (GAO) provides to the Special Master reports in which GAO establishes which claimants are eligible for these payments and how they are calculated. Claimants do not need to file additional or separate applications for lump sum catch–up payments. Each claimant has one claim before the USVSST Fund for all compensation, including lump sum catch-up payments. The USVSST Fund cannot accept duplicative filings.

**9/11-related lump sum catch-up payments:**

The Consolidated Appropriations Act, 2021, required the Comptroller General of the United States to conduct an audit and prepare a report on proposed lump sum catch-up payments to certain 9/11 victims, 9/11 spouses, and 9/11 dependents. GAO published its report (PDF) on these estimated lump sum catch-up payments on August 11, 2021. The legislation requiring the audit and report did not authorize or appropriate any funds for these payments, and did not authorize the Special Master to make them.

The Fairness Act, enacted on December 29, 2022, amended the Act to direct the Special Master to authorize these payments and to appropriate funds for use only as "such sums necessary" to pay these lump sum catch-up payments. The GAO report establishes which claimants are eligible for these payments and how they are calculated. The legislation directed the Special Master to make the payments in amounts equal to those calculated by the GAO. *See* "Special Master's Report Regarding Lump Sum Catch-Up Payments to 9/11 Victims, Spouses, and Dependents" (May 2023).

**Lump sum catch-up payments to certain 1983 Beirut barracks bombing victims and certain 1996 Khobar Towers bombing victims:**

The Fairness Act required the Comptroller General of the United States to conduct an audit to determine proposed lump sum catch-up payments to certain 1983 Beirut barracks bombing victims and certain 1996 Khobar Towers bombing victims. *See* FAQs 7.2–7.3 for additional information. The Fairness Act also established a "lump sum catch-up payment reserve fund" within the USVSST Fund, and appropriated $3,000,000,000 to that reserve fund.

GAO published its report (PDF) on these estimated lump sum catch-up payments on November 1, 2024. The Fairness Act directs that, not earlier than 90 days after the date on which the Comptroller General submitted the report (January 30, 2025), and not later than one year after that date (November 1, 2025), the Special Master shall authorize the lump sum catch-up payments from the reserve fund. Only after the Special Master authorizes the lump sum catch-up payments will the USVSST Fund begin issuing these payments on a rolling basis. On January 31, 2025, the USVSST Fund began informing eligible victims of the 1983 Beirut barracks bombing and the 1996 Khobar Towers bombing of their GAO-determined lump sum catch-up payment amounts,

and continues issuing these payments on a rolling basis. *See* "Special Master's Report Regarding Lump Sum Catch-Up Payments to Victims of the 1983 Beirut Barracks Bombing and 1996 Khobar Towers Bombing" (March 2025).

**7.2 Who is eligible for lump sum catch-up payments and how much will the payments be?**

**9/11-related lump sum catch-up payments:** Certain 9/11 victims, 9/11 spouses, and 9/11 dependents, for whom GAO calculated lump sum catch-up payments in its 2021 report, were eligible to receive lump sum catch-up payments. *See* FAQ 4.2 for definitions of 9/11 victim, 9/11 spouse, and 9/11 dependent. The GAO report established which claimants were eligible for these payments and how they were calculated. These claimants did not need to reapply to the USVSST Fund in order to receive their catch-up payments. In April 2023, the USVSST Fund informed eligible 9/11-related claimants of their GAO-determined lump sum catch-up payment amounts, and issued over 90 percent of the payments within one month. *See* "Special Master's Report Regarding Lump Sum Catch-Up Payments to 9/11 Victims, Spouses, and Dependents" (May 2023).

**Lump sum catch-up payments to certain 1983 Beirut barracks bombing victims and certain 1996 Khobar Towers bombing victims:** Certain victims of the 1983 Beirut barracks bombing and the 1996 Khobar Towers bombing are eligible to receive lump sum catch-up payments, calculated by the Comptroller General, Government Accountability Office (see November 1, 2024 GAO report here). *See* FAQ 7.3 for additional information. On January 31, 2025, the USVSST Fund began informing eligible victims of the 1983 Beirut barracks bombing and the 1996 Khobar Towers bombing of their GAO-determined lump sum catch-up payment amounts, and continues issuing these payments on a rolling basis. *See* "Special Master's Report Regarding Lump Sum Catch-Up Payments to Victims of the 1983 Beirut Barracks Bombing and 1996 Khobar Towers Bombing" (March 2025).

**7.3 Which 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims are included in the Fairness Act's lump sum catch-up payment provision and how do these victims file a claim with the USVSST Fund?**

**Eligibility for lump sum catch-up payments:** The Fairness Act's lump sum catch-up payment provision provides that certain victims of the 1983 Beirut barracks bombing and the 1996 Khobar Towers bombing are eligible to receive lump sum catch-up payments, as determined by the Comptroller General, Government Accountability Office (GAO). The November 2024 GAO report (PDF) establishes which claimants are eligible for these payments and how they were calculated.

### 7.4 What is the "lump sum catch-up payment reserve fund"?

The Fairness Act established a "lump sum catch-up payment reserve fund" within the USVSST Fund to pay the lump sum catch-up payments calculated by GAO for certain 1983 Beirut barracks bombing victims and certain 1996 Khobar Towers bombing victims. The Fairness Act appropriated $3,000,000,000 to that reserve fund. The Fairness Act did not appropriate any additional funds to the USVSST Fund.

The lump sum catch-up payment reserve fund terminates within one year after the Special Master "disperses" [*sic*] all lump sum catch-up payments to the eligible claimants.

The lump sum catch-up payment reserve fund available for payments calculated by GAO for certain 1983 Beirut barracks bombing victims and certain 1996 Khobar Towers bombing victims is separate from the appropriation for lump sum catch-up payments to certain 9/11 victims, spouses, and dependents. The only funding the Fairness Act provided to the USVSST Fund was for the lump sum catch–up payments to certain 9/11 victims, spouses, and dependents, and for the lump sum catch–up payment reserve fund for payments calculated by GAO for certain 1983 Beirut barracks bombing victims and certain 1996 Khobar Towers bombing victims.

*See* FAQs 7.1 – 7.3 for additional information.

**Section 8 – Direct Deposit and Payment**

**8.1 What is Direct Deposit?**

Direct Deposit is an electronic method of payment whereby funds are deposited directly into your bank account.

**8.2 Is Direct Deposit safe?**

Yes. Direct Deposit is more secure than a paper check. There is no risk of lost, delayed, misrouted, or stolen mail.

**8.3 How much does Direct Deposit cost?**

There is no charge for Direct Deposit.

**8.4 Do I need any special software or online banking to receive a Direct Deposit payment?**

No. All you need is a valid account at any U.S. bank, credit union, or other financial institution that participates in Direct Deposit. The USVSST Fund will issue payments only to accounts held in United States domestic banks or financial institutions and not to any foreign bank or financial institution. Prior to the distribution of any award payments, either the applicant or their attorney must submit documentation identifying a U.S. based account to receive the payment.

**8.5 What form do I need to complete to have a USVSST Fund payment deposited directly into the bank?**

You should complete the ACH Payment Form. The ACH Payment Form must be completed, signed, and dated by the claimant or the individual who is authorized to receive payment on the claimant's behalf. The ACH Payment Form must contain the following:

- Name, address and telephone number of Payee: Enter the name(s), address and telephone number of the account owner(s) on the bank account to which payments will be made.
- Name of Person(s) Entitled to Payment: Enter the claimant's (or approved Authorized Representative's) full legal name.
- Payee's Social Security Number: Enter the claimant's (or approved Authorized Representative's) Social Security, Tax Identification, National Identification, or passport number.
- Type of Depositor Account: You must identify the account as either a checking or savings account. If you are not certain whether your account is a checking or savings account, please consult with your bank. Brokerage accounts are considered checking accounts for Direct Deposit purposes.
- Depositor Account Number: Enter the bank information, as well as the account and bank routing numbers for the account to which payments will be made.
- On the form or in a cover letter, identify the assigned Claim Number.

- Payee Certification: The claimant or approved Authorized Representative must sign and date the form.

**8.6 How do I submit my completed ACH Payment Form to the USVSST Fund?**

Once you or your Authorized Representative has completed the ACH Payment Form, you can submit it to the USVSST Fund in one of the following ways:

- By facsimile: For domestic callers at (855) 409-7130 and for international callers at (614) 553-1426.
- By mail to: U.S. Victims of State Sponsored Terrorism Fund, c/o Epiq, P.O. Box 5519, Portland, OR 97228.
- By overnight delivery service to: U.S. Victims of State Sponsored Terrorism Fund, c/o Epiq, 10300 SW Allen Blvd, Beaverton, OR 97005.
- By email: info@usvsst.com.
- By upload to the USVSST Fund's secure FTP site.

**8.7 Will there be testing of my account information for accuracy before the actual payment is sent?**

Yes. Based upon the account information in your ACH Payment Form, a test deposit in the amount of $0.01 will be sent to your bank to verify your bank routing number and your bank account number.

**8.8 Can I direct funds to more than one account?**

The USVSST Fund will issue a payment to only one account for each eligible applicant.

**8.9 What is a Bank Routing Number and where can I find it?**

A Bank Routing Number, sometimes called an ABA number, is a nine-digit code that identifies banks in the United States. You can find this number on your personal check in the bottom left-hand corner. The number can also be found on your deposit slips in the same location. You can also contact your bank or financial institution to request the routing number.

**8.10 If I use a brokerage account (*e.g.,* Merrill Lynch, Fidelity, TD Ameritrade, *etc.*) should I select "checking" or "savings" on the ACH Payment Form?**

You should select "checking." Brokerage accounts are considered checking accounts for Direct Deposit purposes.

### 8.11 Can I use Direct Deposit for a bank account in a foreign country?

No. The ACH Payment Form is only valid for direct deposit into a U.S. bank account. The USVSST Fund will only issue payments to accounts held in United States domestic banks or financial institutions and not to any foreign bank or financial institution.

### 8.12 If I would like to submit the ACH Payment Form by using the FTP website, how do I gain access to the FTP website?

You can request login credentials to the FTP website—a secure website maintained by the claims administrator which can be used to upload claim documentation—by emailing the claims administrator at info@usvsst.com, or by calling the claims administrator toll-free at (855) 720-6966. If you are calling from outside the United States, please call collect at +1 (614) 553-1013. You will need to provide the claims administrator with the email address associated with the individual(s) who will need access to the FTP site.

### 8.13 If I have delinquent debts, will they be offset against my award payment from the USVSST Fund?

Yes. The Debt Collection Improvement Act of 1996 (DCIA), 31 U.S.C. § 3716, as amended, directs federal disbursing officials to offset federal payments, such as any award payment issued by the USVSST Fund, to collect delinquent debts that federal agencies certify to the Secretary of the Treasury as valid and legally enforceable debts. In order to implement this section of the DCIA and other debt collection authorities, the Bureau of the Fiscal Service (BFS), the U.S. Department of the Treasury (Treasury), established the Treasury Offset Program (TOP).

When the USVSST Fund prepares payments for a distribution, it must comply with the statutory requirement to conduct a TOP check. Treasury identifies claimants who have a delinquent debt that qualifies for collection through TOP, but does not provide the USVSST Fund any information about the amount or source of the debt, in accordance with the TOP statute.

The USVSST Fund will send the claimant, or the claimant's counsel, a notification if Treasury informs the USVSST Fund that an eligible claimant has a delinquent debt that qualifies for collection through TOP.

For the identified claimants, the USVSST Fund initiates a process to release the claimant's full award amount to Treasury. If there is no outstanding debt at the time of the payment, Treasury will remit the full amount of the Fund payment to the account designated by the claimant or counsel. If there is an outstanding debt, and it is less than the Fund payment, Treasury will remit the remaining amount to the account designated by the claimant or counsel. If the debt equals or exceeds the Fund payment amount, Treasury will not remit any amount to the account designated by the claimant or counsel.

Once the USVSST Fund is informed of the TOP debt and initiates this payment process, changes to the status of the debt with TOP do not affect how the USVSST Fund handles payment for that claim. Treasury cannot provide the USVSST Fund information about the debt, beyond identifying which claimants have these debts.

The USVSST Fund cannot address or resolve TOP or delinquent debt questions. Documents related to the debt should not be submitted to the USVSST Fund. Treasury informs the USVSST Fund only that a delinquent debt exists, and the USVSST Fund proceeds accordingly. The USVSST Fund does not have information on the timing of individual claim payments by Treasury.

For additional information, please contact TOP at (800) 304-3107 or visit the TOP website at www.fiscal.treasury.gov/top.

## Section 9 – Qualifying Cases

### 9.1 How are the USVSST Fund's general distributions funded?

Aside from certain specific and limited appropriations, all funding for the USVSST Fund comes from proceeds of federal enforcement actions.

The Justice for United States Victims of State Sponsored Terrorism Act (Act), 34 U.S.C. § 20144(e)(2), mandates that certain case proceeds and penalties forfeited or paid to the United States after December 18, 2015, be transferred to the USVSST Fund.

For forfeiture proceeds, penalty payments, and fine payments to qualify for deposit into the USVSST Fund, the underlying matter must arise from a violation of any license, order, regulation, or prohibition issued under the International Emergency Economic Powers Act (IEEPA) or the Trading with the Enemy Act (TWEA), or any related conspiracy, scheme, or other Federal offense arising from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism. If a case or matter meets the statutory requirements for some or all of the proceeds to be deposited in the USVSST Fund, it is called a "qualifying case."

### 9.2 How much of the qualifying case proceeds go into the USVSST Fund? Does it matter if a qualifying case is civil or criminal?

For criminal matters, all funds and the net proceeds from the sale of property from qualifying violations must be deposited in the USVSST Fund. For civil matters, effective November 21, 2019, seventy-five percent of all funds, and seventy-five percent of the net proceeds from the sale of property, must be deposited into the USVSST Fund. (From December 18, 2015, until November 20, 2019, one-half of all funds, and one-half of the net proceeds from the sale of property, qualified for deposit into the USVSST Fund.) The USVSST Fund's governing statute, 34 U.S.C. § 20144(e)(2), sets these amounts.

### 9.3 In addition to whether a case is civil or criminal, are there other factors that may affect the amount of the case proceeds that go into the USVSST Fund?

The USVSST Fund's governing statute, 34 U.S.C. § 20144(e)(2), and the particular facts of each case, determine whether some or all of the qualifying case proceeds must be deposited into the USVSST Fund. Even a single case or matter may include qualifying as well as non-qualifying violations. For example, a case's violations may involve countries that are designated state sponsors of terrorism (SSTs), as well as countries that are not SSTs. *See* FAQ 2.9. In those cases, only the portion of the penalty or fine attributable to the violations involving SSTs qualifies for deposit into the USVSST Fund.

Also, SST designations change over time. A country's SST designation must be in effect at the time the violation occurred in order for the associated penalty or fine to qualify for deposit into the USVSST Fund. If a country was not designated as an SST at the time the violation occurred, the case would not qualify for the USVSST Fund, even if the country was designated as an SST at a different time.

**9.4 What role does the USVSST Fund play in the qualifying cases?**

The USVSST Fund does not participate in any federal enforcement actions, including those that may result in deposits into the USVSST Fund.

The USVSST Fund does, however, identify and track cases or matters that may lead to future deposits. Department of Justice, Money Laundering and Asset Recovery Section (MLARS) attorneys assigned to the USVSST Fund make the legal determination of whether or not a case or matter's proceeds, or a portion of them, must be deposited into the USVSST Fund. USVSST Fund attorneys often rely on law-enforcement-sensitive or other non-public information to make the legal determination of whether or not a case or matter's proceeds, or a portion of them, must be deposited into the USVSST Fund. They can complete the required legal and factual analysis only when a case or matter is concluded. The government must have received payment of the fine or penalty before any transfer to the USVSST Fund can occur.

**9.5 How does the USVSST Fund determine what proceeds and penalties qualify for deposit into the Fund?**

In implementing the statute to determine whether a case qualifies for deposit into the Fund, the USVSST Fund determines:

1. Does the case involve a state sponsor of terrorism?

   If not, including if the violation occurred while the country was *not* designated, the case cannot qualify. If so:

2. Does the case include a violation of any license, order, regulation, or prohibition issued under IEEPA or TWEA?

   If so, the case qualifies, and the USVSST Fund determines the qualifying amount. *See* FAQ 9.4. If not:

3. Does the case include any related conspiracy, scheme, or other Federal offense arising from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism?

   If not, the case cannot qualify. If so, the case qualifies, and the USVSST Fund determines the qualifying amount.

**9.6 I saw a press release about a case involving a state sponsor of terrorism and IEEPA/TWEA violations. Why isn't it listed on the USVSST Fund's qualifying case deposits list?**

There are a number of reasons why a case may not be listed on the USVSST Fund's qualifying case deposits webpage.

Only cases with publicly available information are posted on the USVSST Fund's qualifying case deposits webpage. For example, a sealed case (meaning a court has limited the public information) would not be listed on the USVSST Fund's website.

Further, Department of Justice, Money Laundering and Asset Recovery Section (MLARS) attorneys assigned to the USVSST Fund can complete the required legal and factual analysis only when a case or matter is concluded. The government must have received the qualifying forfeiture proceeds or payment of the fine or penalty before any transfer to the USVSST Fund can occur.

In addition, a case may not appear on the USVSST Fund's qualifying case deposits webpage because MLARS attorneys assigned to the USVSST Fund determined that the case did not qualify.

Typically, the USVSST Fund updates its qualifying case deposits list at the end of each fiscal quarter. Thus, the absence of a case from the list is not necessarily an indication that the case will not eventually be listed.

**9.7 Would funds received for violations involving a terrorist group, like al-Qaeda or Hamas, qualify for deposit into the USVSST Fund?**

Cases with violations that solely involve a terrorist group – like al-Qaeda or Hamas – and not a state sponsor of terrorism, would not qualify for deposit into the USVSST Fund. *See* FAQ 2.9.

**9.8 What are some examples of agencies that are involved in qualifying cases?**

Some examples of agencies whose enforcement actions have resulted in qualifying case deposits are the Department of the Treasury, Office of Foreign Assets Control (OFAC); Department of Commerce, Bureau of Industry and Security (BIS); and Offices of the United States Attorneys.

When the federal enforcement action is complete and the fine, penalty, or forfeiture proceeds have been received by the government, the USVSST Fund coordinates with the appropriate entity to initiate transfer of qualifying amounts.

**9.9 Where can I find out more about the USVSST Fund's qualifying cases and finances?**

The Qualifying Cases page of the USVSST Fund's website provides additional information about qualifying cases, including a list of cases or matters with publicly available information where some or all of the proceeds qualified for deposit into the USVSST Fund. The Fund Balance page of the USVSST Fund's website provides financial information, including data related to the USVSST Fund's balance.